IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-cv-00041-M-RN

DERENCE V. FIVEHOUSE,
Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
DEFENSE HEALTH AGENCY;
HON. PETE HEGSETH, in his official capacity as
Secretary of Defense; and
DR. DAVID J. SMITH, in his official capacity as
Acting Director, Defense Health Agency,
Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF MOTION TO SUPPLEMENT/COMPLETE THE ADMINISTRATIVE RECORD

### INTRODUCTION

Defendants' Response [DE 86] is notable for what it does not address. It does not address how implementation of the decision to end TFL coverage could precede articulation of that decision by 107 days. It does not address the absence of statutory analysis in the "Decision Paper." It responds with boilerplate invocations of the "presumption of regularity" while ignoring both the irregularities obvious in its own filing and the inapplicability of any such presumption when the administrative record is so clearly defective. The Response repeatedly refers to the "Department of the Army" and the Army's "publication of the applicable formal rule" -- referring to an agency not involved and actions unrelated to this case -- strongly suggesting the Response was adapted from an unrelated case without attention to the facts relevant to this one.

Defendants also fundamentally mischaracterize Plaintiff's motion. This is not a request to "supplement" the administrative record ("AR") with extra-record evidence, nor is it a "fishing expedition" for documents that might be helpful to Plaintiff's claims. Rather, this is a motion to complete the AR with documents that the agency directly or indirectly considered but failed to include in its certified record. Plaintiff acknowledges using the word "supplement" rather than "complete," but the specifics of the request make the intention clear. The distinction is critical because, under well-

1

established D.C. Circuit precedent adopted throughout the federal courts, completion of the record carries a substantially lower burden than supplementation with extra-record evidence.

As the court explained in Oceana, Inc. v. Ross, 290 F. Supp. 3d 73, 78 (D.D.C. 2018), there are "two situations in which a plaintiff may seek to add evidence or documents to the administrative record." First, a plaintiff may seek to complete the record with "evidence that should have been properly a part of the administrative record but was excluded by the agency." Id. Second, a plaintiff may seek to supplement the record with "extra-judicial evidence that was not initially before the agency." Id. at 77. Only the latter requires a showing of "unusual circumstances." Id. at 78.

Plaintiff's motion falls squarely within the first category. The record itself demonstrates that documents were considered but omitted. The contracting-officer directives at AR2824 - AR2827 predate the July 3, 2025 "Decision Paper" by 107 days, proving that decisional materials existed before the purported decision date. These are not speculative assertions about documents that "might exist"; they are concrete, non-speculative grounds demonstrating that the certified record is incomplete.

## ARGUMENT

### I. The Oceana Framework Governs Motions to Complete the Administrative Record

Defendants cite Camp v. Pitts, 411 U.S. 138 (1973), and Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402 (1971), for the unremarkable proposition that judicial review under the APA is limited to the AR. But neither case addresses the question presented here: what happens when an agency's certified record omits materials that were actually before the decisionmaker?

Moreover, Camp v. Pitts -- the very authority Defendants rely upon -- does not treat the certified record as an impenetrable shield. It holds that the "focal point for judicial review should be the AR already in existence," not "some new record made initially in the reviewing court," yet Camp also recognizes that when an agency has failed to explain its action in a way that "frustrate[s] effective judicial review," the remedy is "to obtain from the agency, either through affidavits or testimony, such additional explanation of the reasons for the agency decision as may prove necessary." Sierra Club v. Marsh, 976 F.2d 763, 772 (1st Cir. 1992), makes the point explicit: "The fact that review sometimes or often focuses on the initial record does not mean that it must, or always, will do so," and where

2

explanation is missing, the AR may be supplemented "by affidavits, depositions, or other proof of an explanatory nature," so long as the additional material explains "the decisionmakers' action at the time it occurred" and supplies "no new rationalizations."

The Oceana court addressed this precise issue and established a two-track framework that has been consistently followed. When a plaintiff seeks to complete the record -- that is, to add evidence that was before the agency but excluded -- the plaintiff need only "put forth concrete evidence and identify reasonable, non-speculative grounds for [the] belief that the documents were considered by the agency and not included in the record." Oceana, 290 F. Supp. 3d at 78-79 (quoting Charleston Area Med. Ctr. v. Burwell, 216 F. Supp. 3d 18, 23 (D.D.C. 2016)).

The court in Oceana explicitly rejected the government's position that a plaintiff seeking to complete the record must also demonstrate one of the three "unusual circumstances" required for supplementation with extra-record evidence:

> If a plaintiff can show that a piece of evidence was before the agency at the time the decision was made -- and thus that that evidence is part of the administrative record -- it makes little sense to require that the plaintiff also show one of the three unusual circumstances before requiring the agency to add the properly-part-of-the-record evidence to the record. . . . To hold otherwise would result in the Court reviewing agency action without the entire administrative record before it, contrary to what the APA directs.

