IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-cv-00041-M-RN

| | | |
|---|---|---|
| DERENCE FIVEHOUSE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| v. | ) | DEFENDANTS' MOTION TO |
| | ) | DISMISS OR, ALTERNATIVELY, |
| UNITED STATES DEPARTMENT OF | ) | MOTION FOR SUMMARY |
| DEFENSE, et al, | ) | JUDGMENT |
| | ) | |
| Defendants. | ) | |

This arises from Plaintiff's Administrative Procedure Act ("APA") action filed

with this Court challenging the United States Department of Defense,[1] Defense

Health Agency's ("DHA") implementation of its August 31, 2025, clarification on

coverage for GLP-1 medications for weight management for TRICARE for Life

beneficiaries. Plaintiff has requested that the Court exercise its power to prevent the

DHA from implementing its August 31, 2025, clarification on coverage for GLP-1

medications for weight management for TRICARE for Life beneficiaries because the

DHA acted arbitrarily and capriciously. [DE 1]. The DHA's policy is not an arbitrary

and capricious action under the APA, but rather a reasonable and faithful execution

---

[1]     The statutory "Executive departments" include, *inter alia*, the Department of
Defense.  5 U.S.C. § 101.  On September 5, 2025, President Donald J. Trump signed
Executive Order 14347, "Restoring the United States Department of War."  *See*
90 Fed. Reg. 173, Sep. 10, 2025, at 43,893-94.  Section 2(e) of Executive Order 14347
specified that "[s]tatutory references to the Department of Defense . . . shall remain
controlling until changed subsequently by the law."  Therefore, in accordance with
5 U.S.C. § 101, the Executive department should be referred to in this matter as the
"Department of Defense."

1

of unambiguous statutory and regulatory mandates. Accordingly, Defendants are entitled to judgment as a matter of law.

## I.     BACKGROUND

The difference in coverage for weight loss drugs, including GLP-1 agonists (e.g. Wegovy), among TRICARE plans is rooted in separate federal laws and regulations governing each program.

### a. Different TRICARE Plans

TRICARE was formerly known as the Civilian Health and Medical Program of the Uniformed Services or "CHAMPUS." *United States ex rel. Schnupp v. Blair Pharmacy*, 2025 WL 2306250, at *1 n. 3 (D. Md. Aug. 11, 2025) (citing 32 C.F.R. § 199.17). Title 10, Section 1072 delineates the three TRICARE plans: TRICARE Prime; TRICARE Select; and TRICARE for Life. The term "TRICARE Prime" means the managed care option of the TRICARE program. 10 U.S.C. § 1072(14). The term "TRICARE Select" means the self-managed, preferred-provider network option under the TRICARE program established by 10 U.S.C. § 1075. 10 U.S.C. § 1072(12). The term "TRICARE for Life" ("TFL") means the Medicare wraparound coverage option of the TRICARE program made available to the beneficiary by reason of 10 U.S.C. § 1086(d). 10 U.S.C. § 1072(13).

Under § 1086(d), a retiree must purchase Medicare Part B to be eligible for the TFL medical benefit. 10 U.S.C. § 1086(d)(1), (2); *Brown v. United States*, 2020 WL 6811121, at *10 (S.D. Miss. May 13, 2020). A retiree pays a monthly fee—deducted from his or her monthly Social Security payment—for Medicare Part B. *See Schism*

2

*v. United States*, 316 F.3d 1259, 1265 (Fed. Cir. 2022). TFL covers out-of-pocket costs for care greater than that covered by Medicare and amounts paid or payable by third party payers other than Medicare. 10 U.S.C. § 1086(d)(3)(A). Plaintiff is a TFL covered beneficiary. [DE 1, p. 2].

The various TRICARE plans are further defined in 32 C.F.R. § 199.17. "TRICARE Prime" is a health maintenance organization (HMO)-like program which generally features use of military treatment facilities and substantially reduced out-of-pocket costs for care provided outside military treatment facilities. 32 C.F.R. § 199.17(a)(6)(ii)(A). *See also* 32 C.F.R. § 199.17(b)(1) (describing application of TRICARE Prime). Health benefits for Prime enrollees for care received from civilian providers are those under 32 C.F.R. § 199.4 and the additional benefits identified § 199.17(f). 32 C.F.R. § 199.17(d)(3).

"TRICARE Select" is a self-managed, preferred provider organization (PPO) program which allows beneficiaries to use the TRICARE provider civilian network, with reduced out-of-pocket costs compared to care from non-network providers, as well as military treatment facilities (where they exist and when space is available). 32 C.F.R. § 199.17(a)(6)(ii)(B). *See also* 32 C.F.R. § 199.17(b)(2) (describing application of TRICARE Select). The health care benefits under TRICARE Select for enrolled beneficiaries received from civilian providers are those under 32 C.F.R. § 199.4, and, in addition, those in § 199.17(f) when received from a civilian network provider. *See* 32 C.F.R. § 199.17(e).

3

Thus, under federal regulations, TRICARE Select and TRICARE Prime are TRICARE programs in which TRICARE is the primary payor, *Brown*, 2020 WL 6811121, at *9, and cover non-Medicare-eligible beneficiaries. 32 C.F.R. § 199.17(c). Relatedly, these plans are governed by federal laws that allow for additional preventive care services and health benefits for these beneficiaries that are not covered under TFL. *See, e.g.,* 32 C.F.R. 199.17(f)(3).

