

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-cv-00041-M-RN

DERENCE V. FIVEHOUSE,
Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
DEFENSE HEALTH AGENCY;
HON. PETE HEGSETH, in his official capacity as
Secretary of Defense; and
DR. DAVID J. SMITH, in his official capacity as
Acting Director, Defense Health Agency,
Defendants.

PLAINTIFF'S CONSOLIDATED REPLY
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
MOTION FOR SUMMARY JUDGMENT [DE 93] AND IN FURTHER SUPPORT OF
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DE 63]

I. INTRODUCTION

The Government's two briefs [DE 90, DE 93] total 53 pages but never answer the central question

this case presents:[1] Where does Congress authorize DHA to deny TRICARE For Life ("TFL") enrollees

access to weight loss medications that remain on the uniform formulary for all other TRICARE

beneficiaries? The answer is "nowhere."

In 1999, Congress created the TRICARE Pharmacy Benefits Program; one "uniform formulary"

for all "eligible covered beneficiaries." 10 U.S.C. § 1074g(a)(2); Section 701 of the National Defense

Authorization Act ("NDAA") for Fiscal Year 2000, Pub. L. 106-65 § 701 (Oct. 5, 1999). One year later

---

[1] Defendants' Opposition [DE 90 at 2 n.2] objected to the length of Plaintiff's summary judgment
briefing, requesting the Court disregard any pages exceeding the 30-page limit. That objection is notably
absent from Defendants' Motion to Dismiss [DE 93]. In any event, this Court has discretion to consider
comprehensive briefing on complex statutory questions of first impression affecting 2.5 million military
retirees. See Local Civil Rule 7.2(f) (permitting court to grant leave for extended briefing). Plaintiff's
consolidated reply to Defendants' 53 pages of combined argument necessarily addresses multiple
overlapping contentions.

1

Congress created TFL, restoring full TRICARE eligibility and pharmacy benefits through the TRICARE Senior Pharmacy Program to retirees who previously lost benefits upon becoming Medicare-eligible. 10 U.S.C. § 1086(d); Section 711 and 712 of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001, Pub. L. 106-398, §§ 711, 712 (Oct. 30, 2000). Congress did not create parallel pharmacy programs for each TRICARE plan with different formularies. The "uniform" formulary requirement of § 1074g applies to all covered beneficiaries, specifically including TFL. Congress required that TFL enrollees (who are "covered beneficiaries" as defined by § 1072(5)) receive "the same" benefits as all other TRICARE beneficiaries. 10 U.S.C. § 1086(a). DHA has identified no statutory provision authorizing plan-based discrimination in medical benefits or exclusions from the uniform formulary.

For the eight years following passage of § 729 of National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 729, 130 Stat. 2000, 2235 (2016) ("NDAA 2017 § 729") which DHA determined authorized "treatment for obesity," for all "covered beneficiaries," coverage for weight loss drugs was the same for all TRICARE enrollees. On August 31, 2025, after approximately one month's notice, DHA categorically terminated coverage for TFL. This action was taken without any analysis of DHA's statutory authority, statutory P&T Committee or Uniform Formulary- Beneficiary Advisory Panel ("UF-BAP") review,[2] or notice-and-comment rulemaking.

The Government's rationale was "regulatory controls" and a citation to 32 C.F.R. § 199.17(f)(3), a subsection of § 199.17, TRICARE Program, the managed health care regulations applicable to Prime/Select enrollees only. Promulgation of § 199.17(f)(3) was final in 2019; it articulated the authorization to treat obesity in NDAA 2017 § 729. It addressed treatment of obesity for Prime/Select only. That is as far as DHA's explanation went.

---

[2] The Court may take judicial notice that the Uniform Formulary Beneficiary Advisory Panel made zero recommendations in Fiscal Year 2025. See GSA Federal Advisory Committee Act Database, https://www.facadatabase.gov/FACA/apex/FACAPublicCommittee?id=a10t0000001gQnuAAE (reflecting no recommendations for FY 2025); Fed. R. Evid. 201(b)(2). The advisory committees were suspended effective March 10, 2025. Executive Order, "Commencing the Reduction of the Federal Bureaucracy," 90 Fed. Reg. 11,905 (Mar. 14, 2025).

2

The Government's current argument, articulated only in litigation briefs, never in the Administrative Record ("AR"), relies on an interpretation chain that includes § 199.17(f)(3), 10 U.S.C. § 1079(a)(10) and 32 C.F.R. § 199.4(g)(28). Section 1079(a)(10) is a plan neutral medical-benefits conditional exclusion for treatments for "obesity" when "obesity is the sole or major condition treated." Section 199.4(g)(28), is a subsection of the regulation addressing the Basic Program Benefits which operationalizes § 1079(a)(10). The defense now asserts that because § 199.17(f)(3) did not include a reference to TFL, it is still subject to § 1079(a)(10) and § 199.4(g)(28) which require the categorical exclusion of TFL from all weight loss treatments. The Government cannot point to any provision of 10 U.S.C. §§ 1074g, 1086, or 1079, or 32 C.F.R. § 199.17 or § 199.4 that authorizes DHA to break § 1086's mandate that all beneficiaries receive "the same" benefits or § 1074g's mandate for parity of access to the "uniform" formulary.

This case turns on a single authority question: can DHA deny access to a drug that remains on the Title 10 "uniform formulary" based solely on plan type, by simply adding a plan-type gate to prior authorization ("PA") forms? The Government's litigation theories fail at step one and continues failing:

**First:** The Government claims DHA's failure to include TFL in 32 C.F.R. § 199.17(f)(3) (or any of its regulations) establishes that TFL cannot receive "treatment for obesity" authorized by NDAA 2017 § 729. DHA agrees that NDAA 2017 § 729 authorized "treatment for obesity even if it is the sole or major condition treated" "notwithstanding 10 U.S.C. § 1079(a)(10)," citing it as authority to treat Prime/Select. NDAA 2017 § 729 specifically identifies all covered beneficiaries, including TFL, as affected – a point the Government fails to acknowledge or address in 53 pages. DHA cannot identify any authority for failing to extend NDAA 2017 § 729's benefit to TFL.

Whether operationalized in regulation or not, NDAA 2017 § 729 as implemented by DHA authorized "treatment for obesity" and is the law. If DHA had included TFL in § 199.17(f)(3) or had modified its other regulations to include TFL, TFL would be covered. The Government cannot argue otherwise. DHA's failure to fully implement a Congressional command and include all covered

3

beneficiaries as directed cannot be converted into authority to partially violate that command and exclude some.

DHA now asserts that it intended that TFL be excluded from this benefit when it promulgated 32 C.F.R. § 199.17(f)(3) in 2017. But that intent was neither announced nor enforced for eight years – all while DHA provided full coverage for weight loss treatment to TFL. Based on DHA's eight years of implementation inconsistent with its recent expression of intent, Plaintiff doubts that DHA actually held that intent in 2017, but that is immaterial. It is, however, material that by attempting to implement that intent now, DHA has engaged in ultra vires conduct.

Based on DHA's current position, 32 C.F.R. § 199.17(f)(3) is more than just a 2017 failure to fully implement a Congressional command. It is an effort to unlawfully assume legislative authority and break "the same" and "uniform" architecture created by Congress. Congress can differentiate based on plan type, and it has. DHA has not and cannot identified any authority to break the existing architecture with its plan-based categorical exclusion.

The attempt at a regulatory carve-out of TFL is the first ultra vires act. Everything else in this case is support for that proposition.

**Second,** as applied by DHA, NDAA 2017 § 729 provided authority to treat obesity "notwithstanding" 10 U.S.C. § 1079(a)(10). All covered beneficiaries were affected by NDAA 2017 § 729. DHA now categorically bars TFL from any treatment of obesity by applying § 1079(a)(10) which conditionally excludes treatment of obesity. This comes after DHA determined that NDAA 2017 § 729 authorized the unconditioned treatment of obesity "notwithstanding" § 1079(a)(10). The logic is impenetrable.

Even assuming 10 U.S.C. § 1079(a)(10) remains applicable to TFL, it does not do what the Government says. The statute is clearly conditional: it excludes treatment for obesity only "if obesity is the sole or major condition treated." But DHA applies it unconditionally, categorically – not based on medical criteria, but by plan-type. TFL are excluded before any medical criteria are evaluated. Section 1079(a)(10) asks a patient-specific medical question; DHA asks an administrative one. DHA cannot

4

explain how, even if § 1079(a)(10) remains applicable, it has been converted from conditionally excluding treatment of obesity to categorically excluding TFL from treatment for any weight-related indication.

Further, even if § 1079(a)(10) remains applicable, DHA's process for approving weight loss drugs ensures § 1079(a)(10) is not violated. Through its use of PA criteria DHA requires that patients demonstrate comorbidities which ensures that obesity is not "the sole or major condition treated." DHA cannot explain how all TFL are categorically excluded based on § 1079(a)(10) if some can demonstrate the treatment they seek is not for "obesity" or that "obesity is not the sole or major condition treated."

**Third**, DHA asserts 32 C.F.R. § 199.4(g)(28) expands the conditional exclusion for treatment of obesity in 10 U.S.C. § 1079(a)(10) to include "weight reduction or weight control." DHA cannot explain how § 199.4(g)(28), which operationalized § 1079(a)(10), survived NDAA 2017 § 729's authorization to provide treatment of obesity "notwithstanding" § 1079(a)(10) and "even if [obesity] is the sole or major condition treated."

