IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:25-cv-00041-M-RN



DERENCE V. FIVEHOUSE,
Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE;
DEFENSE HEALTH AGENCY;
HON. PETE HEGSETH, in his official capacity as
Secretary of Defense; and
DR. DAVID J. SMITH, in his official capacity as
Acting Director, Defense Health Agency,
Defendants.

## PLAINTIFF'S SUR-REPLY TO DEFENDANTS' REPLY (DE 112)

### Introduction

Defendants' opening briefs (DE 90, DE 93) engaged Plaintiff's statutory and regulatory arguments on the merits across dozens of pages. At no point did Defendants contend those arguments were outside the Complaint. In its last Reply (DE 112), in a transparent attempt to avoid judgment on the merits of their litigation arguments, Defendants pivot--for the first time to a new threshold objection: that Plaintiff's statutory interpretation arguments are "beyond the scope of the Complaint and the relief requested." DE 112 at 2–3. The Court should not entertain a new threshold argument raised for the first time in the Defendant's last Reply. But even if it does, the argument fails under Rule 8 and basic Administrative Procedures Act principles.

DE 112 also advances a second reframing of Plaintiff's argument: because Plaintiff does not seek to "strike" 32 C.F.R. § 199.17(f)(3), any challenge to DHA's August 31, 2025 prior-authorization ("PA") change is "wasted ink'" and must be dismissed. DE 112 at 2-4. That argument makes absolutely no sense. Plaintiff challenges a discrete final agency action--the August 2025 plan-status exclusion --because it exceeds statutory authority, conflicts with the pharmacy program's governing text and constraints, and is arbitrary and capricious. Section 199.17(f)(3) concerns Prime/Select only. Plaintiff's case involves only

1

the discriminatory treatment of TRICARE for Life beneficiaries who are "unaffected" by anything is § 199.17.

Defendants invoke the wisdom against changing horses midstream.[1] But Plaintiff has been astride the same horse throughout--DHA exceeded its statutory authority. It is Defendants who, finding their merits position indefensible, now attempt to swap horses in their Reply by raising threshold objections they waived in 53 pages of opening briefing and asserting a complete non sequitur. Just as the National Union League did not entertain a midstream exchange, this Court should not either.

## I. PLAINTIFF'S STATUTORY INTERPRETATION ARGUMENTS ARE PROPERLY BEFORE THE COURT.

Defendants suggest that Plaintiff's statutory interpretation arguments--including those relying on 10 U.S.C. §§ 1074g and 1086--are "beyond the scope of the complaint and the relief requested." DE 112 at 2–3. That argument misunderstands notice pleading, what an APA claim is, and what constitutes a "new claim" versus legal argument supporting a pleaded claim.

Rule 8 requires fair notice of the claim and the grounds for relief--not perfect pleading of every supporting legal theory or every statutory citation that might later be discussed in briefing. Fed. R. Civ. P. 8(a)(2). The Supreme Court has been explicit that the Federal Rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (per curiam). Likewise, "a complaint need not pin plaintiff's claim for relief to a precise legal theory." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011).

First, the Government's characterization that the § 1079(a)(10) argument "appears nowhere in [the] Complaint" is flatly contradicted by at least six substantive paragraphs of the Complaint. See paras. 9, 10, 11, 12, 14, Count I, Count II, and Prayer for Relief. Paragraph 12 names § 1079(a)(10) explicitly, Paragraph 14 argues DHA was "not required" by law to exclude TFL, and the entire structural logic of the Complaint--uniform formulary under § 1074g, same coverage per 67 Fed. Reg. 15735, seven years of

---

[1] Abraham Lincoln, Reply to Delegation from National Union League (June 9, 1864), reported in *Evening Star* (Washington, D.C.), June 9, 1864 ("it is not best to swap horses while crossing the river")

program-wide administration including TFL--rests on the premise that § 1079(a)(10) is plan neutral; it does not mandate a plan-based exclusion of TFL. Plaintiff's Consolidated Reply (DE 108) simply extended the argument that was pleaded from the outset by further explaining why DHA's plan-status exclusion mechanism conflicts with the pharmacy program's uniform-formulary requirements (10 U.S.C. § 1074g) and with TFL's "same" benefits mandate (10 U.S.C. § 1086). Plaintiff introduced nothing new.

The Complaint pleads APA causes of action that DHA's August 2025 action was "not in accordance with law" and "in excess of statutory jurisdiction, authority, or limitations." DE 1, Complaint paras. 15–16 (Counts I and II) (citing 5 U.S.C. § 706(2)(A), (C)). Those pleaded APA claims necessarily invite statutory interpretation: the Court must determine what the governing statutes require and whether DHA acted within its authority. See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) (APA review asks whether agency action is "within the scope of [the agency's] authority"). Defendants conveniently forget that it was they who first advanced § 1079(a)(10) as the operative source of authority for DHA's action – not just 32 C.F.R. § 199.17(f)(3). Plaintiff's analysis of § 1079(a)(10)'s conditional text and its relationship to the pharmacy program was a direct rebuttal to Defendants' own argument — not a 'new theory' raised sua sponte.