Id. at 78 (emphasis in original).

This framework has been consistently applied. In Natural Resources Defense Council, Inc. v. Doremus, 2021 WL 2322349 (D.D.C. June 7, 2021), the court followed Oceana and held that "[a] complete administrative record should include all materials that might have influenced the agency's decision, and not merely those on which the agency relied in its final decision." Id. at *2 (quoting Amfac Resors, L.L.C. v. U.S. Dep't of Interior, 143 F. Supp. 2d 7, 12 (D.D.C. 2001)). The court further held that "if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included as well." Id.

Simiarly, in Taylor Energy Company LLC v. United States, 2021 WL 538052 (D.D.C. Feb. 15, 2021), the court applied the Oceana framework and ordered the agency to complete the record with draft reports and original task orders where the record demonstrated they had been reviewed and revised before the final decision. The court emphasized that "an agency may not skew the record by

3

excluding unfavorable information" and may not "omit information simply because it did not 'rely' on the excluded information in its final decision." Id. at *2 (citations omitted).

## II. Defendants Mischaracterize Their Cited Authorities

Defendants' heavy reliance on Ohio Valley Environmental Coalition v. Aracoma Coal Co., 556 F.3d 177 (4th Cir. 2009), is misplaced on multiple levels. The Response claims that Ohio Valley holds that APA review "is limited to the administrative record that was before the agency at the time of its decision," characterizes Ohio Valley as "rejecting efforts to rely on extra-record materials where plaintiffs failed to overcome the presumption that the record was complete," and asserts that "[m]ere allegations" or assumptions about what the agency "must have considered" do not rebut the presumption of completeness. [DE 86 at 3, 5, 6]. Although these are a fairly accurate description of the standards for APA review, these quoted phrases appear nowhere in the Fourth Circuit's decision.

What Ohio Valley actually says undermines Defendants' position. The Fourth Circuit explicitly "acknowledge[d] the importance of extra-record evidence in NEPA cases to inform the court about environmental factors that the agency may not have considered," and explained that "a NEPA suit is inherently a challenge to the adequacy of the administrative record," which is why "courts generally have been willing to look outside the record when assessing the adequacy of an EIS or a determination that no EIS is necessary." 556 F.3d at 201 (citations omitted). The court's only caution was that extra-record evidence "does not . . . give courts license to simply substitute the judgment of plaintiff's experts for that of the agency's experts." Id. at 201 - 02. That limitation is irrelevant here – Plaintiff is not offering competing experts but is only asking the Court to require DHA to supply contemporaneous decisional documentation necessary to make sense of an AR that reflects implementation directives preceding the only proffered "Decision Paper" by 107 days.

Defendants' reliance on Dow AgroSciences LLC v. National Marine Fisheries Service, 637 F.3d 259 (4th Cir. 2011), suffers from similar infirmities. The Response claims that the Fourth Circuit held "'[t]he APA does not provide for a broad right of discovery'" and characterizes the case as "[r]ejecting supplementation where the issues were legal and policy-based, not technical.' [DE 86 at 6-7]. The quoted language does not appear in the case, and Defendants' characterization of the case is

4

inaccurate. Dow AgroSciences addresses an entirely different issue: whether a biological opinion is subject to direct judicial review under the APA rather than being reviewable only through later challenge to the acting agency's final order. The case concerns final agency action, adequate alternative remedy, and ripeness -- not AR supplementation.

Defendants' citation to Sierra Club v. United States Department of the Interior, 899 F.3d 260 (4th Cir. 2018), is equally troubling. The Response characterizes Sierra Club as holding that "[e]xtra-record evidence is not permitted merely because plaintiffs believe additional materials would be helpful." [DE 86 at 4-5]. This proposition does not exist at the cited pages -- or anywhere in the opinion. Pages 295-96 of Sierra Club address whether the Natural Gas Act's judicial review provision precluded the court from vacating the challenged agency actions. The 28-page opinion nowhere addresses AR supplementation.

The pattern across all three of Defendants' principal authorities is the same; each is cited for language that either does not appear in the opinion or is wrenched from its actual context. None addresses the situation presented here -- an AR that, on its face, shows implementation preceding decision, and a plaintiff seeking not to inject competing evidence but to require the agency to explain what and when it actually decided.