Regarding TFL, when a retiree or retiree family member becomes individually eligible for Medicare Part A and enrolls in Medicare Part B, he/she is automatically eligible for TFL and is required to enroll in the Defense Enrollment Eligibility Reporting System to verify eligibility. 32 C.F.R. § 199.17(c). The coverage regulations applicable to TFL are found in §§ 199.3 (eligibility), 199.4 (basic program benefits), and 199.8 (double coverage). *See* 32 C.F.R. § 199.17(a)(6)(ii)(C).

Thus, TFL beneficiaries are Medicare-eligible, and their TRICARE coverage is structured differently. Under TFL coverage, Medicare typically serves as the primary payer and Tricare as secondary payer, reimbursing only those portions of a claim that are not covered by Medicare. *Brown*, 2020 WL 6811121, at *9; 10 U.S.C. § 1086(d).

### b. TFL Benefits Regarding Weight Loss

Under 10 U.S.C. § 1086(a), the Secretary of Defense shall contract under the authority of this section for health benefits for those persons under the same insurance, medical service, or health plans he contracts for under 10 U.S.C. § 1079(a). This section provides that TFL covered beneficiaries (like Plaintiff) will have the same benefits as TFL dependents as described in 10 U.S.C. § 1079(a). Under 10

4

U.S.C. § 1079(a)(10), "[t]reatment of obesity may not be provided if obesity is the sole or major condition treated." *See also* [SMF 1]. Therefore, under 10 U.S.C. § 1086(a) and § 1079(a)(10), GLP-1 weight loss drugs prescribed to solely treat obesity are specifically excluded from TFL coverage for both TFL beneficiaries and TFL dependents. *See* [SMF 1].

The pharmaceutical benefit program statute, 10 U.S.C. § 1074g, empowers the Secretary to "establish an effective, efficient, integrated pharmacy benefits program" that includes a "uniform formulary of pharmaceutical agents . . . based on the relative clinical and cost effectiveness of the agents in such class." 10 U.S.C. § 1074g(a).  The Pharmacy and Therapeutics Committee (P&T Committee) was established for the "for the purpose of developing the uniform formulary of pharmaceutical agents required by subsection (a), reviewing such formulary on a periodic basis, and *making additional recommendations regarding the formulary as the committee determines necessary and appropriate*." 10 U.S.C. § 1074g(b)(1) (emphasis added).  In addition to the P&T Committee, a Uniform Formulary Beneficiary Advisory Panel (BAP) was established to "review and comment on the development of the uniform formulary," including "*changes* to the uniform formulary."  10 U.S.C. § 1074g(b)(2)(C) (emphasis added). Pursuant to the pharmacy benefit program statute, "[p]harmaceutical agents included on the uniform formulary shall be available to eligible covered beneficiaries."  10. U.S.C. § 1074g(a)(2)(E).  The term "eligible covered beneficiaries" is defined as "a *covered beneficiary* for whom *eligibility to receive pharmacy benefits*

5

through the means described in subsection (a)(2)(E) is *established under this chapter or another provision of law.*" 10 U.S.C. § 1074g(i)(1) (emphasis added).

From a regulatory standpoint, TRICARE Prime, TRICARE Select, and TFL benefits are promulgated in 32 C.F.R. § 199.4. *See* 32 C.F.R. §§ 199.17(a)(6)(ii)(C) (incorporating § 199.4 benefits into TFL plan); 199.17(a)(6)(ii)(D) (basic program benefits under § 199.4 continue as the baseline of benefits common to the TRICARE Prime and TRICARE Select plans). Specifically, regarding GLP-1 weight-loss drug coverage, 32 C.F.R. § 199.4(g)(28) states, "[s]ervice and supplies related 'solely' to obesity or weight reduction or weight control whether surgical or nonsurgical" are excluded from coverage under TRICARE/CHAMPUS. Thus, at first blush, it appears that TRICARE Prime, TRICARE Select, and TFL specifically incorporate this weight-loss drug exclusion into each plan's respective coverage.

However, 32 C.F.R. § 199.17 contains an exception to § 199.4(g)(28)'s general prohibition of coverage for weight loss medication for TRICARE Prime and TRICARE Select beneficiaries. "[U]nder the authority of 10 U.S.C. § 1097" and "notwithstanding 10 U.S.C. 1079(a)(10), treatment of obesity is covered under TRICARE Prime and TRICARE Select even if it is the sole or major condition treated." 32 C.F.R. § 199.17(f)(3). "Such services must be provided by a TRICARE network provider and be medically necessary and appropriate in the context of the particular patient's treatment." *Id.*

TFL is noticeably and specifically excluded from § 199.17(f)(3)'s exception to the general exclusion of GLP-1 weight-loss drugs from coverage found in

6

§ 199.4(g)(28); thus, the § 199.4(g)(28) exclusion continues to apply to TFL beneficiaries and dependents. Moreover, "the rules applicable to [TFL] are unaffected" by § 199.17(f)(3). 32 C.F.R. § 199.17(a)(6)(ii)(C). Consequently, § 199.4(g)(28) and § 199.17(a)(6)(ii)(C) preserve the general exclusion of coverage for GLP-1 weight-loss drugs, e.g. Wegovy, for TFL beneficiaries, like Plaintiff, when obesity is the sole or major condition being treated.