Even if § 199.4(g)(28) remains applicable to TFL, it does not do what the Government says. Section 199.4(g)(28) largely tracks § 1079(a)(10)'s conditional language; excluding "services and supplies" "**solely**" related to "obesity or weight reduction or weight control." (Emphasis added.) The regulation's addition of "or weight reduction or weight control" ventures beyond 10 U.S.C. § 1079(a)(10)'s conditions–but even those ultra vires expansions retain the "solely" condition. DHA cannot explain how all TFL are categorically excluded based on § 1079(a)(10) / § 199.4(g)(28), without so much as a single inquiry about their medical condition. Is it factually impossible that any TFL could receive any weight-related treatment that is not "solely" related to obesity, weight reduction or weight control? That is a question for a health care professional, not a TRICARE administrator through a plan-type trap door.

Finally, DHA's process for approving weight loss drugs ensures § 199.4(g)(28) is not violated.

**Fourth**, he Government claims Plaintiff "fails to state a claim" because even if he prevails, no remedy exists. [DE 93 at 16-18] This is circular: the Government presupposes its own statutory interpretation – defective as it is, then concludes Plaintiff loses because that interpretation leaves no room

5

for relief. Plaintiff does not ask the Court to invalidate Prime/Select coverage or rewrite § 199.17(f)(3). Plaintiff seeks only a standard APA remedy: vacatur of the August 31, 2025 plan-based PA exclusion and restoration of the status quo ante. Nothing in this request is impossible.

**Fifth**, the Government characterizes the statutory and regulatory language it relies on as "unambiguous" [DE 90 at 1-2, DE 93 at 1-2], "mandated by law" [DE 90 at 13], "required" [DE 93 at 15], "clear" [DE 90 at 15; DE 93 at 20], "obligatory" [DE 90 at 18; DE 93 at 24] [DE 90 at 1-2, 14-15], and its actions as "enforcing the express prohibition" [DE 90 at 14; DE 93 at 19], a "ministerial duty" [DE 90 at 17; DE 93 at 23], and an "obligation" [DE 90 at 17]. On its public website, DHA describes the changes as "consistent with existing statutory and regulatory authority," and to "ensure prescription processing meets federal coverage requirements."[3] This position concedes the Plaintiff's point, this is a § 706(2)(C) ultra vires case rather than an arbitrary-and-capricious case.

In sum: The Government has identified no statute authorizing plan-based exclusions in a health care system designed by Congress to provide parity; "the same" medical benefits and a "uniform" formulary for all covered beneficiaries. To break parity, the Government relies on a tortured chain of interpretations that begin with its own defective implementation (32 C.F.R. § 199.17(f)(3)) of a congressional mandate (NDAA 2017 § 729) then leans on 10 U.S.C. § 1079(a)(10), a conditional exclusion of treatment of "obesity," which was effectively superseded by NDAA 2017 § 729 authorizing unconditioned treatment for obesity "notwithstanding" § 1079(a)(10). Then it applies § 1079(a)(10) categorically to TFL without any deference to its plain language requiring a medical inquiry or recognizing that its own PA process prevents its violation. Because DHA identifies no authority authorizing any of the above, its August 31, 2025 action must be vacated under 5 U.S.C. § 706(2)(C).[4]

---

[3] https://www.tricare.mil/CoveredServices/IsItCovered/WeightLossProducts

[4] Defendants' Opposition to Plaintiff's Statement of Material Facts [DE 91, ¶3] contains a collateral attack on venue. First, Defendants waived venue in their Answer. Second, a response to a Statement of Material Facts is not the proper vehicle. Third, the challenge lacks merit. Domicile is determined by intent to remain indefinitely. Plaintiff maintains his domicile at 316 Seaview Drive, Edenton, NC, registers his

6

## II. THIS CASE TURNS ON STATUTORY AUTHORITY, NOT ARBITRARY-AND-CAPRICIOUS REVIEW

### A. The Government's Interpretation Ignores Fatal Defects in 32 C.F.R. § 199.17(f)(3), 10 U.S.C. § 1079(a)(10) and 32 C.F.R. § 199.4(g)(28)

The Government's argument rests on this chain:

(1) 10 U.S.C. § 1074g(i)(1) defines "eligible covered beneficiary" by reference to eligibility "established under this chapter:"

(2) Chapter 55 includes § 1079(a)(10);

(3) 10 U.S.C. § 1079(a)(10) excludes the treatment of obesity;

(4) 32 C.F.R. § 199.4(g)(28) expanded the exclusions in 10 U.S.C. § 1079(a)(10) to include "weight reduction or weight control;"

(5) NDAA 2017 § 729 authorized treatments for obesity even if it is the sole or major condition treated;

(6) 32 C.F.R. § 199.17(f)(3) applied the authorization to treat obesity to Prime/Select;

(7) TFL remains subject to the exclusions in 10 U.S.C. § 1079(a)(10) and 32 C.F.R. § 199.4(g)(28) – TFL are not "eligible covered beneficiaries" for weight loss drugs;

(8) TFL enrollees erroneously received weight loss drugs; and

(9) DHA is now correcting that error.

This chain has multiple defects. Three are fatal: 32 C.F.R. § 199.17(f)(3) is not a Congressional edict. 10 U.S.C. § 1079(a)(10) was effectively superseded by NDAA 2017 § 729 authorizing treatment for obesity even if it is the sole or major condition treated to all covered beneficiaries. Even if § 1079(a)(10) and 32 C.F.R. § 199.4(g)(28) apply to TFL, DHA's process for approving weight loss drugs prevents any violation.

### B. The Government Mischaracterizes the Standard of Review

_____    _____

vehicles in NC, pays income taxes in North Carolina and has substantial ties to Northeastern North Carolina. Plaintiff intends to remain permanently in North Carolina even after vacationing in Florida.

7

Despite asserting that its interpretive chain establishes unambiguous direction to exclude TFL from coverage for all weight loss drugs, the Government repeatedly frames this as an arbitrary-and-capricious case. This framing concedes Plaintiff's central point: when an agency claims its action is compelled by law, the threshold question is statutory authority–i.e., what Congress actually authorized. This is a classic § 706(2)(C)/ultra vires dispute ("in excess of statutory jurisdiction, authority, or limitations"), not a case about fine-tuning an agency's discretion through remand.

Under the APA, the Court's "searching and careful" review, Citizens to Pres. Overton Park v. Volpe, 401 U.S. 402, 416 (1971), must begin with the threshold question of authority. If Congress did not grant that authority, then no amount of explanation can save the agency's action, because remand cannot supply the "reasoned basis the agency itself has not given." Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S. 29, 43 (1983). Courts distinguish between agency decisions that fall within a statutory delegation but are inadequately explained–which may be remanded–and agency actions that exceed the scope of the delegation itself–which must be vacated. FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 161 (2000); Util. Air Reg. Grp. v. EPA, 573 U.S. 302, 327 (2014).

In Sierra Club v. EPA, 705 F.3d 458 (D.C. Cir. 2013), the court underscored that when Congress sets a mandatory scheme, agencies cannot "ignore the rigidity of the statute" and dilute it by administrative convenience: "Congress provided a clear mandate that the EPA does not have authority to disregard, even if the mandated requirements appear to it to be superfluous." Id. at 469. And "[a]gencies are not empowered to carve out exceptions to statutory limits on their authority." In re Sealed Case, 237 F.3d 657, 670 (D.C. Cir. 2001), citing Ry. Labor Executives' Ass'n v. Nat'l Mediation Bd., 29 F.3d 655, 671 (D.C. Cir. 1994) ("Were courts to presume a delegation of power absent an express withholding of such power, agencies would enjoy virtually limitless hegemony, a result plainly out of keeping with Chevron and quite likely with the Constitution as well.")

**C. Post-Loper Bright, the Court Exercises Independent Judgment**

The Government asks this Court to view this case as one involving agency discretion or a "reasonable" interpretation of a complex statutory scheme. Again, such framing ignores the fundamental

8

APA requirement that agencies possess actual statutory authority for their actions, which is the threshold question here. The Supreme Court's recent decision in Loper Bright Enterprises v. Raimondo, 144 S. Ct. 2244 (2024), definitively altered the landscape of judicial review, eliminating the deference previously afforded to agencies' interpretations of ambiguous statutes. This requires that the Court exercise its independent judgment to determine the singular, correct meaning of the statutory text. Because the terms "uniform," "the same," "covered beneficiaries," and "if obesity is the sole or major condition treated" are unambiguous, the Court is empowered to interpret the statute de novo and ensure that DHA has not exceeded the clear boundaries set by Congress.

The question is what the statute means, not what the agency interprets it to mean. As Judge Flanagan recently explained, the court's task is to "independently interpret the statute and effectuate the will of Congress." N.C. Farm Bureau Fed'n, Inc. v. U.S. Dep't of Labor, 781 F. Supp. 3d 455, 474 (E.D.N.C. 2025). Where the statute speaks directly, there are no boundaries within which the agency may exercise discretion. "Uniform" admits no agency gloss allowing differentiated access. "The same" leaves no room for permitting plan-based exclusions. As the court put it in America's Community Bankers v. FDIC, 200 F.3d 822 (D.C. Cir. 2000), "[t]here is no difficulty in our reviewing the statutory language de novo. That is, after all, what courts do."

The statute and regulations here are not ambiguous – it is the Government's forced interpretations that rely on ultra vires defects and ignoring plain language that creates the ambiguity the Government now seeks to leverage through deference.