Defendants cannot plausibly claim unfair surprise or prejudice. They have briefed these statutory issues extensively across multiple filings. Their own opening submissions chose to join issue on the merits. A party cannot litigate the merits and then, for the first time in reply, relabel the dispute as "beyond the scope" to avoid merits review.

The Rule 8 question is notice. Where a court concludes additional pleading detail is required, the usual Federal Rules remedy is leave to amend under Rule 15(a)(2)--not exclusion of legal arguments supporting already-pleaded APA claims--particularly where the opposing party has already briefed the statutory questions at length. See Johnson, 574 U.S. at 11–12 (reversing dismissal for imperfect legal theory and directing amendment as the proper course); cf. Ohio State Univ. v. Redbubble, Inc., 989 F.3d 435, 449 (6th Cir. 2021) (distinguishing Johnson where party raised entirely new claim never pursued below — unlike here, where the government has already briefed the statutory questions at length).

3

## II. DE 112's "NO CHALLENGE TO § 199.17(f)(3) REQUIRES DISMISSAL" ARGUMENT IS A NON SEQUITUR.

DE 112 asserts: "Because Plaintiff does not challenge the regulation, Plaintiff's challenge to PA criteria giving effect to the regulation should be dismissed." DE 112 at 2. That is incorrect as a matter of APA review.

Plaintiff is not required to seek vacatur of § 199.17(f)(3) in order to challenge DHA's separate agency action--the August 31, 2025 change to the pharmacy PA criteria--on the grounds that it exceeds statutory authority, violates governing medical and pharmacy-program constraints, and is arbitrary and capricious. Courts regularly set aside discrete agency actions without striking broader regulations that may exist in the background.

Moreover, as Plaintiff has repeated "time and again" § 199.17 itself contains an express TRICARE For Life savings clause: it states that the rules governing TFL are "unaffected" by § 199.17 and are set forth elsewhere. 32 C.F.R. § 199.17(a)(6)(ii)(C). There is no substantive value in challenging a regulation that leaves TFL "unaffected." That text forecloses Defendants' bootstrapping move--using a Prime/Select managed-care regulation to justify a TFL-specific pharmacy denial mechanism. Put simply, leaving § 199.17(f)(3) in place does not bless DHA's attempt to weaponize it against TFL.

Defendants' own Reply confirms the real nature of what is being defended. They do not simply defend § 199.17(f)(3); they defend the August 2025 operational rule embedded into PA processing, describing it as "not a new policy" but a "correction of an oversight" intended to "assure" certain beneficiaries [TFL] are "not being provided" GLP-1s. DE 112 at 6. That is a defense of the TFL plan-status gate created through DHA's current position that 10 U.S.C. § 1079(a)(10) is, but for § 199.17(f)(3), applicable to all covered beneficiaries except Prime/Select.

The Court can therefore set aside the August 2025 PA revision without "striking" § 199.17(f)(3).

## III. DEFENDANTS MISCHARACTERIZE PLAINTIFF'S POSITION AS AN "IMPLIED OVERRIDE" STRAWMAN.

DE 112 claims Plaintiff's "new theory" is that Congress "impliedly wrote out of existence" 10 U.S.C. § 1079(a)(10) "for all TRICARE beneficiaries," and then labels that reading "absurd" and

"surplusage." DE 112 at 4–6. That is not Plaintiff's argument-- the argument Plaintiff actually and consistently makes throughout his pleadings is that DHA has already determined that § 1079(a)(10) is largely superfluous--through DHA's own interpretation and implementation of NDAA 2017 § 729.

In 2017, DHA explained its basis for providing treatment for obesity:

> It is DoD's conclusion that the underlying authority of 10 U.S.C. 1097, together **with section 729 of NDAA-17 (*which specifically authorizes medical intervention for obesity*),** allow the Department to cover these services when provided by a network provider for a TRICARE Prime or TRICARE Select enrollee.

82 Fed. Reg. 45,438, 45,441-42 (Sept. 29, 2017) (emphasis added).

DHA continued in 32 C.F.R. § 199.17(f)(3):

> Under the authority of 10 U.S.C. 1097 **and sections 706 and 729 of the National Defense Authorization Act for Fiscal Year 2017,** *notwithstanding 10 U.S.C. 1079(a)(10), treatment of obesity is covered under TRICARE Prime and TRICARE Select even if it is the sole or major condition treated."*

(Emphasis added.)