### III. The Record Itself Provides Concrete Evidence of Omitted Materials

Defendants argue that Plaintiff "does not identify a single document that was before the agency and omitted from the record." [DE 86 at 2]. This misses the point. Under Oceana and its progeny, Plaintiff need not produce the very documents that were withheld -- an impossible standard that would reward agencies for incomplete record production. Rather, Plaintiff must identify "reasonable, non-speculative grounds" for believing documents were considered. The certified record itself provides abundant evidence meeting this standard.

#### (i) The Timeline Demonstrates Pre-Decision Materials Exist

Defendants' Response contains not a single word addressing the central procedural irregularity: two DHA contracting-officer directives ordering implementation of the TFL exclusion

5

(AR2824 - AR2827) predating the July 3, 2025 "Decision Paper" (AR2675 - AR2679) by 107 days. This is Defendants' AR, not a figment of Plaintiff's imagination.

This is not about documents that "might exist." This is an undisputed fact, evident in Defendants' own AR. The March 18 and April 23, 2025 contracting officer memoranda ordered Express Scripts to implement an exclusion affecting TFL beneficiaries, yet according to Defendants that decision was not made until July 3, 2025. Defendants offer no explanation for this decision/implementation inversion. They simply ignore it.

It strains credulity to suggest there were no communications from senior DHA leadership to the contracting officers directing them to begin implementing the change in coverage, and likewise for communications to the contracting officers not to have been preceded by some documentation of the decision to change coverage -- prior to April 2025. Under Oceana, documents that inform pre-decisional actions belong in the record. The Taylor Energy court confronted an analogous situation where task orders predated the formal decision paper and ordered completion of the record with the underlying materials. 2021 WL 538052, at *6-7.

### (ii) The "Decision Paper" Contains No Statutory Analysis

The July 3, 2025 "Decision Paper" (AR2675 - AR2679) is the only document DHA offers as reflecting the Acting Director's deliberation on the TFL-only exclusion. The "Decision Paper" asks only "which verification method" -- not "do we have statutory authority to exclude TFL beneficiaries'" Plaintiff's Motion demonstrated that the "Decision Paper" lacks substantive statutory analysis:

(A) The phrase "10 U.S.C. § 1086" does not appear.

(B) The phrase "10 U.S.C. § 1074g" does not appear.

(C) The phrase "uniform formulary" does not appear.

(D) The phrase "covered beneficiary" does not appear.

(E) No analysis of statutory authority appears.

(F) No analysis of reliance interests appears.

6

(G) No P&T Committee or UF-BAP materials relevant to the decision appear, despite statutory requirements.

These are not allegations that documents "might exist." They are documented absences of any substantive statutory analysis -- in a "Decision Paper" dated 107 days after implementation began. Either the statutory analysis exists somewhere else and was omitted from the AR, or it does not exist -- in which case the agency acted without examining the relevant statutory framework at all. The AR therefore supports only two conclusions: the "Decision Paper" is post hoc rationalization, or the contracting officers changed coverage on their own initiative. Otherwise, let us see the decision documentation predating implementation.

The April 23, 2025 directive characterizes prior GLP-1 coverage for TFL beneficiaries as "incorrectly applied." This characterization -- now central to Defendants' litigation defense -- necessarily rests on some analysis. In Oceana, the court held that documents "substantively cited" in agency materials belong in the record because the agency "clearly considered" them. 290 F. Supp. 3d at 79-80. Here, the agency's characterization of prior coverage as "incorrectly applied" necessarily references underlying analysis -- analysis that should be in the record but is conspicuously absent.

The Doremus court applied this principle, ordering inclusion of supporting information where the status review report substantively relied on it. 2021 WL 2322349, at *3-4. The court reasoned that when an agency "use[s] [material] to justify an assertion or proposition," that "indicates that the [agency] consulted and thought about -- and therefore considered -- that document." Id. at *4 (quoting Oceana, 290 F. Supp. 3d at 80). The same logic compels completion here.

### (iii) Statutory Process Requirements Demonstrate Missing Materials

Congress established specific procedural requirements for modification of the Uniform Formulary under 10 U.S.C. § 1074g, including involvement of the Pharmacy and Therapeutics Committee and the Uniform Formulary Beneficiary Advisory Panel. The record contains no materials reflecting these statutory processes as applied to the challenged GLP-1 exclusion. Either the agency failed to follow the statutory process -- which would be grounds for setting aside the action -- or materials exist that were not included in the record.

7

The Doremus court addressed this precise situation, holding that where an agency's status review team prepared materials underlying a decision, those materials belong in the record. 2021 WL 2322349, at *2. The same principle applies here: if DHA followed the statutory process, the P&T Committee and UF-BAP materials must exist and should be in the record.