TRICARE also has pharmaceutical benefit coverage. For beneficiaries with TFL who do not enroll in a Medicare Part D plan, like Plaintiff, the TRICARE Pharmacy Program provides drug coverage. *See generally* 10 U.S.C. § 1074g (pharmacy benefits program); 32 C.F.R. § 199.21 (TRICARE pharmacy benefits program). However, under the TRICARE Pharmacy Program, TFL is also subject to statutory and regulatory exclusions of GLP-1 drugs (e.g. Wegovy) from coverage. More precisely, under the TRICARE Pharmacy Program, 32 C.F.R. § 199.21(a)(3)(iii) excludes from pharmaceutical coverage "medical treatments or procedures that are expressly excluded from the TRICARE benefit by statute or regulation[.]" As noted above, 32 C.F.R. § 199.4(g)(28) provides that service and supplies related "solely" to obesity or weight reduction or weight control, whether surgical or nonsurgical, are excluded from coverage for TFL beneficiaries regardless of the circumstances under which performed. Furthermore, 10 U.S.C. § 1079(a)(10) and 10 U.S.C. §§ 1086(a) and (d) explicitly exclude GLP-1 weight-loss "treatment of obesity... if obesity is the sole or major condition treated" to TFL beneficiaries. While 32 C.F.R. § 199.17(f)(3) provides for TRICARE Prime and TRICARE Select beneficiaries an exception to the

7

exclusion from coverage of GLP-1 drugs for weight loss, 32 C.F.R. § 199.17(a)(6)(ii)(C) precludes application of 32 C.F.R. § 199.17(f)(3) to TFL beneficiaries or dependents, and, under 32 C.F.R. § 199.21(a)(3)(iii), the GLP-1 exclusion of coverage for weight-loss drugs described in 32 C.F.R. § 199.4(g)(28) and 10 U.S.C. § 1079(a)(10) would continue to apply with full force and effect to TFL beneficiaries and dependents.[2]

### c. **Pharmaceutical Uniformity**

The Secretary of Defense is required to "establish an effective, efficient, integrated pharmacy benefits program" that includes "a uniform formulary of pharmaceutical agents." 10 U.S.C. § 1074g(a)(1)-(2). "The selection for inclusion on the uniform formulary of particular pharmaceutical agents in each therapeutic class

---

[2] This is consistent with TFL's status as Medicare wraparound coverage. If a person in TFL also enrolls in Medicare Part D, that program, which specifically describes coverage of outpatient prescription drugs covered under Medicare, explicitly excludes coverage for drugs used for weight loss. *See* [https://www.cms.gov/medicare/prescription-drug-coverage/prescriptiondrugcovcontra/downloads/part-d-benefits-manual-chapter-6.pdf#:~:text=drugs%20or%20classes%20of%20drugs%2C%20or%20their,a%20non%2D%20cosmetic%20purpose%20(i.e.%2C%20morbid%20obesity)], Section 20.1, last visited September 30, 2025]; [https://www.dhcs.ca.gov/services/ghpp/Pages/MedicarePartDFAQ.aspx, last visited September 30, 2025]. *See also* 42 U.S.C. 1396r–8(d)(2) (excludes drugs "when used for anorexia, weight loss, or weight gain" from Medicare coverage). Because TFL follows Medicare as the secondary payer, it cannot cover weight-loss drugs when Medicare does not. *Brown*, 2020 WL 6811121, at *11. *See* [https://tricare.mil/Publications/Handbooks/tricare_for_life; Tricare For Life Manual, p. 27 ("Non-covered prescription drugs are excluded from TRICARE coverage. If your drug falls into the non-covered category, you'll have to pay the full cost of the prescription drug."), last visited September 30, 2025]. Therefore, as a wraparound secondary payor for Medicare benefits, TFL cannot be used to authorize or pay for weight loss drugs, e.g. Wegovy, because Medicare does not contain that coverage. In short, since Medicare excludes coverage for weight-loss drugs, if Plaintiff were enrolled in Medicare Part D, TFL, as a Medicare secondary payor, is also barred from covering GLP-1 drugs for weight loss.

*shall be based on the relative clinical and cost effectiveness* of the agents in such class" as determined by the Pharmacy and Therapeutics ("P&T") Committee. 10 U.S.C. § 1074g(a)(2)(A), (C) (emphasis added). Pharmaceuticals on the uniform formulary are available to "***eligible*** covered beneficiaries." 10 U.S.C. § 1074g(a)(2)(E), (i)(1) (emphasis added). Since 10 U.S.C. § 1079(a)(10) precludes GLP-1 drug coverage when obesity is the sole or major condition being treated, as is the situation here, Plaintiff has ***never*** been eligible to receive GLP-1 drug coverage.

Additionally, the implementing regulation, 32 C.F.R. § 199.21(d), contains "uniformity" language requiring pharmaceutical benefits to be "uniform in the health care plans offered." However, there is an exception to that rule of uniformity. "Pharmaceutical agents which are used exclusively in medical treatments or procedures that are expressly excluded from the TRICARE benefit by statute or regulation will not be considered for inclusion on the uniform formulary. Excluded pharmaceutical agents shall not be available as non-formulary agents, nor will they be cost-shared under the TRICARE pharmacy benefits program." 32 C.F.R. C.F.R. § 199.21(a)(3)(iii). When applying the specific provisions regarding exclusions and eligibility found in 10 U.S.C. § 1079(a)(10), 10 U.S.C. §§ 1086(a) and (d), 32 C.F.R. § 199.4(g)(28), and 32 C.F.R. § 199.17(a)(6)(ii)(C), these specific provisions dictate that weight-loss drugs are an excluded "pharmaceutical agent" for TFL beneficiaries that cannot be part of the uniform formulary for that purpose. Thus, under the authority of § 199.21(a)(3)(iii), the explicit statutory and regulatory exclusions from coverage for GLP-1 weight-loss drugs for TFL beneficiaries contained in 10 U.S.C.