**D. Defendants' Auer Pivot Fails**

Defendant's attempt to salvage deference by pivoting from Chevron to Auer [DE 90 at 14; DE 93 at 19] does not change the analysis. Even for regulations, Auer deference is narrow and conditional. Under Kisor v. Wilkie, 588 U.S. 558 (2019), a court defers only if: (1) the regulation is genuinely ambiguous after exhausting the traditional tools of construction; (2) the agency's interpretation is authoritative and considered; (3) the interpretation is consistent with prior agency positions; and (4) the

9

interpretation does not create unfair surprise. Id. at 575-78. The Government's interpretation fails every criterion.

**First**, none of 32 C.F.R. § 199.17, 10 U.S.C. § 1079(a)(10), or 32 C.F.R. § 199.4, or 32 C.F.R. § 199.21 are genuinely ambiguous. 32 C.F.R. § 199.17 is made ultra vires by DHA's interpretation of its consequences – not ambiguous. Section 1079(a)(10) excludes "treatment for obesity," with conditions, which are plainly identified. Both 32 C.F.R. §§ 199.4(g)(28) (and § 199.4(e)(15)) mirror the conditions for treatment expressed in § 1079(a)(10) -– except where they purport to add exclusions in excess of those authorized by § 1079(a)(10). 32 C.F.R. § 199.21(a)(3)(iii)'s "exclusively" limitation forecloses plan-based carveouts for agents with multiple approved therapeutic uses–is not ambiguous. These provisions speak clearly. It is the Government's constructions that introduce ambiguity.

**Second**, the Government's reading is neither "authoritative" nor "considered." The AR contains no contemporaneous statutory analysis supporting its litigation theory. The detailed litigation arguments appearing in DE 90 and DE 93 appear nowhere in the July 3, 2025 "Decision Paper." An interpretation invented for litigation is not entitled to deference. Kisor, 588 U.S. at 575 ("a court should decline to defer to nothing more than a "convenient litigating position" or "post hoc rationalizatio[n] advanced" to "defend past agency action against attack.") (quoting Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155 (2012)).

**Third**, the interpretation is not consistent. For eight years (2017-2025), DHA processed TFL PAs for weight loss medications, collected cost-sharing, and administered coverage. The Government now claims they only recently realized that TFL enrollees were "never eligible" – citing only their failure to include TFL in § 199.117(f)(3) as support for that position. Under Kisor, inconsistency defeats deference ("[w]e have therefore only rarely given Auer deference to an agency construction "conflict[ing] with a prior" one"). Id. at 577.

**Fourth**, the interpretation creates unfair surprise. TFL enrollees relied on eight years of consistent coverage. TFL enrollees, including the Plaintiff, sought and received medical care, filled prescriptions, paid cost-sharing, and made healthcare decisions based on DHA's administration of the

10

benefit. The Government's position–that this coverage was always "erroneous"–upended settled
expectations without warning. Kisor held "[d]eference turns on whether an agency's interpretation creates
unfair surprise or upsets reliance interests." Id. at 577.

The Government's Auer pivot fails because its interpretation satisfies none of the prerequisites for
deference. This Court must interpret the statutes and regulations de novo–and under de novo review, the
Government's chain of interpretation collapses.

**E. This Is an Authority Case**

The Government asserts that DHA's action was a "clarification" of existing policy. [DE 90 at 1,
8, 11-12; DE 93 at 1, 10-11]. The AR confirms this is an authority case, not an explanation
("clarification") case.

The July 3, 2025 "Decision Paper" (AR 2675-2679) cites no statutory authority for excluding
TFL, contains no analysis of 10 U.S.C. § 1086 mandate for "the same" benefits, 10 U.S.C. § 1074g's
uniform formulary mandate, NDAA 2017 § 729's expansion of "treatment for obesity" for all covered
beneficiaries, nor offers any explanation of why DHA believed it possessed authority to create plan-based
formulary distinctions. The detailed statutory arguments in Defendants' briefs are post-hoc
rationalizations that appear nowhere in the AR. See Motor Vehicle Mfrs. Ass'n v. State Farm, 463 U.S.
29, 43 (1983) ("courts may not accept . . . post hoc rationalizations"). In Ass'n of Civil Technicians, P.R.
Army Chapter v. FLRA, 269 F.3d 1112 (D.C. Cir. 2001), the court applied Chenery to prevent litigation
briefing from substituting for contemporaneous agency reasoning: "Agency decisions must generally be
affirmed on the grounds stated in them," and "[p]ost-hoc rationalizations, developed for litigation are
insufficient." Id. at 1117.

More troubling, the AR shows DHA notified contractors in March and April 2025 to implement a
TFL carveout (AR2824-AR2827) months before the agency signed the July 3, 2025 Decision Paper
(AR2675-AR2679). Whether or not any other materials ever existed, the AR contains no
contemporaneous statutory-authority analysis explaining a plan-based carveout before implementation
began.

11

Defendants' repeated citations to their Statement of Material Facts [DE 94] do not alter this analysis. The Government's SMF asserts that "ineligible beneficiaries" received coverage "not allowed by statutes or regulations" [SMF 41-46] and that DHA's August 2025 action was "not a new policy" [SMF 53]. These are legal conclusions, not facts. Whether TFL enrollees were "ineligible" is the central legal dispute–it cannot be resolved by Defendants labeling them "ineligible" in their SMF. Similarly, whether the August 2025 action constitutes a "new policy" is a legal question this Court must decide. Defendants cannot bootstrap their preferred legal conclusions into the factual record by reciting them as "undisputed material facts."

Plaintiff disputes, and the AR contradicts, Defendants' characterization. For eight years DHA treated TFL access to weight loss medications as covered using the same documented medical indications for all beneficiaries – despite admittedly being aware that 32 C.F.R. § 199.17(f)(3) only addressed Prime/Select. The assertion that DHA only recently determined TFL coverage was "always erroneous" is a post-hoc litigation position. Plaintiff suggests that in 2017 DHA clearly understood that NDAA 2017 § 729 extended treatment benefits to all covered beneficiaries and felt it unnecessary to call that out in its regulations. DHA simply extended those benefits to all covered beneficiaries – as Congress had directed.

The Government asserts its "clarification" of existing policy requiring no notice-and-comment procedures. [DE 90 at 11-12; DE 93 at 21]. This characterization is belied by the record and the practical consequences. A "clarification" that uses mandatory language and purports to bind parties "with the force of law" is legislative (not interpretive). Environmental Integrity Project v. EPA, 425 F.3d 992, 998 (D.C. Cir. 2005) (quoting Gen. Elec. Corp. v. EPA, 290 F.3d 377, 382 (D.C. Cir. 2002)); Chrysler Corp. v. Brown, 441 U.S. 281, 302–03 (1979). Because the August 2025 rule bound contractors and beneficiaries, it required APA procedures regardless of the 'clarification' label.

## F. "Error Correction" Does Not Supply Missing Authority; "Ministerial Duty" Is A Conclusion

Defendants' characterization of DHA's action as "error correction" requires no extended analysis. [DE 90 at 7-8, 11; DE 93 at 10] This framing again misses the point. Enforcement presupposes valid authority. If DHA lacked statutory authority to exclude TFL from the expanded treatment coverage, and

12

DHA had actually intended that result, then DHA intended an ultra vires act. Acting on it eight years later makes it real.

The Government's characterization of DHA's action as "ministerial duty" enforcement [DE 90 at 17; DE 93 at 23] fails here because the challenged PA plan-type gate is nowhere commanded by 10 U.S.C. § 1079, 32 C.F.R. § 199.4, § 199.17 or § 199.21. An agency has a ministerial duty to enforce only those requirements Congress actually enacted. The threshold question is whether Congress authorized DHA to create plan-based formulary distinctions that deny TFL access to drugs available to Prime/Select. If Defendants are correct that the statute compels denial, they should be able to point to a provision that compels a plan-based exclusion–but the only statutory text they cite compels, at most, a patient specific 'sole or major condition treated' determination. If Congress did not grant that authority, then DHA's action is not ministerial enforcement of existing law but ultra vires lawmaking.

## G. Defendants' Motion to Dismiss Fails Under Rule 12(b)(6)

Defendants' motion to dismiss under Rule 12(b)(6) [DE 93 at 11–18] conflates the pleading standard with the merits. The question under Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007), and Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), is whether Plaintiff has pleaded sufficient factual matter to state a plausible claim–not whether Defendants' competing interpretation of the statute is correct.

Plaintiff's Complaint alleges: (1) he is a TFL beneficiary entitled to TRICARE pharmacy benefits; (2) Congress mandated a "uniform formulary" available to all "eligible covered beneficiaries" under 10 U.S.C. § 1074g; (3) Congress required that TFL enrollees receive "the same" benefits as other TRICARE beneficiaries under 10 U.S.C. § 1086(a); (4) DHA terminated his access to formulary drugs based solely on plan type; and (5) DHA acted without notice–and–comment rulemaking, P&T Committee review, or UF-BAP input. [DE 1, 1–8, 15–25]. These factual allegations, accepted as true and drawing all reasonable inferences in Plaintiff's favor, King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016), state a plausible claim that DHA exceeded its statutory authority under 5 U.S.C. § 706(2)(C).