With these pronouncements, DHA justifies providing "treatment of obesity" "even if it is the sole or major condition treated"--despite § 1079(a)(10), but to only part of the beneficiaries § 729 explicitly included. It is hard to conclude that much remains of 10 U.S.C. § 1079(a)(10) in light of how DHA interprets and implements NDAA 2017 § 729. DHA cannot invoke § 729 to override § 1079(a)(10) for Prime/Select while wielding § 1079(a)(10) as a categorical bar against TFL.

Plaintiff's deliberate use of qualifying language--"effectively superseded," "largely superfluous"-- acknowledges a critical distinction. Congress did not repeal or amend § 1079(a)(10). It is DHA's interpretation and implementation of § 729 that renders § 1079(a)(10) largely inoperative for obesity treatment today. Plaintiff asks only that DHA's interpretation be applied to all beneficiaries § 729 covers-- which, by § 729(f)'s express definitional incorporation of 10 U.S.C. § 1072, includes TFL.

Defendants cite *Nero v. Mosby*, 890 F.3d 106, 124–25 (4th Cir. 2018), for the canon against surplusage. But Defendants do not grapple with the surplusage their own reading creates. Section 729 defines its beneficiary population precisely: "the terms 'covered beneficiary' and 'TRICARE program' have the meaning given those terms in section 1072 of title 10." Pub. L. 114-328, § 729(f). Under §

5

1072(5), "covered beneficiary" includes TFL. Under Defendants' approach, Congress's deliberate definitional choice in § 729(f)--incorporating all covered beneficiaries including TFL--is rendered meaningless. That is the surplusage this Court should reject.

## IV. THE PHARMACY PROGRAM'S GOVERNING TEXT DEFEATS DHA'S PLAN-BASED DENIAL MECHANISM.

Defendants insist the August 2025 revision is "a logical and required application of the law... based on the diagnosed condition." DE 112 at 6. Plaintiff has cited record evidence showing the opposite: the post-August 31 PA form differs only in the dispositive way that it adds a question asking which TRICARE plan the beneficiary is enrolled in--while leaving the diagnosed conditions otherwise unchanged for Prime/Select. That is beneficiary-status gating. See DE 66, Ex. 2–4; AR 2806, 2811, 2815, 2820 (PA forms adding plan-type question: "What TRICARE plan is the patient enrolled in? Not TRICARE Select or TRICARE Prime--STOP--Coverage not approved." GLP-1 medications remain on the uniform formulary today; DHA has not removed them or reclassified them. Instead, DHA denies access to a formulary drug through an administrative enrollment gate — a mechanism the pharmacy program does not authorize. The actual diagnosed condition does not enter into DHA's calculation.

Defendants' Reply compounds the problem by introducing, for the first time, 32 C.F.R. § 199.4(e)(15)(iii) and (g)(28) as regulatory authority for DHA's action. DE 112 at 6. Neither provision appeared in DHA's August 5, 2025 announcement, in the six pages of decisional documentation within the 2,800-page administrative record, or in Defendants' opening briefs. An agency must justify its action based on the rationale it articulated at the time of the decision, not reasons assembled piecemeal through litigation responses. Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 50 (1983); SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). What this Court now witnesses is a progressive accumulation of post hoc authorities--first § 199.17(f)(3), then § 1079(a)(10), then § 199.4(g)(28) and now § 199.4(e)(15)(iii)--each layered on after its predecessor failed to carry the analytical weight Defendants need.

Moreover, Defendants continue to apply the same gloss to § 199.4 that they do to 10 U.S.C. § 1079(a)(10) that the plain language of neither support. Section 199.4(e)(15)(iii) excludes CHAMPUS payment for "weight control services, weight control/loss programs, dietary regimens and supplements, appetite suppressants and other medications . . . **primarily intended to control weight or for the purpose of weight reduction**." Section 199.4(g)(28) excludes "[s]ervice and supplies **related 'solely' to obesity or weight reduction or weight control.**" Both §§ 199.4(e)(15)(iii) and (g)(28) operationalize 10 U.S.C. § 1079(a)(10), and are consistent with the conditional language in the statute. To the extent they purport to exclude more treatment than addressed in the statute, they are ultra vires. Neither are §§ 199.4(e)(15)(iii) and (g)(28) part of the pharmacy benefits program established independently under 10 U.S.C. § 1074g and implemented through 32 C.F.R. § 199.21. Indeed, § 199.21 itself states that its statutory authority "is independent of a number of sections of Title 10 and other laws that affect the benefits, rules, and procedures of TRICARE." 32 C.F.R. § 199.21(a)(1). Defendants cite no cross-reference, no implementing instruction, and no rulemaking connecting § 199.4's medical-services exclusions to § 199.21's uniform formulary. They simply assert that these provisions "together exclude" GLP-1 medications for TFL, as if the word "together" can substitute for the analytical work needed to show how a medical-services regulation overrides a pharmacy-specific statute and its implementing rule.