## IV. The Administrative Record Fails to Document Reasoned Decision-Making

The deficiencies in the AR are not mere technicalities. They reflect the absence of the reasoned decision-making the APA requires. Under Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co., 463 U.S. 29, 43 (1983), an agency must "examine the relevant data and articulate a satisfactory explanation for its action." The agency must demonstrate "a rational connection between the facts found and the choice made." Id. A decision is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem." Id.

When an agency rescinds or changes an existing policy, the standard is heightened. Under Department of Homeland Security v. Regents of the University of California, 140 S. Ct. 1891, 1913 (2020), the agency must also "be cognizant that longstanding policies may have engendered serious reliance interests that must be taken into account." It would be "arbitrary and capricious to ignore such matters." Id. DHA terminated coverage for weight loss drugs that TFL beneficiaries had received for eight years. That is a policy change, regardless of whether DHA labels it "clarification." Regents required DHA to acknowledge the change and consider reliance interests. The "Decision Paper" does neither.

Measured against these standards, the proffered "Decision Paper" fails completely:

(i) Examine relevant data: No utilization data, no clinical data, no cost data.

(ii) Articulate satisfactory explanation: Addresses only "verification method," not authority to exclude.

(iii) Rational connection: No statutory analysis connecting exclusion to legal authority.

(iv) Consider important aspects: No mention of uniform formulary mandate, "covered beneficiary" definition, or § 1086 parity requirement.

(v) Consider reliance interests: Zero discussion of eight years of beneficiary reliance.

8

The AR either omits the actual analysis predating the decision as required by State Farm and Regents, or no such analysis was ever conducted and the "Decision Paper" is quintessential post hoc rationalization.

## V. The Presumption of Regularity Does Not Foreclose Completion

Defendants invoke the "presumption of regularity" as if it were an impenetrable shield against any challenge to record completeness. It is not. As Oceana explained, the presumption can be overcome by "concrete evidence" and "reasonable, non-speculative grounds." 290 F. Supp. 3d at 78-79. Plaintiff has provided both.

Moreover, the presumption of regularity assumes the agency acted regularly. Here, the record demonstrates irregularity: implementation directives predating the "Decision Paper," litigation positions nowhere reflected in the record, and absence of materials required by statute. The Oceana court "cautions against both under- and over-inclusiveness in the administrative record." 290 F. Supp. 3d at 78 (quoting Walter O. Boswell Mem'l Hosp. v. Heckler, 749 F.2d 788, 792 (D.C. Cir. 1984)). An AR documenting implementation before decision, with no explanation, is under-inclusive by definition and "frustrate[s] judicial review." Id. at 77.

In Hesai Technology Co., Ltd. v. U.S. Department of Defense, 2024 WL 3673574 (D.D.C. Aug. 5, 2024), the court recognized that completion is appropriate where the plaintiff provides "reasonable, non-speculative grounds for [the] belief that the documents were considered by the agency and not included in the record." Id. at *1 (quoting Doremus). The timeline discrepancies and missing statuory-process materials here easily satisfy that standard.

## VI. Defendants' Chenery Problem Underscores Record Deficiencies

Under SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), "a reviewing court . . . must judge the propriety of [agency] action solely by the grounds invoked by the agency." An agency cannot defend its action on grounds not articulated at the time of the decision. Yet Defendants now defend the GLP-1 exclusion through litigation arguments -- that TFL was "never eligible" and that prior coverage was "incorrectly applied" -- that appear nowhere in the July 3, 2025 "Decision Paper."

9

This creates a Chenery problem that reinforces the need for record completion. If the agency's actual reasoning included these characterizations, the supporting analyses must exist and belong in the record. If they do not exist, Defendants cannot rely on them now. Either way, the record as certified is inadequate for meaningful judicial review. The Court should not permit Defendants to escape the consequences of an incomplete record by allowing post hoc litigation rationales to substitute for contemporaneous decisional documentation.

## VII. Plaintiff's Requests Are Specific and Grounded in Record Evidence

Defendants characterize Plaintiff's motion as a "fishing expedition." This is incorrect. Plaintiff's requests are narrowly tailored to categories of documents that the record itself demonstrates were considered:

(i) Drafts of the "Decision Paper": The Taylor Energy court ordered inclusion of draft reports where evidence showed revisions were made. 2021 WL 538052, at *9. Here, the 107-day gap between implementation directives and the "Decision Paper" strongly suggests iterative drafting.

(ii) Internal Legal Analyses: The characterization of prior coverage as "incorrectly applied" necessarily rests on legal analysis. Under Oceana's substantive-citation rule, such supporting analysis belongs in the record. 290 F. Supp. 3d at 79-80.