9

§ 1079(a)(10), 10 U.S.C. §§ 1086(a) and (d), and 32 C.F.R. § 199.4(g)(28), respectively, are an exception to the general uniformity rule.

### d. DHA's implementation of exclusion for GLP-1 drugs.

In late 2024, DHA became aware that the then-existing prior authorization criteria were not sufficiently clear to assure DHA was only providing coverage of weight loss medications to those eligible covered beneficiaries falling within the parameters established in 10 U.S.C. § 1079(a)(10), 10 U.S.C. §§ 1086(a) and (d), and 32 C.F.R. § 199.17(f)(3) and set about making the necessary clarifying revisions to the relevant forms. *See* [SMF 43-46]. As a result of the lack of clarity, some ineligible beneficiaries, including TFL beneficiaries (like Plaintiff), were receiving weight loss coverage not allowed by statutes or regulations. *See* [SMF 41-46]. As of August 31, 2025, DHA began implementing revised prior authorization criteria for weight loss drugs, consistent with existing statutory and regulatory authority, to ensure prescription processing aligns with federal coverage requirements. *See* [SMF 51-52].

The DHA's action in revising prior authorization criteria clarifies that, consistent with existing statutory and regulatory authority, TFL beneficiaries would no longer receive coverage for weight-loss drugs to treat obesity if that was the sole or major condition treated. This was not a new policy. [SMF 53]. It was a clarification and enforcement of existing law considering the new and widespread use of these drugs for weight loss, a purpose that has always been excluded under federal statute and regulation for TFL beneficiaries. TRICARE will continue to cover select drugs (e.g., Ozempic, Mounjaro, Trulicity, Victoza) for all patients when medically

10

necessary and when prior authorization requirements are met (e.g., for treating diabetes, where obesity is not the sole or major condition). *See generally* [https://tricare.mil/CoveredServices/IsItCovered/WeightLossProducts, last visited October 20, 2025]. It will, however, consistent with applicable statutes, regulations, and rules, no longer cover weight loss drugs for TFL beneficiaries when to do so would be contrary to those applicable statutes, regulations, and rules.

## II. ARGUMENT

### a. Standard Of Review

#### i. Rule 12(b)(6) Standard

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint need not include "detailed factual allegations," but it must set forth "enough factual matter (taken as true) to suggest" a cognizable cause of action, "even if...[the] actual proof of those facts is improbable, and...recovery is very remote and unlikely." *Twombly*, 550 U.S. at 555–56 (internal quotation marks omitted). Furthermore, federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014) (per curiam). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more

11

than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). A complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* "[T]ender[ing] 'naked assertion[s]' devoid of 'further factual enhancement'" does not suffice. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (third alteration in *Iqbal*).

When considering a motion to dismiss, a court must take the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). At the same time, "a court is not required to accept legal conclusions drawn from the facts." *Retfalvi v. United States*, 930 F.3d 600, 605 (4th Cir. 2019) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "A court decides whether [the pleading] standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer" the defendant's liability for the alleged wrong and the plaintiff's entitlement to the remedy sought. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), cert. denied, 566 U.S. 937 (2012).

### ii. <u>Rule 56 Standard</u>

"A court conducting judicial review under the APA does not resolve factual questions but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Nieves v. McHugh*, 111 F.Supp.3d 667, 679 (E.D.N.C. 2015); *Ohio Valley Envtl. Coal. v.*

12

*Hurst*, 604 F.Supp.2d 860, 879 (S.D.W.Va.2009) (quotation omitted); *see Occidental Eng'g Co. v. I.N.S.*, 753 F.2d 766, 769 (9th Cir.1985). While Fed. R. Civ. P. 56(c) lays out the summary judgment standard in non-APA cases, "in a case involving review of a final agency action under the [APA] ... the standard set forth in Rule 56(c) does not apply because of the limited role of a court in reviewing the administrative record." *Sierra Club v. Mainella*, 459 F.Supp.2d 76, 89 (D.D.C.2006). Thus, in an APA claim, "summary judgment becomes the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Nieves*, 111 F.Supp.3d at 679-680; *Hurst*, 604 F.Supp.2d at 879 (quotation omitted); *see Kight v. United States*, 850 F.Supp.2d 165, 169 (D.D.C. 2012).

### iii.  APA Standard

Under the APA, when a plaintiff brings an arbitrary and capricious claim, a court generally reviews "the agency's rationale and decisionmaking process." *Catskill Mountains Chapter of Trout Unlimited, Inc. v. EPA*, 846 F.3d 492, 521 (2nd Cir. 2017). That type of "standard 'arbitrary [and] capricious' review," however, is a "more apt analytic framework" when dealing with an agency's policy judgment rather than an agency's "interpretation of statutory language." *Judulang v. Holder*, 565 U.S. 42, 52 n.7 (2011); *see also Catskill Mountains*, 846 F.3d at 523 ("the full-fledged [*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29 (1983) arbitrary and capricious] standard may not apply to rules that set forth for the first time an agency's interpretation of a particular statutory provision"); *Cont'l Air Lines,*

13

*Inc. v. Dep't of Transp.*, 843 F.2d 1444, 1452 (D.C. Cir. 1988) ("[I]nterpreting a statute is quite a different enterprise than policymaking," and "[f]undamental differences under the APA turn on that distinction" since "much of the 'arbitrary and capricious' style analysis concerned with reasoned agency decisionmaking cannot be applied directly to the question of whether an agency's interpretation of a statute is" incorrect.). When an agency claims that its decision is required by statute, a court merely asks whether the "agency's interpretation of [the] statutory provision" at issue "is reasonable." *Catskill Mountains*, 846 F.3d at 521; *see also Nat'l Ass'n of Regul. Util. Comm'rs v. ICC*, 41 F.3d 721, 727 (D.C. Cir. 1994) (where "statute is quite specific…the question is more obviously whether the agency permissibly interpreted the statute.").