## III. THE MAJOR QUESTIONS DOCTRINE INDEPENDENTLY COMPELS JUDICIAL REVIEW

13

Even under ordinary textual review Plaintiff prevails; Major Questions Doctrine is an independent backstop. The principles of independent judicial review and the rejection of agency deference are not merely theoretical; they are particularly relevant to this dispute. The decision in West Virginia v. EPA, 597 U.S. 697 (2022), reinforces a critical limitation on agency power: the Major Questions Doctrine.

The Major Questions Doctrine independently compels this result. Under West Virginia v. EPA, agencies may not claim authority over questions of "vast economic and political significance" absent clear congressional authorization. Breaking the parity-based structure of TRICARE to terminate drug coverage for 2.5 million military retirees based only on plan-type – sets a precedent that will encourage future mischief that further degrades TFL benefits–is precisely such a question. Congress provided no clear authorization for DHA to fracture benefit and formulary uniformity; it mandated the opposite.

## IV. THE STATUTORY FRAMEWORK FOR TRICARE DEMANDS PARITY AND UNIFORMITY

### A. Section 1086(a) of Title 10 U.S.C.: "The Same" Benefits

Section 1086(a) brought Medicare–eligible retirees (TFL) into the family of TRICARE covered beneficiaries and mandated that the Secretary "shall contract under the authority of this section for health benefits for those persons under the same insurance, medical service, or health plans he contracts for under section 1079(a) of this title." 10 U.S.C. § 1086(a). The plain language is mandatory and unambiguous: TFL enrollees receive "the same"–not similar, comparable, or modified–benefits. Section 1086 included no discretionary language permitting DHA to differentiate between TRICARE enrollees based on plan type. DHA has no independent authority to exclude TFL from the expansion of medical benefits made available by NDAA 2017 § 729, absent clear Congressional direction.

The Government argues that 10 U.S.C. § 1086(a)'s reference to benefits for TFL "under the same insurance, medical service, or health plans he contracts for under § 1079(a)" imports § 1079(a)(10)'s categorical exclusion into TFL coverage. [DE 90 at 5; DE 93 at 4–5]. The Government gets the easy part right, § 1079(a) is (or was) applicable to all covered beneficiaries. It misses the important remainder:

14

**First**, § 1079(a)(10) is plan neutral. 10 U.S.C. § 1079(a) provides no independent authority for differentiating between covered beneficiaries by plan type. Section 1086(a) mandates that TFL enrollees receive "the same" benefits–not reduced benefits, not different benefits, not benefits filtered through exclusions that DHA wishes to apply only to TFL. Section 1079(a)(10) does not change this analysis.

**Second**, § 1079(a)(10) is conditional, not unconditional or categorical – there are exceptions to the exclusion of "treatment for obesity", i.e., when NOT "the sole or major condition treated." Section 1079(a)(10) does not do the work the Government wants it to do.

**B. Section 1074g: "Uniform Formulary"**

Congress established the pharmacy benefits program at 10 U.S.C. § 1074g, commanding that it "shall include a uniform formulary of pharmaceutical agents, which shall assure the availability of pharmaceutical agents in the complete range of therapeutic classes." § 1074g(a)(2)(A). Pharmaceuticals on the uniform formulary "shall be available to eligible covered beneficiaries." § 1074g(a)(2)(E). "Uniform" is not ambiguous. Nowhere does § 1074g authorize different formularies for different TRICARE plans or permit excluding TFL enrollees ("covered beneficiaries" as defined by § 1072(5)) from medications available to Prime/Select enrollees.

By design TRICARE plans differ only in cost–sharing, network requirements, and delivery mechanisms–structural differences in how benefits are administered. Because § 1086(a) mandates "the same" benefits, the system has always operated on that principle – EXCEPT when Congress clearly provides otherwise.

The Government argues that reading § 1074g to mandate uniform formulary access would render § 1079(a)(10) "superfluous." [DE 90 at 22–23; DE 93 at 26]. This misrepresents so much.

**First**, DHA has already determined that Section 1079(a)(10) is largely "superfluous." In 2017 DHA explained its basis for covering obesity treatment for Prime/Select:

> It is DoD's conclusion that the underlying authority of 10 U.S.C. 1097, together with section 729 of NDAA-17 **(which specifically authorizes medical intervention for obesity)**, allow the Department to cover these services **when provided by a network provider for a TRICARE Prime or TRICARE Select enrollee.**

15

82 Fed. Reg. 45,438, 45,441-42 (Sept. 29, 2017). (Emphasis added.)

DHA continued in 32 C.F.R. § 199.17(f)(3):

> Under the authority of 10 U.S.C. 1097 and sections 706 and 729 of the National Defense
> Authorization Act for Fiscal Year 2017, **notwithstanding 10 U.S.C. 1079(a)(10),**
> **treatment of obesity is covered under TRICARE Prime and TRICARE Select even**
> **if it is the sole or major condition treated.**

(Emphasis added.)

And, with these pronouncements, DHA justifies providing "treatment of obesity" "even if it is the sole or

major condition treated" to only part of the beneficiaries the law included. It is hard to conclude that

much remains of 10 U.S.C. § 1079(a)(10) in light of how DHA interprets and implements NDAA 2017 §

729. DHA cannot invoke § 729 to override § 1079(a)(10) for some beneficiaries while wielding §

1079(a)(10) as a categorical bar against others.

**Second**, the requirement for a "uniform" formulary available to all covered beneficiaries is

explicit in 10 U.S.C. § 1074g. If Congress wants to exclude treatments or drugs or even plan types it

alone has that authority. It excluded obesity, conditionally, in 10 U.S.C. § 1079(a)(10) and then in NDAA

2017 § 729 effectively removed the exclusion.

It is noteworthy that the Government did not identify a single other medical treatment or drug that

is covered for Prime/Select while unconditionally denied to TFL for the same diagnosis under the same

clinical criteria. However, there is one that demonstrates Plaintiff's point: the TRICARE smoking

cessation program.

Where Congress actually intends to exclude TFL from a benefit, it says so expressly. e.g., the

smoking-cessation program's "not eligible for Medicare" limitation. The TRICARE smoking cessation

program[5] is the only categorical benefit/pharmacy distinction between Prime/Select and TFL outside of

---

[5] "Tobacco Cessation Services: These benefits are available to all beneficiaries who aren't eligible for
Medicare. Tobacco cessation counseling is currently covered under Medicare Part B. If you're eligible for
Medicare, you must use Medicare for these types of services."
https://tricare.mil/CoveredServices/IsItCovered/TobaccoCessationServices

16

the challenged action. The exclusion of TFL exists only because Congress clearly mandated it: Section 713 of the Duncan Hunter NDAA for FY 2009 directed that the program "shall not be made available to Medicare-eligible beneficiaries." 32 C.F.R. § 199.4(e)(30)(i). No comparable language appears in § 1074g, § 1079, § 1086, or NDAA 2017 § 729, nor in § 199.17 or § 199.4 regarding weight-related treatment. If Congress had actually intended that TFL be excluded from all weight-related treatment, the way it excluded TFL from the smoking cessation program, language to that effect would be somewhere. It is not. DHA implemented the exclusion through a PA backdoor because it has no authority to alter its regulations to effect this change.

Where Congress includes limiting language in one section but omits it in another, courts presume the omission is intentional. Russello v. United States, 464 U.S. 16, 23 (1983). DHA cannot manufacture through regulatory interpretation the exclusion Congress declined to enact. If the Government believes DHA has been delegated authority to make such exclusions, it should be able to identify the source and point to other examples. Ultra vires examples do not count.

Defendants obliquely suggest that federal law "allow[s] for additional preventive care services and health benefits ... not covered under TFL," citing 32 C.F.R. § 199.17(f). But § 199.17(f)(2) does not create a plan-exclusive list of preventive medical services unavailable to TFL; the Basic Program already covers preventive care for eligible beneficiaries in § 199.4. It expressly provides that Health Promotion and Disease Prevention ("HP&DP") visits "may include all of the services provided pursuant to § 199.17(f)(2)." 32 C.F.R. § 199.4(e)(28)(iv). DHA's own public TRICARE guidance likewise treats these items as covered preventive services across TRICARE. See TRICARE, Preventive Services[6]; see also TRICARE, Getting Preventive Care[7]. In short, Defendants' "additional preventive services" point is, at

---

[6] https://tricare.mil/HealthWellness/Preventive (last updated Sept. 2, 2025)

[7] https://tricare.mil/HealthWellness/Preventive/GettingCare (last updated Apr. 17, 2025)

most, about delivery channels and cost-sharing for non-Medicare-eligible network enrollees, not a textual basis for plan-based exclusions inside the medical or uniform pharmacy program.

## C. Section 199.21 TRICARE Pharmacy Benefits Program: "Independence" and the "Exclusively" Limitation

Defendants assert that weight loss drugs are "an excluded "pharmaceutical agent" for TFL beneficiaries." This depends on the Court adopting the Government's assertions that:

1. DHA had the authority to differentiate medical benefits by plan type and did so intentionally by failing to fully implement NDAA 2017 § 729 to include TFL; and

2. 10 U.S.C. § 1079(a)(10) is an "unconditional exclusion" of "treatment for obesity" and that it survived DHA's interpretation of NDAA 2017 § 729 that § 729 authorized "treatment for obesity" to Prime/Select "even if obesity is the sole or major condition treated."

Is it possible to exclude one plan from access to a drug on the uniform formulary? Of course. Congress can and has done just that – using explicit language of exclusion, e.g., the TRICARE smoking cessation program. Is that what happened here? No. If Congress were to say TFL can't receive weight loss treatment or drugs, the argument is over. Congress did not say that. DHA did – without authority through its PA trap door.