The governing pharmacy framework is not a plan-status gate. Congress created an integrated pharmacy benefits program with a uniform formulary under 10 U.S.C. § 1074g, implemented by 32 C.F.R. § 199.21. That framework authorizes clinical utilization management tools (including PA clinical inquiries) to assure appropriate use. It does not authorize denial of a uniform-formulary drug based solely on plan enrollment. Every time Defendants reach outside the pharmacy program--to § 199.17(f)(3) on the managed-care services side, or now to § 199.4 on the basic benefits side--to justify a formulary action taken within § 199.21's uniform pharmacy program, they confirm what Plaintiff has argued from the outset: nothing authorizes a plan-based coverage split.

## V. DE 112's "OVERSIGHT CORRECTION" FRAMING CANNOT CURE RECORD-BASED PROCEDURAL DEFECTS.

Defendants assert time and again their conclusion that the August 2025 change was simply a faithful execution of "unambiguous" mandates and merely the "correction of an oversight." DE 112 at 6–7. The record materials point to serious procedural defects inconsistent with a mere ministerial correction.

*First*, the timeline is inverted: implementation directives in March/April 2025 preceded the later July 2025 "Decision Paper." AR 2824–27 (March and April 2025 contracting directives); AR 2675–79 (July 3, 2025 Decision Paper). The Decision Paper's stated "ISSUE" was not whether to end TFL coverage -- but how to verify whether prescribers and pharmacies are "in the network."AR 2675–79. DHA devoted four and a half pages to implementation logistics while offering absolutely no analysis of § 1074g's uniform-formulary mandate, § 1086's 'same benefits' requirement, seven years of TFL reliance, § 1079(a)(10)'s conditional exclusion, NDAA 2017 § 729's explicit inclusion of all covered beneficiaries, or the impact on the 2.5 million TFL enrollees DHA serves. Ending coverage for TFL was a foregone conclusion.

Under *Chenery*, agency action must be judged by the agency's contemporaneous reasoning, not post-hoc rationalizations supplied after implementation. A post-dated "Decision Paper" that didn't even address the question of TFL coverage cannot cure that problem; it highlights it. DHA was so motivated to impose "control on a segment of the pharmaceutical industry that is growing exponentially and is showing signs of fraud, waste, and abuse (**e.g., high volume weight loss clinic prescriptions**)" and "ballooning costs" (AR 2677) (Emphasis added.) that it did not bother to consider whether it was acting within the scope of its given authority.

*Second*, required pharmacy-program procedures were bypassed. Congress and DHA's implementing framework require Pharmacy & Therapeutics Committee review and Uniform Formulary Beneficiary Advisory Panel input for meaningful formulary changes and access restrictions. 10 U.S.C. § 1074g(b)–(c); 32 C.F.R. § 199.21(c)–(d), (g)(3). DHA treated the benefits extended by § 729 as subject to the process, but the AR contains no evidence of P&T Committee or UF-BAP review for the change--and the Defendants do not argue that such review occurred. Labeling the action "ministerial" does not answer

why those procedures were suspended and bypassed for a change that, by Defendants' own description, "assure[s]" denial of coverage to an entire beneficiary category. DE 112 at 6.

## Conclusion

DE 112's threshold reframings (scope/waiver and "wasted ink") should be rejected. Plaintiff's statutory and regulatory arguments are properly before the Court as legal support for pleaded APA claims. The August 2025 PA revision is unlawful because it implements a plan-status exclusion mechanism the medical and pharmacy programs do not authorize, conflicts with the conditional nature of the asserted obesity exclusion, and is unsupported by required process and a contemporaneous, reasoned agency explanation.

For the foregoing reasons, Defendants' Reply [DE 112] provides no basis to deny Plaintiff's Motion for Summary Judgment or to grant Defendants' Cross-Motion.

Respectfully submitted, February 11, 2026

Derence V. Fivehouse, Pro Se
316 Seaview Drive
Edenton, NC 27932
derencefivehouse@gmail.com

## CERTIFICATE OF MAILING

I hereby certify that on the date shown above, I deposited in the United States Mail, postage prepaid, a true and correct copy of the foregoing, addressed to counsel of record for the United States, AUSA K. Paige O'Hale and Rudy E. Renfer, Office of the United States Attorney for the Eastern District of North Carolina, 150 Fayetteville Street, Suite 2100 Raleigh, NC 27601, and by email to Ms. O'Hale at Paige.OHale@usdoj.gov and Mr. Renfer at Rudy.E.Renfer@usdoj.gov.

Derence V. Fivehouse