(iii) Staff Packages and Coordination Documents: The Doremus court held that "if the agency decisionmaker based his decision on the work and recommendations of subordinates, those materials should be included." 2021 WL 2322349, at *2. Standard government decision-making involves staff packages; their absence is itself evidence of incompleteness.

(iv) P&T Committee / UF-BAP Materials: These are statutorily required under 10 U.S.C. § 1074g. Their absence from the record is either evidence of procedural violation or evidence that the record is incomplete.

(v) Pre-March 18, 2025 Communications: Implementation before the "Decision Paper" proves pre-decisional materials exist. Documents created prior to implementation that informed the contracting-officer directives belong in the record.

(vi) Privilege Log: Plaintiff requests a privilege log identifying any withheld materials. Defendants do not address this request. They do not assert that no documents were withheld. They do

10

not claim deliberative process or attorney-client privilege. They simply ignore the request. If DHA withheld documents under a privilege, it should say so and identify what it withheld -- or admit no such documents exist. Silence on this point leaves Plaintiff and the Court unable to assess whether the AR is complete. In Oceana, the court analyzed specific privilege claims; here, the agency has not even identified what, if anything, it withheld. 290 F. Supp. 3d at 83-85.

## VIII. This Is Not a Request for Discovery

Defendants suggest that Plaintiff's motion is an improper attempt to obtain discovery. This conflates two distinct concepts. A motion to complete the AR seeks documents that were before the agency -- documents the agency should have included but did not. Discovery, by contrast, seeks to develop evidence beyond what the agency considered.

The Oceana framework exists precisely because agencies sometimes fail to produce complete records. If every agency certification were unreviewable, the APA's requirement of review based on the "whole record" would be meaningless. 5 U.S.C. § 706. Plaintiff's motion asks only that the agency produce documents it considered -- nothing more.

## IX. Defendants' Response Reveals Inattention

In addition to mischaracterizing case law, it is unsettling that Defendants' Response repeatedly refers to the "Department of the Army" as the relevant agency and to actions -- such as a formal rulemaking -- that never occurred. See DE 86 at 3, 6, 7.

These errors suggest the Response was adapted from pleadings used in another APA case -- involving the Army -- without attention to the facts of this case. The Court should weigh this inattention when evaluating Defendants' insistence that they are entitled to a "presumption of regularity and completeness."

## CONCLUSION

Plaintiff's Motion identified specific, documented deficiencies:

(i) Implementation preceded the "Decision Paper" by 107 days.

11

(ii) The "Decision Paper" contains no statutory analysis of §§ 1074g or 1086.

(iii) No P&T Committee or UF-BAP materials appear despite statutory mandates.

(iv) The "Decision Paper" fails the State Farm and Regents standards for reasoned decision-making.

Defendants' Response addresses none of these points. It invokes the "presumption of regularity and completeness" while the AR clearly evidences irregularity. It accuses Plaintiff of "speculation" while refusing to explain an undisputed inverted decision/implementation timeline. It assures the Court the record is "complete" while confusing the Defense Health Agency with the Department of the Army and referencing processes from another case.

For the foregoing reasons, Plaintiff respectfully requests that the Court grant his motion to complete the AR. The record itself -- through timeline inconsistencies, references to unincluded analyses, and absence of statutorily-required materials -- provides the "concrete evidence" and "reasonable, non-speculative grounds" that Oceana requires. Completion of the record will enable the "searching and careful" judicial review the APA demands. Or, the Court should draw the obvious inference: that DHA acted without appropriate decision-making, statutory analysis, committee review, or the contemporaneous deliberation required by law.

In the alternative, should the Court decline to order completion, Plaintiff requests that the Court (1) order Defendants to file a sworn declaration from the responsible DHA official explaining how implementation directives issued March 18 and April 23, 2025, preceded the July 3, 2025 "Decision Paper," and (2) order Defendants to produce a privilege log identifying any documents withheld from the certified record.

Respectfully submitted,

Derence V. Fivehouse, Pro Se
316 Seaview Drive
Edenton, NC 27932
derencefivehouse@gmail.com

12

**CERTIFICATE OF MAILING**

I hereby certify that on the date shown above, I deposited in the United States Mail, postage prepaid, a true and correct copy of the foregoing, addressed to counsel of record for the United States, AUSA Rudy E. Renfer, Office of the United States Attorney for the Eastern District of North Carolina, and to any other counsel who have appeared. The foregoing was also emailed to Mr. Renfer at Rudy.E.Renfer@us.doj.gov.

*/s/ Derence V. Fivehouse*
Derence V. Fivehouse

13