Under the APA, when reviewing an agency's policymaking rather than interpretation of statutes, courts must "hold unlawful and set aside agency action...found to be...arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir.1995) (quotation omitted); *see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Babbitt*, 66 F.3d at 1335 (quotation omitted). *See COMSAT Corp.*

14

*v. National Science Foundation*, 190 F.3d 269, 278 (4th Cir. 1999) (the government's refusal to comply with such a subpoena is reviewed under the APA's "arbitrary and capricious" standard for final agency actions.). A reviewing court under the APA "may not supply a reasoned basis for the agency's action that the agency itself has not given," but the court may "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas–Best Freight Sys., Inc.*, 419 U.S. 281, 285–86 (1974).

III. **PLAINTIFF FAILS TO STATE A PLAUSIBLE CLAIM FOR RELIEF BECAUSE HE IS NOT, AND NEVER HAS BEEN, ENTITLED TO COVERAGE FOR GLP-1 WEIGHT LOSS DRUG MEDICINE WHEN OBESITY IS THE SOLE OR MAJOR CONDITION BEING TREATED.**

a. **Plaintiff fails to plausibly allege that DHA's actions were violative of the APA**

Plaintiff claims that Defendant's actions were arbitrary and capricious. *See, e.g.*, [DE 64, p. 14]. However, an arbitrary and capricious review does not apply here because DHA did not amend, for clarification purposes, an authorization form in an exercise of its policymaking discretion; rather, the relevant statute required DHA to amend the authorization form to comply with the statutory exclusion of TFL beneficiaries from GLP-1 drug coverage.

Here, the DHA applied and followed several statutes: 10 U.S.C. §§ 1074g, 1079(a)(10), and 1086(a) and (d). Those provisions generally exclude GLP-1 drugs from coverage when obesity is the sole or major condition being treated but allows the Secretary to contract for coverage for TRICARE Prime and TRICARE Select beneficiaries. Without question then, the DHA's actions were required by the

15

aforementioned statutory language and did not constitute "policymaking." Thus, although Plaintiff "frames [his] challenge in terms of the 'arbitrary' or 'capricious standard,'" the Court need only "consider the statutory language and the reasonableness of [the agency's] interpretation of it." *Hong v. U.S. Sec. & Exch. Comm'n,* 41 F.4th 83, 94 n.12 (2nd Cir. 2022) *cert. denied sub nom. Hong v. Sec. Exch. Comm'n* 143 S. Ct. 450 (2022). To the extent Plaintiff claims, rather than challenging the reasonableness of DHA's interpretation of those statutes, that the DHA was arbitrary and capricious or otherwise acted unlawfully, he has failed to state a plausible claim for relief and this case should be dismissed under Fed. R. Civ. P. 12(b)(6).

### b. Plaintiff fails to plausibly allege that he is entitled to the form of relief he seeks, i.e. GLP-1 drug coverage when obesity is the sole or major condition being treated.

Plaintiff has failed to state a claim for which relief for his alleged injury can be granted. Being enrolled in TFL, Plaintiff is statutorily barred from any relief for his alleged injury because the scope of his TFL benefits are described in 10 U.S.C. § 1086 as being "the same as" those in 10 U.S.C. § 1079, which pursuant to §§ 1079(a), 1076, and 1077(a)(3) includes "drugs." The plain language of § 1079(a)(10), however, expressly excludes coverage for "treatment of obesity" if "obesity is the sole or major condition treated." Plaintiff does not challenge §§ 1079(a)(10) or 1086(a) or (d), or 1076 or 1077 or any other statute governing the TFL benefit, however. Plaintiff instead challenges the statutory and regulatory scheme implementing sections 701, 706, and 729 of the 2017 NDAA, including 32 C.F.R. §§ 199.4, 199.17(f)(3), and 199.21,

16

that permit coverage for "treatment of obesity" for other beneficiaries, enrolled in different programs:  TRICARE Prime and TRICARE Select.

Assuming, arguendo, Plaintiff prevails and the Court finds that the DHA acted arbitrarily and capriciously in implementing the 2017 NDAA through its regulations and rules (including the 2019 final rule), the effect of that decision would be to strike down the regulation that allowed for TRICARE coverage for "treatment of obesity" for TRICARE Prime and TRICARE Select beneficiaries – there is no remedy which would grant, contrary to the express statutory language in 10 U.S.C. § 1079(a)(10), GLP-1 coverage for Plaintiff as a TFL beneficiary with obesity as the sole or major medical condition treated.

The bar to coverage for "treatment of obesity" where it is the sole or major condition being treated in § 1079(a)(10) is plain, clear, and unequivocal. Plaintiff has cited no statutory authority, for there is none, that would empower the DHA to provide TFL beneficiaries with coverage for "treatment of obesity" if obesity is the sole or major condition treated. Indeed, Plaintiff fails to ever address the statutory bar to GLP-1 coverage for TFL covered beneficiaries found in 10 U.S.C. § 1079(a)(10) or why he is exempt from that statutory language.

Even if Plaintiff succeeds in destroying the statutory and regulatory scheme authorizing coverage for such treatment for others enrolled in TRICARE Prime or TRICARE Select, the statutory provisions of § 1079(a)(10) would plainly bar coverage for such treatment for himself. Accordingly, to the extent Plaintiff's allegations suggest that he is entitled to relief which includes coverage for GLP-1 weight loss

17

drugs when obesity is the sole or major condition being treated, he has not plausibly stated a claim for relief and this matter must be dismissed under Fed. R. Civ. P. 12(b)(6).