## D. Legislative History: Congress Commanded Parity and Uniformity

The legislative history of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001 confirms Congress's intent to provide comprehensive and equivalent coverage to Medicare-eligible retirees. TRICARE For Life was established after years in which military retirees lost significant coverage after reaching Medicare age. The House Armed Services Committee, in its final conference report on the bill, highlighted the goal:

> The conferees intend that this provision be implemented in a manner that will **ensur[e] that Medicare-eligible military retirees and their dependents** who are entitled to health care under section 1086 of title 10, United States Code, **have access to a full range of health care benefits, including a comprehensive pharmacy benefit, equivalent to that available to other TRICARE-eligible beneficiaries**.

> H.R. Rep. No. 106-945, at 824 (2000) (Conf. Rep.). (Emphasis added.)

18

Congress's intent is confirmed by the structure of the 2000 enactment. Section 711 established the TRICARE Senior Pharmacy Program—a named program with a defined beneficiary class: Medicare–eligible military retirees. Section 712 established TRICARE For Life. Together, these provisions represented Congress's comprehensive solution to the coverage gap highlighted in Schism v. United States, 316 F.3d 1259 (Fed. Cir. 2002) (cited by the Government and discussed below).

This expressed desire for "equivalent" access reinforces the statutory text's mandate for "uniform" and "the same" benefits. Congress framed TFL as "keep[ing] the promise of lifetime health care made to those service members." Section 711 of the same Act provided "Under the TRICARE Senior Pharmacy Program, the Act requires **the same** coverage for pharmacy services and **the same** requirements for cost sharing and reimbursement as are applicable under Section 1086 of title 10, United States Code." 66 FR 9651 (02/09/2001) (Emphasis added.) This context demonstrates a clear congressional purpose that an administrative agency cannot now undo through novel theories to create plan-based exclusions. This statutory text—codified at 10 U.S.C. § 1074g—establishes legally binding equivalence, not administrative discretion to create tiered benefits.

The Government cites Schism v. United States, 316 F.3d 1259 (Fed. Cir. 2002), and the underlying district court decision, 972 F. Supp. 1398 (N.D. Fla. 1997), for the proposition that differential treatment of Medicare-eligible retirees is permissible. [DE 93 at 24–25]. But Schism addressed an entirely different question under an entirely different statutory framework.

Schism concerned whether military retirees had an enforceable contract for free lifetime healthcare based on recruiter promises. The Federal Circuit held no such contract existed because military benefits derive from statute, not contract.

Congress answered Schism in 2000 by enacting the TRICARE Senior Pharmacy Program and TFL. In its brief before the Supreme Court opposing certiorari, the Department of Justice quoted DoD's characterization of TRICARE For Life as "the most significant expansion of benefits in the Military Health System since 1956." Brief for the United States in Opposition at 8,9, Schism v. United States, No.

19

02–1226 (U.S. May 2003) (quoting 66 Fed. Reg. 40,602 (2001))[8] Plaintiff believes the entire pleading is

informative, but notes the Government's final point:

> **Most recently, Congress expanded medical coverage for retirees dramatically by creating the "TRICARE For Life" program** as part of the Floyd D. Spence National Defense Authorization Act for Fiscal Year 2001, Pub. L. No. 106–398, § 712, 114 Stat. 1654A–176 to 1654A–179. See pp. 8–9, supra. **That program offers retirees medical and prescription drug benefits beyond those provided by Medicare and by the military in its own facilities on a space–available basis. Those "new benefits for retirees and their eligible family members over age 65 result in a remarkably comprehensive health care benefit with minimal beneficiary out-of-pocket costs."** 66 Fed. Reg. 40,602 (2001).

Id. at 24. (Emphasis added.)

## V. DHA'S FAILURE TO EXECUTE CANNOT CREATE AUTHORITY CONGRESS NEVER GRANTED

To justify its plan-based carve-out of TFL DHA needs a way to segregate TFL from all other

covered beneficiaries, i.e., Prime/Select. As there is no authority in §§1074g, 1079, or 1086, they turned

to 32 C.F.R. § 199.17(f)(3). This regulation provided for obesity treatment for Prime/Select

"notwithstanding 10 U.S.C. 1079(a)(10)" and "even if it is the sole or major condition treated." DHA now

insists that TFL remains subject to § 1079(a)(10)'s and 32 C.F.R. § 199.4(g)(28) because it failed to fully

apply NDAA 2017 § 729's expansion to all covered beneficiaries.

This gets the analysis completely backwards. DHA's decision to limit § 199.17(f)(3) to

Prime/Select was an implementation choice–not a Congressional command. Section 729 defines the

affected beneficiaries of the authority for the "treatment for obesity" precisely: "'covered beneficiary'...

ha[s] the meaning given [that] term in section 1072 of title 10." Pub. L. 114–328, § 729(f). Under §

1072(5).

> SEC. 729. IMPROVEMENT OF HEALTH OUTCOMES AND CONTROL OF COSTS OF HEALTH CARE UNDER **TRICARE PROGRAM** THROUGH PROGRAMS TO INVOLVE **COVERED BENEFICIARIES.**
>
> (a) Medical Intervention Incentive Program. —

---

[8]Section 1079(a)(10) changes none of that. https://www.justice.gov/osg/brief/schism-v-united-states-opposition and the PDF at https://www.justice.gov/d9/osg/briefs/2002/01/01/2002-1226.resp.pdf

20

(1) In general. —The Secretary of Defense **shall** establish a program to incentivize **covered beneficiaries** ... **for covered beneficiaries with chronic diseases or conditions described in paragraph (2)** ....

(2) **Chronic diseases or conditions described–Chronic diseases or conditions described in this paragraph may include** ..., **obesity,** and such other diseases or conditions as the Secretary determines appropriate.

(b) Lifestyle Intervention Incentive Program.–The Secretary **shall** establish a program to incentivize lifestyle interventions **for covered beneficiaries,** such as smoking cessation and **weight reduction,** ... **for covered beneficiaries** ....

\* \* \* \*

(f) Definitions.–In this section, the terms **"covered beneficiary"** and **"TRICARE program"** have the meaning given those terms in section 1072** of title 10, United States Code.

(Emphasis Added.)

And, because the definitions are important:

(7) The term **"TRICARE program"** means ...:
(A) TRICARE Prime.
(B) TRICARE Select.
(C) **TRICARE for Life.**

10 U.S.C. § 1072(7). (Emphasis added.)

Section 706 of NDAA 2017, which also cites as authority for 32 C.F.R. § 199.179(f)(3) uses

identical definitional language. Section 706 established the military-civilian integrated health delivery

systems and mandated programs to "improve health outcomes for covered beneficiaries." Pub. L. 114-

328, § 706(a)(3). Congress explicitly defined the beneficiary class: "In this section, the term 'covered

beneficiary' has the meaning given that term in section 1072 of title 10, United States Code." § 706(d).

Thus, both statutes the Government invokes as authority in 32 C.F.R. § 199.17(f)(3)–explicitly

define "covered beneficiary" to include TFL via the § 1072 definition. The Government's 53 pages of

briefing never acknowledge this. DHA cannot invoke §§ 706 and 729 as authority while ignoring both

statutes' express beneficiary definitions.

In the Federal Register preamble establishing § 199.17(f)(3), DHA explained its basis for

covering obesity treatment:

21

It is DoD's conclusion that the underlying authority of 10 U.S.C. 1097, together with **section 729 of NDAA 2017 (which specifically authorizes medical intervention for obesity), allow the Department to cover these services when provided by a network provider for a TRICARE Prime or TRICARE Select enrollee.**

82 Fed. Reg. 45,438, 45,441-42 (Sept. 29, 2017).

The **"when provided by a network provider"** language, that excludes Medicare providers and TFL, appears nowhere in NDAA 2017 §§ 706 or 729. DHA manufactured this language to graft § 729 onto § 1097's managed care structure, then treated that implementation choice as if it constrained the statutory beneficiary class. And, then DHA uses this choice to exclude TFL and break "uniform" and "the same" in the controlling statutes. The Government does not dispute that DHA invoked NDAA 2017 § 729 as authority. The Government cannot dispute that § 729 defines 'covered beneficiary' to include TFL – it simply ignores this in its pleadings. The Government offers no explanation for how DHA can invoke a statute's authorization while ignoring that statute's beneficiary scope. An agency cannot manufacture the authority Congress did not grant by pointing to its own drafting choices.

The Government attempts to derive considerable value from 32 C.F.R. § 199.17:

**First,** it asserts that the promulgation of § 199.17(f)(3) (2017-2019) satisfied any "notice and comment" needed prior to ending coverage for TFL. [DE 93, page 21]. Apparently, the Government believes that the omission of TFL from § 199.17(f)(3), part of a regulation exclusively affecting Prime/Select, was "notice" that DHA would "enforce" its undisclosed intent to exclude TFL eight years later. What DHA asserts should have been obvious to the Plaintiff in 2017-2019 – remained obscure to DHA for eight years as it covered all TRICARE beneficiaries for the treatment of obesity. The Government expects the Court to accept DHA's litigation-driven, post hoc, rationalization of what it intended but did not do in 2017-2019.