## IV. ALTERNATIVELY, DEFENDANTS ARE ENTITLED TO JUDGMENT AS A MATTER OF LAW BECAUSE THE DHA'S ACTIONS WERE NOT ARBITRARY OR CAPRICIOUS.

### a. The DHA's Decisions And Actions Were Reasonable And Were Not Arbitrary Or Capricious Because They Were Necessary To Enforce Federal Law And Agency Regulations.

The core of the Plaintiff's argument is that the DHA's decision to enforce statutes, regulations, and rules, by amending the weight loss drug coverage authorization form so that only eligible covered beneficiaries received weight loss drug coverage, was arbitrary and capricious under the APA because it would destroy the pharmaceutical uniformity for TRICARE beneficiaries. *See*, *e.g.*, [DE 1, ¶ 8; DE 64, p. 11]. Under the APA, courts must "hold unlawful and set aside agency action ... found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In reviewing agency action, the court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Fort Sumter Tours, Inc. v. Babbitt*, 66 F.3d 1324, 1335 (4th Cir.1995) (internal citation omitted); *see Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). The "inquiry into the facts is to be searching and careful," but "the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Babbitt*, 66 F.3d at 1335 (quotation omitted). The

18

Supreme Court in *Motor Vehicle Mfrs. Ass'n,* 463 U.S. at 43, held that an agency's action is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

Here, the DHA's action is none of those things. The DHA is not exercising discretion nor making a policy judgment. It is simply enforcing the express prohibition promulgated in 32 C.F.R. § 199.4(g)(28), 10 U.S.C. § 1079(a)(10), and §§ 1086(a) and (d). Where Congress has spoken directly on an issue, the agency and the courts must follow that legislative command. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842-43 (1984) (now overruled but the first step—whether Congress has spoken directly on the issue—remains binding under *Loper Bright Enterprises v. Raimondo,* 603 U.S. 369 (2024)). Moreover, agencies' interpretations of their own rules and regulations, as opposed to their interpretations of statutes they administer, have long been afforded deference not under *Chevron,* but rather under *Auer v. Robbins,* 519 U.S. 452 (1997), and *Auer* is unaffected by *Loper Bright. See United States v. Poore,* 2025 WL 1201946, at *3 (7th Cir. Apr. 25, 2025) ("[T]he Supreme Court in *Loper Bright* did not purport to overrule or even modify *Auer*[.]"). Indeed, the APA has been "interpreted...to require agencies, on pain of being found to have acted arbitrarily and capriciously, to comply with their own regulations." *Cherokee Nation of Okla. v. Norton,* 389 F.3d 1074, 1078 (10th Cir.

19

2004) (citing *Miami Nation of Indians of Ind. Inc., v. United States Dep't of the Interior*, 255 F. 3d 342, 348 (7th Cir, 2001); *Utahns v. United States Dep't of Transp.*, 305 F. 3d 1152, 1165 (10th Cir. 2002)). *See also Cotton Petroleum Corp. v. United States Dep't of Interior, Bureau of Indian Affairs*, 870F. 2d 1515, 1527 (10th Cir. 1989) ("[T]he failure of an agency to comply with its own regulations constitutes arbitrary and capricious conduct." (citing *Simmons v. Block*, 782 F. 2d 1545, 1550 (11th Cir, 1986)). Put another way, "[a]gencies are under an obligation to follow their own regulations, procedures, and precedents, or provide a rational explanation for their departures." *Big Horn Coal Co. v Temple*, 793 F.2d 1165, 1169 (11th Cir. 1986) (quoting *Nat'l Conservative Political Action Comm. v. FEC*, 626 F.2d 953, 959 (D.C. Cir 1979)); *accord Brock v. Cathedral Bluffs Shale Oil Co.*, 796 F.2d 533, 536 (D.C. Cir. 1986) ("It is axiomatic that an agency must adhere to its own regulations."); *Sierra Club v. Van Antwerp*, 526 F.3d 1353, 1368 (11th Cir. 2008) ("[A]n agency's failure to follow its own regulations and procedures is arbitrary and capricious."). Here, The DHA acted quite reasonably in seeking to enforce the applicable statutory and regulatory provisions related to GLP-1 coverage and TFL beneficiaries.

Even if the DHA had acted in a policymaking role or exercised discretion in this matter, its actions were far from arbitrary and capricious. Federal law and applicable agency regulations are clear regarding the exclusion of weight-loss treatment under certain conditions within the TRICARE program – 32 C.F.R. § 199.4(g)(28), 10 U.S.C. § 1079(a)(10), and 10 U.S.C. §§ 1086(a) and (d) exclude coverage for GLP-1 weight-loss drugs used to treat obesity for TFL beneficiaries when

20

that is the sole or major condition being treated. *See* [SMF 1-2]. The DHA's August 2025 clarification is not a new policy, but the correction of an oversight in the prior authorization process, which merely complies with existing laws and its regulations, including the 2019 final rule. *See* [SMF 1-2, 41-51]. The DHA's revised prior authorization criteria assure that weight-loss medications, including GLP-1 weight-loss drugs, are not being provided to otherwise ineligible TFL beneficiaries, which in turn reflects the express statutory and regulatory prohibition on covering treatment for obesity as a "sole or major condition." *See* [SMF 49-52]. This is not inconsistent or arbitrary but a logical and required application of the law and regulations based on the diagnosed condition.