The Government's attempt to defend the August 2025 plan-type exclusion as mere "error correction" or a "clarification" of the 2019 Final Rule fails under the APA's requirement of reasoned decision-making. In Encino Motorcars, LLC v. Navarro, the Supreme Court reiterated that when an agency changes course, it must "display awareness that it is changing position" and "show that there are

22

good reasons for the new policy." Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221–22 (2016). The Court further explained that, in explaining a changed position, an agency must be cognizant that longstanding policies may have "engendered serious reliance interests that must be taken into account," and that "a reasoned explanation is needed for disregarding facts and circumstances that underlay or were engendered by the prior policy." Id. at 222. An "[u]nexplained inconsistency" with prior practice is "a reason for holding an interpretation to be an arbitrary and capricious change from agency practice." Id. Applying those principles, the Court concluded the agency action there was unlawful because the Department "offered barely any explanation," and "the explanation fell short of the agency's duty to explain why it deemed it necessary to overrule its previous position." Id. at 222–23. Here, the record reflects that for approximately eight years–including years after the 2019 Rule–covered these medications under the same clinical criteria for all covered beneficiaries before abruptly implementing a categorical plan-type denial in 2025. Under Encino, DHA cannot rebrand that operational reversal as a mere "clarification" unless it contemporaneously acknowledges the shift and supplies a reasoned explanation (including reliance), rather than post hoc litigation rationalizations.

**Second**, it asserts that the "savings" clause, 32 C.F.R. § 199.17(a)(6)(ii)(C), "precludes application of 32 C.F.R. § 199.17(f)(3) to TFL beneficiaries or dependents, …" [DE 93, pg. 8] Plaintiff believes that is correct, as the "savings" clause ("TRICARE for Life is the Medicare wraparound coverage plan under 10 U.S.C. 1086(d). Rules applicable to this plan are **unaffected** by this section.") (Emphasis added.) ensures that NOTHING in § 199.17, including § 199.17(f)(3) effects TFL. But then Government takes it a step too far. It contorts the meaning of "unaffected" into authority to enhance the benefits for Prime/Select while excluding TFL. Nothing in §§ 1074g, 1079, 1086, NDAA 2017 §§ 706 or 729, authorizes DHA to use its regulations to differentiate benefits by plan-type. "Unaffected" does not empower DHA to enhance Prime/Select benefits while withholding from TFL benefits Congress authorized for all covered beneficiaries.

Plaintiff does not contest that § 199.17(f)(3) effects Prime/Select or ask that TFL benefits be addressed in § 199.17. Plaintiff seeks first, the application of NDAA 2017 § 729's treatment

authorizations to TFL as Congress directed. DHA has never identified any authority to break "the same" and "uniform" architecture created by 10 U.S.C. §§ 1086 and 1074g by promulgating § 199.17(f)(3) and interpreting it as they now do.

The Government's argument depends on regulatory bootstrapping: DHA failed to include TFL in § 199.17(f)(3) or in any other of its regulation when it implemented NDAA 2017 § 729, then treats that failure as though Congress commanded the exclusion.

## VI. SECTION 1079(a)(10) IS CONDITIONAL–AND DHA'S OWN PA PROCESS SATISFIES THE CONDITIONS

### A. The Conditional–to – Unconditional/Categorical Maneuver

In addition to segregating TFL from all other covered beneficiaries, the Government's needs § 10 U.S.C. § 1079(a)(10) to do what Congress never intended – to categorically exclude all weight related treatment. It doesn't do that. Section 1079(a)(10) provides: "[t]reatment of obesity may not be provided **IF obesity is the sole or major condition treated.**" (Emphasis added.) That conditional language is dispositive. But, to achieve its goals the Government needs § 1079(a)(10) to say: "Treatment of obesity [and weight reduction and weight control] may <u>not</u> be provided." They do this by swapping the statutory test; from a patient-specific inquiry to a plan-type trap door.

The Government's argument on § 1079(a)(10) is incomprehensible. The Government repeatedly and correctly recites or characterizes § 1079(a)(10)'s conditional text. [DE 90, pg. 5, 9, 12-13, 15, 20; DE 93, pgs. 4-5, 7, 9,15, 16, 20-21] Yet, inexplicably, applies it categorically to an entire plan, without any patient inquiry, through a plan-type question. It simply doesn't matter whether the patient presents as obese or overweight, or with weight-related comorbidities or other "Major Condition(s) / Comorbidities." If TFL, they are categorically excluded.

To accomplish this the Government ignores the clinical definition of "obesity" (BMI $\geq$ 30) and the "sole or major condition treated" condition – which anticipates an evaluation of other health risk factors (comorbidities) on a patient-by-patient basis that would permit treatment within the conditions set by § 1079(a)(10). Relying its medical and statistical expertise the Government concludes: "Plaintiff is not

24

"eligible" for GLP-1 weight loss drug coverage, even though he is a TFL covered beneficiary, **because obesity (i.e. weight loss) is the sole or major condition being treated by the GLP-1 weight loss drugs – and Plaintiff is not even obese.**" [DE 90, pg. 20]; and "**Plaintiff merely offers the mathematical possibility that, despite his doctor's sworn declaration,** *see* **[DE 15-3, p. 2] (GLP-1 drug was prescribed to Plaintiff for being overweight with comorbidities), his weight may not be the sole or major condition of his being treated with GLP-1 drugs.**" [DE 93, pg. 26]. Although tempted to engage more fully, in the interest of brevity, Plaintiff notes that he was approved for weight-loss drugs using DHA's PAs in effect immediately prior to August 31, 2025, which is substantively identical to the one DHA uses now. For the Plaintiff: Condition - overweight (BMI $\geq$27 and <30); Major Condition(s)/Comorbidities - Obstructive sleep apnea, Dyslipidemia, Hypertension. Obesity was NOT the sole or major condition treated. [DE 15-2] Can the Government explain how 10 U.S.C. § 1079(a)(10) was offended?

So, there it is, out in the open; the Government believes that "**obesity (i.e. weight loss) is the sole or major condition being treated by the GLP-1 weight loss drugs.**"[9] Section 1079(a)(10) requires a patient-by-patient medical inquiry. The Government believes it can substitute a plan-type question for doctor. At minimum, § 1079(a)(10) creates a factual dispute and defeats any 'categorical ineligibility' theory

---

[9] Contrary to the Government's representation, "obesity" is distinct clinical condition/category and the FDA and DHA recognize it as such. This is reflected in the PA forms for "Anti Obesity Agents (phentermine, benzphetamine, diethylpropion, phendimetrazine IR and SR)" [AR2806-2807]," "semaglutide injection (Wegovy), tirzepatide injection (Zepbound Pen Injector)" [AR2815-2819]. These PA forms differentiate between patients with BMI $\geq$ 27 and < 30. For patients BMI $\geq$ 30 the forms add "obesity" to ten other possible answers to the question "What are the major condition(s)/comorbidities being treated?" If BMI $\geq$ 27, "obesity" isn't a "major condition(s)/comorbidities" listed. See https://www.accessdata.fda.gov/drugsatfda_docs/label/2023/215256s007lbl.pdf

It is noteworthy that DHA doesn't ignore these other risk factors (comorbidities) when it implements the "treatment for obesity" authorized by NDAA 2017 § 729 for Prime/Select. [10] See DHA's post-August 31, 2025 PA forms which require physicians to identify the "**major condition(s) / comorbidities being treated**" and lists ten in addition to "obesity." (Emphasis added.) (AR 2807 and AR2816–2817). How does DHA reconcile not using the same or similar medical inquires for TFL? The PA DHA actually uses would identify a patient who presents for treatment for obesity when obesity is the sole of major condition treated – the exclusion described in 10 U.S.C. § 1079(a)(10). DHA doesn't even try. It just places a plan-type question on its PA form to exclude TFL categorically - before any medical questions are asked.

DHA does not want to engage in the medical inquiry the statute requires. This might allow TFL who satisfy § 1079(a)(10) to receive these medications. With its approach DHA has accomplished what Congress did not – it made 10 U.S.C. § 1079(a)(10) a categorical exclusion for all weight-related treatment.

If Congress had intended to unconditionally exclude the treatment of obesity and weight reduction or weight control, it would have said that clearly. And, if Congress intended to exclude TFL as a plan type, from receiving treatment for obesity or weight reduction or control it would have done that too. Congress knows how to do what DHA wants, i.e., to exclude an entire plan-type from a specific treatment or drug coverage. Congress did that when it excluded TFL from participation in TRICARE's smoking cessation program. See Section 713 of the Duncan Hunter NDAA 2009: the program "shall not be made available to Medicare–eligible beneficiaries.". Congress did not exclude all weight related treatment in § 1079(a)(10) and it did not independently and categorically exclude TFL from all weight-related treatment.

**B. DHA's Own Regulations (32 C.F.R. § 199.4) Confirm § 1079(a)(10) Is Conditional**

---

[10] DHA has little choice as these are the FDA indications and clinical PA criteria for Wegovy. https://www.accessdata.fda.gov/drugsatfda_docs/label/2024/215256s011lbl.pdf

Not only is § 1079(a)(10) not unconditional as the plain text establishes, the Government has never actually treated it as unconditional. If it had, its regulations would reflect that. They don't.

Section 199.4 is organized into distinct subsections serving different functions. Subsection (a) establishes the affirmative scope of benefits–what TRICARE covers. Subsection (e) identifies "Special Benefits"–services that are covered under specific conditions. Subsection (g) lists "Exclusions"–services that are not covered or are covered conditionally. The Government's construction relies exclusively on (g), while ignoring (e). That selective reading cannot withstand scrutiny.