Moreover, DHA's actions were not otherwise violative of the law. Plaintiff's argument that the DHA violated "notice-and-comment" provisions of the APA is wholly without merit. Put simply, no new rule was amended or implemented. [SMF 53]. The DHA passed a final rule in February 2019, but Plaintiff does not challenge that final rule, either procedurally or substantively. Rather, Plaintiff's argument presumes that DHA's actions had the net effect of amending existing uniformity rules, including the 2019 rule, but that is not so. The DHA's actions at the end of August 31, 2025, was to give full force and effect to the statutory and regulatory language proscribing weight loss drug coverage for TRICARE beneficiaries, including the final rule published after "notice-and-comment" in February 2019. *See* [DE 70-1, AR 499-502; DE 71-1, AR 503-506]; [SMF 51-53].

DHA's actions also have the force and effect of protecting the public fisc whereas Plaintiff would have taxpayers pay for his weight loss drug coverage, contrary to the express statutory prohibition, when obesity is the sole or major condition being treated. To hold DHA's action was unreasonable or arbitrary and capricious would force the DHA to expend taxpayer dollars on a treatment that is explicitly excluded by law. Such a decision would undermine the careful fiscal controls established by Congress for the TRICARE program. The public has a vested interest in ensuring that the government's health care programs are administered within their authorized budgetary constraints. Compelling coverage would set a dangerous precedent, opening the door for similar lawsuits that could destabilize the TRICARE budget and potentially cause harm to other beneficiaries.

To hold the DHA acted unreasonably or arbitrarily or capriciously would also effectively disregard the public interest which is served by upholding the integrity of federal programs and respecting the separation of powers. The public relies on agencies to administer programs according to the laws passed by Congress, not to substitute their judgment for that of the legislature. Ordering the DHA to ignore 32 C.F.R. § 199.4(g)(28) (excluding coverage for weight lost "services and supplies"), 32 C.F.R. § 199.17(a)(6)(ii)(C) (incorporating coverage limits for TFL beneficiaries as described in 32 C.F.R. § 199.4), 10 U.S.C. §§ 1086(a) and (d), and 10 U.S.C. § 1079(a)(10) and other related regulations would erode public trust in the principled administration of government healthcare benefits.

Plaintiff claims the exclusion of weight-loss drugs for obesity "is not in accordance with law and exceeds statutory and regulatory authority." [DE 1, p. 4]; *see also* [DE 26, p. 18]. Plaintiff is wrong. 32 C.F.R. 199.4(g)(28), 10 U.S.C. § 1079(a)(10), and 10 U.S.C. §§ 1086(a) and (d), respectively, control the exclusion of GLP-1 weight-loss drugs from TFL beneficiaries and dependents and must be complied with by the DHA. In this case, the DHA faithfully fulfilled its obligation to follow 32 C.F.R. 199.4(g)(28), 10 U.S.C. § 1079(a)(10), and 10 U.S.C. §§ 1086(a) and (d) by amending the relevant authorization form to distinguish between eligible, covered TRICARE Prime and Select beneficiaries on one hand and ineligible TFL beneficiaries on the other. *See* [DE 76-1, AR 2711, 2748-56, 2820, 2824-27].

Plaintiff's disagreement is with federal law and regulations, not with the DHA's administration of them. The DHA's enforcement of 32 C.F.R. 199.4(g)(28), 10 U.S.C. § 1079(a)(10), and 10 U.S.C. §§ 1086(a) and (d) is not an act of discretion but a ministerial duty. Because the DHA was simply enforcing existing, mandated exclusions, it was not required to engage in formal notice-and-comment rulemaking. Its action was a standard administrative enforcement and clarification.

If Plaintiff believes that the current exclusion of weight-loss medication from coverage is outdated or ill-advised, the appropriate course of action is to petition Congress to amend 10 U.S.C. § 1079(a)(10) or 10 U.S.C. §§ 1086(a) and (d) or engage in political advocacy to revise any applicable regulations, e.g. 32 C.F.R. § 199.4(g)(28). The Court's role is to ensure agencies act within the bounds of the law, not to rewrite the law or applicable regulations. Here, regulations and law dictate that GLP-1

23

weight-loss drugs are not covered for TFL beneficiaries and dependents, *see* 32 C.F.R. 199.4(g)(28), 10 U.S.C. § 1079(a)(10), and 10 U.S.C. §§ 1086(a) and (d), and the DHA's obligatory decision to enforce the law and its own regulations cannot credibly be considered arbitrary or capricious.

**b.** **The DHA's Clarification Was Reasonable And Not Arbitrary Or Capricious Because It Is A Rational Enforcement of Existing Law.**

The DHA's August 31, 2025, clarification was a reasoned administrative action, not an unreasonable or arbitrary or capricious action. The agency explicitly referenced the statutory and regulatory authorities it was enforcing. The clarification serves to ensure that TRICARE benefits are consistently applied according to federal law, particularly given the proliferation of GLP-1 medications being prescribed for weight management. The distinction between using GLP-1 drugs for a covered condition (e.g., type 2 diabetes) versus an excluded condition (weight management) is both rational and consistent with the regulations.