Section 199.4(e)(15) appears in the "Special Benefits" subsection and provides coverage for "morbid obesity" treatment–including bariatric surgery–when clinical criteria (conditions) are met. Coverage is "payable only when" the patient meets specified BMI thresholds (≥40, or ≥35 with severe comorbidities) plus documented unsuccessful prior treatment. § 199.4(e)(15)(i)(B). But Defendants can't acknowledge 32 C.F.R. § 199.4(e)(15), which is an affirmative coverage framework for obesity treatment for covered beneficiaries.

Throughout their briefing, Defendants repeatedly cite 32 C.F.R. § 199.4(g)(28)–a provision in the "Exclusions" subsection–as the regulatory basis for denying TFL coverage for all weight-related treatment. [DE 90 at 6–7, 14–18; DE 93 at 6–7, 19–24]. Section 199.4(g)(28) appears in the "Exclusions" subsection and tracks § 1079(a)(10)'s conditional language; excluding services and supplies "solely" related to obesity (or weight reduction or weight control). Section 199.4(g)(28)'s addition of "or weight reduction or weight control" ventures beyond 10 U.S.C. § 1079(a)(10)'s subject: "obesity"–but even that ultra vires expansion retains the "solely" condition.

Both regulations incorporate 10 U.S.C. § 1079(a)(10)'s "sole or major condition treated" theme. If 10 U.S.C. § 1079(a)(10) were truly unconditional as DHA posits, 32 C.F.R. § 199.4(g)(28) would simply identify as excluded: "Obesity. Services and supplies related to obesity, whether surgical or nonsurgical." It does not. Section 199.4(e)(15) would not exist.

27

Nowhere does DHA identify its authority to expand the scope of 10 U.S.C. § 1079(a)(10) and 32 C.F.R. § 199.4(g)(28) beyond "obesity," or to make them categorical and capture all weight related treatment regardless of medical indications. DHA persists nonetheless.

## C. DHA's PA Criteria Prevent Triggering § 1079(a)(10) by Design

The incongruity in the Government's position becomes apparent when examining DHA's implementation of the "treatment for obesity" authorized by NDAA 2017 § 729. After passage of § 729, as 32 C.F.R. § 199.17(f)(3) was being finalized, the Pharmacy & Therapeutics ("P&T") Committee recommended manual FDA-compliant PA criteria for all weight loss drugs with: BMI ≥ 30, or BMI ≥ 27 with comorbidities, a trial of a generic before branded agents, and lifestyle intervention for at least six months required prior to use and throughout treatment. Pharmacy and Therapeutics Meeting Minutes, November 15–16, 2017 (AR 25–29) and February 2018 Factsheet. [11]

The PA incorporates medical criteria that ensure approval will not violate § 1079(a)(10). The criteria ensure that weight loss drugs are not approved if obesity is the sole or major condition treated. By design, approval requires multiple conditions – weight, comorbidities, and prior treatment failure.

### PA PRE AUGUST *31, 2025*[12]

6. Does the patient have a BMI GREATER THAN or EQUAL to 30, or a BMI GREATER THAN or EQUAL to 27 in the presence of at **least one weight–related comorbidity (diabetes, impaired glucose tolerance, dyslipidemia, hypertension, sleep apnea)**?

### PA POST AUGUST *31, 2025*[13]

10. What is the patient's body mass index (BMI)?
      27 to 29 with an additional comorbidity – Proceed to question 11
11. **Does the patient have AT LEAST ONE weight related comorbidity**

---

[11] https://health.mil/Reference-Center/Meeting-References/2018/02/06/PT-Minutes-November-2017.

https://www.health.mil/Reference-Center/Fact-Sheets/2018/02/26/Formulary-Management-for-Weight-Loss-Agents

[12] DE 66: Ex. 2, page 4, Ex. 3, page 7 and also AR2636, AR2640, AR2663, AR2666, AR2667, AR2672, AF2803.

[13] DE 66: Ex 4, pages 10-11, see also AR2806, AR2809, AR2813, AR 2816, AR2817, AR2821).

Yes–Proceed to question 12

12. In addition to overweight with BMI GREATER THAN 27, **WHAT ARE THE MAJOR CONDITION(S)/COMORBIDITIES BEING TREATED** (select all that apply)?

       Diabetes or impaired glucose tolerance
       Obstructive sleep apnea.
       Osteoarthritis
       Metabolic syndrome
       Dyslipidemia
       Hypertension
       Metabolic dysfunction–associated steatohepatitis (MASH)
       Established cardiovascular disease with a history of stroke
       Established cardiovascular disease with a history of myocardial infarction
       Established cardiovascular disease with a history of peripheral artery disease

(Emphasis added.)

Section 1079(a)(10) asks "if" obesity is the "sole or major condition treated." Defendants cannot condition approval on demonstration of other "**major condition(s)/comorbidities**" then, as a matter of law claim, obesity is the "sole" condition. At minimum, this creates a factual dispute and defeats any 'categorical ineligibility' theory. The question DHA asks is: "What TRICARE plan is the patient enrolled in? Not TRICARE Select or TRICARE Prime – STOP - Coverage not approved."[AR2806, AR2811, AR2815, AR2820] DHA is not enforcing § 1079(a)(10)–it is enforcing an unconditional restriction the statute does not authorize through a PA trap door.

Now apply this to the Plaintiff. He is not obese as the government notes. He presents with at least three "major condition(s)/comorbidities," and a history of failed prior treatment. He satisfied the existing PA (except for the plan-type question). He doesn't violate 10 U.S.C. § 1079(a)(10).

Even if the Court were to accept Government's reading of § 199.17(f)(3), it changes nothing. Section 1079(a)(10) is conditional–it excludes treatment only "if obesity is the sole or major condition treated." DHA's own PA criteria require comorbidities, meaning no prescription approved through DHA's system would ever violate § 1079(a)(10). TFL beneficiaries approved for weight loss drugs would have to satisfy the PA and § 1079(a)(10). The plan-type checkbox isn't enforcing § 1079(a)(10); it's enforcing a restriction DHA invented to create a categorical exclusion by plan-type.

## VII. RECONCILIATION OF MEDICAL AND PHARMACY PROGRAMS

## A. The Apparent Tension Between Medical Exclusions and Pharmacy Uniformity

The Government asks a superficially plausible question: if § 1079(a)(10) unconditionally excludes medical "treatment for obesity," shouldn't that unconditional exclusion carry through to pharmacy benefits? If those assumptions were true, the answer is "yes." But as demonstrated above, § 1079(a)(10) is not unconditional, TFL should not be considered excluded from treatment for obesity under NDAA 2017 § 729, and the way DHA implements drug approvals the statute is not violated. The Government's framing assumes Congress left the medical and pharmacy programs unreconciled–that the Court must choose between competing mandates with no clear guidance. That assumption is false. There is an explicit reconciliation mechanism which the Government ignores.

## B. Section 199.21(a)(3)(iii) Is the Reconciliation Mechanism

The TRICARE pharmacy regulations address this question: how do medical benefit exclusions affect formulary access? The answer appears at 32 C.F.R. § 199.21(a)(3)(iii):

> Pharmaceutical agents which are used exclusively in medical treatments or procedures that are expressly excluded from the TRICARE benefit by statute or regulation will not be considered for inclusion on the uniform formulary.

This provision is the bridge between the medical and pharmacy programs. It establishes a clear rule: If a drug is used "exclusively" for an excluded treatment, it may be excluded from the formulary. If a drug has any covered therapeutic use, it remains on the uniform formulary. It is available to all covered beneficiaries who satisfy PA criteria–unless Congress expressly excluded that treatment or drug benefit from a category of beneficiaries, e.g., the exclusion from smoking cessation treatment for Medicare–eligible beneficiaries.

## C. Why Congress Structured the Program This Way

The "exclusively" limitation reflects sound pharmaceutical policy. When a drug has both covered and excluded uses, the system must regulate by indication-based criteria, not plan-type denial. Unless Congress has expressly excluded a treatment for a medical condition for which a drug is used exclusively, or expressly excluded a drug, or an entire plan-type from a treatment program (e.g., smoking cessation), it is the prescriber's clinical judgment and PAs–not an administrative determination–that governs its use.

30

That is what Congress intended in § 1074g, an integrated, uniform pharmacy program, and in § 1086 "the same" benefits for all covered beneficiaries.

## VIII. THIS CASE IS NOT ABOUT MEDICARE PART D COVERAGE DENIAL

Defendants gesture at TRICARE For Life's "Medicare wraparound" design to suggest that Medicare's outpatient drug exclusions (specifically Medicare Part D's exclusion of weight loss drugs) effectively controls the scope of the TRICARE Pharmacy Benefits Program. But the challenged action is not a Medicare reimbursement decision; it is DHA's plan-based denial of access to drugs that remain on the Title 10 "uniform formulary" under § 1074g. Congress created a distinct TRICARE Senior Pharmacy Program to ensure TFL access to the uniform formulary, and Defendants' references to Medicare Part D's separate statutory architecture cannot supply the missing authority to fracture § 1074g's uniformity or to contradict § 1086's command that TFL receive "the same" contracted health benefits.

Moreover, Defendants acknowledge that Plaintiff, like most TFL enrollees is not enrolled in Medicare Part D. [DE 93 at 7]. This is because TRICARE advises TFL enrollees that Part D is not necessary.[14] For such beneficiaries, Medicare Part D is irrelevant. Their pharmacy benefits derive exclusively from the TRICARE Pharmacy Program under § 1074g and 32 C.F.R. § 199.21.