Plaintiff's frivolous and meritless allegation that the TFL benefits are the product of age discrimination fall flat. Nothing about this "wrap-around" program, and the sensible savings stemming from it, indicates that the settlements are motivated by age animus or that they otherwise discriminate on the basis of age. *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993) ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is

24

correlated with age...."). As one court held, in describing Congress' role in military cost-cutting,

> Tricare, a regionalized managed care program, was designed by the Department of Defense to reduce costs for the military hospital system and the CHAMPUS program. Tricare was intended to make more efficient use of military medical resources and thereby achieve cost savings.... Congress specifically provided that the Secretary of Defense would arrange for an on-going evaluation of the effectiveness of the Tricare program, with the evaluation specifically addressing the impact of the program on military retirees with regard to access, costs, and quality of health care services.... Congress could rationally make the legitimate judgment that Tricare could best perform its purpose of reducing costs for the military health care system if retirees eligible for Medicare were not included. It cannot be said that the legislative facts on which the classification is based could not reasonably be conceived to be true by Congress.

*Schism v. United States*, 972 F.Supp. 1398, 1407 (N.D. Fla. 1997) (internal citations and quotations omitted). Thus, as noted in *Schism*, Congress has an obligation to establish protections to the public fisc within the TRICARE system. That same obligation supports' Congress decision to exclude GLP-1 medications from TRICARE coverage, and Plaintiff cannot establish that the decision to enforce GLP-1 exclusions from TFL coverage was irrational or the product of age discrimination.

Moreover, Plaintiff completely ignores the fact that TFL's coverage of weight loss drugs for beneficiaries is specifically addressed in 32 C.F.R. § 199.4(g)(28) (excluding coverage for weight lost "services and supplies"), 32 C.F.R. § 199.17(a)(6)(ii)(C) (TFL's coverage limits are described in 32 C.F.R. § 199.4), and 10 U.S.C. §§ 1086(a) and 1086(d) (excluding coverage of GLP-1 weight-loss drugs for TFL beneficiaries as described in 10 U.S.C. § 1079(a)(10)). Plaintiff's inexplicable omission

of those provisions from his APA Complaint ignores the most critical provisions of TRICARE statutes and regulations applicable to this case.

While Plaintiff argues the formulary entitles him to GLP-1 coverage because Prime/Select beneficiaries receive that coverage, *see, e.g.,* [DE 64, pp. 10-11], his argument ignores a basic tenet of statutory construction: statutes should be construed "in a manner that gives effect to all of their provisions," *United States ex rel. Eisenstein v. City of New York,* 556 U.S. 928, 933 (2009). Plaintiff's argument, that because Prime/Select beneficiaries are eligible for GLP-1 drug coverage he is also entitled to GLP-1 drug coverage under § 1074g, renders meaningless the plain statutory exclusion of GLP-1 coverage from TRICARE described in 10 U.S.C. § 1079(a)(10). Plaintiff does not cite any authority, for there is none, that justifies rendering § 1079(a)(10) meaningless or superfluous simply because § 1074g calls for "an effective, efficient, integrated pharmacy benefits program" with "a uniform formulary of pharmaceutical agents." [DE 64, p. 10], citing 10 U.S.C. § 1074g(a)(l) - (2). In fact, throughout this case, Plaintiff never directly addresses his lack of statutory eligibility to receive GLP-1 drug coverage due to § 1079(a)(10). Plaintiff merely offers the mathematical possibility that, despite his doctor's sworn declaration, *see* [DE 15-3, p. 2] (GLP-1 drug was prescribed to Plaintiff for being overweight with comorbidities), his weight may not be the sole or major condition of his being treated with GLP-1 drugs. [D.E. 64, pp. 16-17]. Plaintiff's self-serving and conclusory conjecture and failure in this regard highlights the absurd interpretation Plaintiff asks the Court to adopt which would, contrary to the rules of statutory

26

construction, render meaningless and superfluous the plain provisions of 10 U.S.C. § 1079(a)(10).

Lastly, on the merits, Plaintiff's uniformity argument fails. GLP-1 drugs, *e.g.* Wegovey, were approved for uniform medical use for all "eligible" covered beneficiaries. *See* [SMF 21, 23]. *See also* 10 U.S.C. 1074g(a)(2)(E) ("Pharmaceutical agents included on the uniform formulary shall be available to **eligible** covered beneficiaries….") (emphasis added). Plaintiff's argument fails to appreciate that, under the applicable statutes and regulations, he is not an **eligible** covered beneficiary who is entitled to GLP-1 coverage – indeed, under the authority of the applicable statutes and regulations, Plaintiff has never been eligible for GLP-1 drug coverage as a TFL covered beneficiary.

Because Plaintiff has no argument well-grounded in law or fact to suggest those statutory and regulatory provisions do not apply to him (because they do), he cannot establish that DHA's actions enforcing statutory and regulatory requirements were unreasonable, arbitrary and capricious, or otherwise violative of the law. Consequently, Defendants are entitled to judgment as a matter of law.

## V.    CONCLUSION

For the reasons above, this matter must be dismissed for failing to state a plausible claim for relief or, in the alternative, Defendants are entitled to judgment as a matter of law.

Respectfully submitted this 30th day of December, 2025.

W. ELLIS BOYLE
United States Attorney

BY: /s/ Rudy E. Renfer
RUDY E. RENFER
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Email: rudy.e.renfer@usdoj.gov
N.C. Bar # 23513
Attorney for the United States

28

<u>CERTIFICATE OF SERVICE</u>

I do hereby certify that I have this 30th day of December, 2025, served a copy

of the foregoing upon the below listed party electronically using the CM/ECF system

or by placing a copy of the same in the U.S. Mail, addressed as follows:

Derence V. Fivehouse
316 Seaview Drive
Edenton, NC 27932

BY: /s/ Rudy E. Renfer
RUDY E. RENFER
Assistant United States Attorney
Civil Division
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4530
Email: rudy.e.renfer@usdoj.gov
N.C. Bar # 23513
Attorney for the United States