The absence of any express Medicare-eligible exclusion in § 1074g, 1079 or § 1086 is significant because Congress knows how to create such exclusions when it wants to, e.g., the TRICARE smoking cessation program.

## IX. WHAT STATUTORY COMPLIANCE WOULD ACTUALLY LOOK LIKE

The Government presents this case as if the Court must choose between the Government's interpretation and chaos. That framing is false. Proper application of the existing statutory authorities

---

[14] "You don't need to enroll in a Medicare Part D prescription drug plan to keep your TRICARE benefits. For most TRICARE beneficiaries, there's almost NO advantage to enrolling in a Medicare prescription drug plan. "https://tricare.mil/CoveredServices/Pharmacy/Eligibility/Medicare

produces a coherent, administrable framework that honors Congress's commands. One that DHA administered for eight years prior to August 31, 2025.

**Uniform Formulary Access**. Under 10 U.S.C. § 1074g(a)(2)(A), the TRICARE Pharmacy Benefits Program "shall include a uniform formulary." Weight loss medications approved for chronic weight management remain on that formulary. Under § 1074g(a)(2)(E), formulary drugs "shall be available to eligible covered beneficiaries." Compliance means: all covered beneficiaries–including TFL–have access to the same uniform formulary. No administrative checkbox asking "What TRICARE plan is the patient enrolled in? not TRICARE Select or TRICARE Prime – STOP - Coverage not approved."

**The Same Benefits**. Under 10 U.S.C. § 1086(a), TFL enrollees receive benefits "under the same" health plans as other TRICARE beneficiaries. Compliance means: TFL enrollees receive "the same" treatments and satisfy the same PA criteria as Prime/Select enrollees–same BMI thresholds, same comorbidity requirements, same documentation of failed lifestyle modification before receiving weight loss drugs. The PA form asks medical questions, not administrative ones.

**There is no conditional exclusion**. 10 U.S.C. § 1079(a)(10) is recognized as having been effectively superseded by NDAA § 729 and as DHA has determined "treatment for obesity" "even if it is sole or major condition treated" is authorized for all covered beneficiaries. The FDA-compliant PAs ensure drugs are properly approved. A physician cannot legally prescribe a weight loss drug to someone who just wants to lose a few pounds for cosmetic reasons. The plan-type question is removed.

**The Reconciliation Mechanism.** Under 32 C.F.R. § 199.21(a)(3)(iii), drugs may be excluded from the uniform formulary only if "used exclusively in medical treatments or procedures that are expressly excluded." Weight loss medications, which have multiple FDA-approved applications, remain on the uniform formulary.

**What This Framework Produces**. If DHA followed the letter of the law:

1. All covered beneficiaries, including TFL would have uniform formulary access to weight loss medications;

32

2. The FDA approved indications on the PA form would determine whether each patient meets the criteria (BMI, comorbidities, prior treatment failure);

3. No beneficiary would be denied at a plan-type question before clinical criteria are evaluated;

This is not a novel construction. It is exactly how DHA implemented for eight years. It is what "uniform" and "the same" require. The remedy is simple. It is restoration of the framework Congress enacted and DHA administered between 2017 and 2025.

## X. PLAINTIFF'S REQUESTED REMEDY IS AVAILABLE

### A. Vacatur Is the Ordinary Remedy

Vacatur is the ordinary remedy when an agency acts without statutory authority. See, e.g., Nat'l Res. Def. Council v. Regan, 67 F.4th 397 (D.C. Cir. 2023) (vacating EPA action where statute did not permit it); Sierra Club v. EPA, 705 F.3d 458 (D.C. Cir. 2013) (vacating portions of rule that "exceeded the EPA's statutory authority").

### B. The Government Mischaracterizes Plaintiff's Requested Relief

The Government contends that even if Plaintiff prevails (vacatur), no remedy exists because striking § 199.17(f)(3) would not grant TFL coverage–it would only remove Prime/Select coverage. [DE 93 at 17]. This mischaracterizes Plaintiff's claim and misunderstands available relief.

The appropriate APA remedy for ultra vires plan-based treatment/drug exclusion is vacatur of the exclusion, not ratification of an unlawful carveout by stripping uncontested benefits from everyone else. Plaintiff does not seek to strike § 199.17(f)(3). Under the APA the appropriate remedy is vacatur of DHA's August 31, 2025 plan-type PA change categorically denying TFL access to formulary weight loss drugs. 5 U.S.C. § 706(2)(C).

The Government insists "Plaintiff has cited no statutory authority, for there is none, that would empower the DHA to provide TFL beneficiaries with coverage for "treatment of obesity" if obesity is the sole or major condition treated." The statutory authority is as follows:

**First**, NDAA 2017 § 729, as interpreted and applied by DHA has since 2017 authorized medical intervention for obesity allowing DHA to cover these services, i.e., "treatment for obesity even if

33

[obesity] is the sole or major condition treated." NDAA 2017 § 729, Pub. L. No. 114-328, § 729, 130 Stat. 2000, 2235 (2016) The extra-statutory gloss "when provided by a network provider for a TRICARE Prime or TRICARE Select enrollee," (82 Fed. Reg. 45,438, 45,441-42 (Sept. 29, 2017)) carried into 32 C.F.R. § 199.17(f)(3), is ineffective to neuter Congressional extension of these benefits to all covered beneficiaries.

**Second**, as implemented by DHA since 2017, weight loss drugs are approved using PA criteria that ensures these drugs are covered for the treatment of obesity only when obesity is not the sole or major condition treated. DHA's FDA-compliant PA forms approve drugs for weight-related treatment when patients present as obese, overweight, and with comorbidities. When approved under these conditions, the treatment is not for obesity when obesity is the sole or major condition treated. The Government's position that all weight-related treatment is treatment for obesity and all such treatment is solely for obesity and imposition of categorical exclusion for an entire plan-type, before any medical inquiry lacks any support in 10 U.S.C. § 1079(a)(10) or 32 C.F.R. § 199.4(g)(28) or reality.

## XI. The "Fiscal Responsibility" Argument Is Not a Legal Defense

The Government argues that requiring uniform coverage would "destabilize the TRICARE budget" and harm other beneficiaries. [DE 90 at 16-17; DE 93 at 22]. But fiscal policy arguments cannot supply missing statutory authority. Congress, not DHA, controls TRICARE appropriations. If DHA believes formulary uniformity is too expensive, the proper recourse is to petition Congress for a statutory amendment, not to administratively rewrite "uniform" into "different by plan."

## XII. CONCLUSION

This case is about whether DHA may implement a plan-based denial inside the TRICARE Senior Pharmacy Program's uniform formulary—without removing any drug from the uniform formulary and without any statute authorizing a treatment/drug or plan-specific carveout. The Government has no answer to the fundamental question: where does Congress authorize DHA to deny TFL access to drugs that remain on the uniform formulary for everyone else? Nowhere in 53 pages of briefing does the

34

Government cite any provision of 10 U.S.C. § 1074g or 10 U.S.C. § 1086 authorizing plan-based treatment/drug distinctions. The statute says "uniform." The statute says "the same." "Covered beneficiary" includes TFL. Nothing authorizes plan-based exclusions from treatment or drug access.

Instead, the Government argues it has the authority to apply an unconditional version of § 1079(a)(10) categorically to TFL because when it implemented NDAA 2017 § 729 it left TFL out. DHA claims this was deliberate, but strains to explain why it took eight years to realize its intentions were not being enforced as it covered weight loss drugs for TFL. When it decided to correct this error, resulting in a significant change to a large segment of the population it serves, it conducted no reasoned analysis. It set its contractors to work excluding TFL and three months later rubber stamped a "Decision Paper." Without removing a single drug from the uniform formulary, DHA categorically excludes TFL from coverage from all weight loss drugs. They created a plan-specific non-availability rule inside uniform formulary, which is a formulary-governance move, without a nod to the required P&T Committee/UF-BAP reviews.

At bottom, the Government asks this Court to treat DHA's own regulatory omission as though it were a congressional command. It is not. Congress authorized no plan-based exclusions for weight-related treatments. The requested remedy is vacatur of the August-2025 plan-type PA gating instruction/criteria that makes TFL categorically ineligible for uniform formulary weight-loss drugs. Remand for further administrative explanation is neither necessary nor appropriate where the defect is lack of statutory authority. This case requires only faithful application of statutory text and the separation of powers the Constitution commands.

Defendants' Motion to Dismiss [DE 93] should be DENIED.

Defendants' Alternative Motion for Summary Judgment [DE 93] should be DENIED.

Plaintiff's Motion for Summary Judgment [DE 62] should be GRANTED.

Respectfully submitted,                                      January 18, 2026

Derence V. Fivehouse, Pro Se
316 Seaview Drive
Edenton, NC 27932
derencefivehouse@gmail.com

## CERTIFICATE OF MAILING

I hereby certify that on the date shown above, I deposited in the United States Mail, postage prepaid, a

true and correct copy of the foregoing, addressed to counsel of record for the United States, AUSA

K. Paige O'Hale and Rudy E. Renfer, Office of the United States Attorney for the Eastern District of

North Carolina, 150 Fayetteville Street, Suite 2100 Raleigh, NC 27601, and by email to Ms. O'Hale at

Paige.OHale@usdoj.gov and Mr. Renfer at Rudy.E.Renfer@us.doj.gov.

Derence V. Fivehouse