IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:25-CV-00041-M

| | |
|---|---|
| **Derence V. Fivehouse**, | |
| Plaintiff, | |
| v. | **Memorandum & Recommendation** |
| **U.S. Department of Defense,** et al., | |
| Defendants. | |

This dispute centers on a policy implemented in August 2025 by the Department of Defense's Defense Health Agency dealing with insurance coverage for weight loss medications under the TRICARE for Life ("TFL") program. That policy revised prior authorization criteria to clarify that TFL beneficiaries were ineligible for coverage for weight loss medications if obesity was the sole or major condition treated by the medication.

Plaintiff Derence Fivehouse says that this policy violated the Administrative Procedure Act because it exceeded the Department's statutory authority and was arbitrary and capricious.[1] He asks the court to set aside the memo that announced the policy and permanently enjoin the Defendants from enforcing it. Fivehouse has moved for summary judgment. The Defendants have moved to dismiss his complaint for failure to state a claim, or in the alternative, for summary judgment.[2]

---

[1] The court has subject-matter jurisdiction to hear this matter under 28 U.S.C. § 1331 because this matter arises under the Constitution, laws, or treaties of the United States. Fivehouse brings his claims under the Administrative Procedure Act. *See* 5 U.S.C. § 702.

[2] While Defendants style the motion as a 12(b)(6) motion to dismiss or motion for summary judgment in the alternative, it is untimely as a motion to dismiss. Fivehouse filed his complaint in September 2025, Compl., D.E. 1. Defendants answered the complaint in early November but did not bring this motion until late December. Answer, D.E. 44; M.S.J., D.E. 92. Motions to dismiss under Rule 12 must be brought before the first responsive pleading and within 60 days of service on the government. Fed. R. Civ. P. 12(a)(2),(b). So the undersigned construes Defendants' motion as a motion for summary judgment.

After reviewing the record and the parties' arguments, this opinion recommends that the District Court deny Fivehouse's motion for summary judgment and grant Defendants' cross-motion. The policy change aligned the Defense Health Agency's policy with the governing statutes and regulations, which Fivehouse's complaint does not challenge. So Defendants did not violate the APA and the District Court should enter judgment in Defendants' favor.[3]

## I. Background

The TRICARE program is a health program operated by the Department of Defense through the Defense Health Agency. Compl. ¶¶ 3–5, D.E. 1. Following the 1994 National Defense Authorization Act, the Department of Defense reformed the health benefits of servicemembers who sought care in civilian healthcare settings. Civilian Health and Medical Program of the Uniformed Services (CHAMPUS); TRICARE Program, 60 Fed. Reg. 52078 (Oct. 5, 1995). To do so, it set up the TRICARE program and created multiple categories of beneficiaries. *Id.*

Congress tasked the Secretary of Defense with administering the TRICARE program. 10 U.S.C. § 1073(a)(2). It also requires the Secretary to create a pharmacy benefits program. *Id.* § 1074g(a)(1). And it mandates that the pharmacy benefit program "include a uniform formulary of pharmaceutical agents, which shall assure the availability of pharmaceutical agents in the complete range of therapeutic classes." *Id.* § 1074g(a)(2)(A). The medications on the formulary are "available to eligible covered beneficiaries[.]" *Id.* A Pharmacy and Therapeutics Committee controls which medications are placed on the uniform formulary. *Id.* § 1074g(b)(1).

In the 2017 National Defense Authorization Act, Congress approved further changes to

---

[3] The presiding district judge has referred this matter for entry of a recommendation on its resolution. 28 U.S.C. § 636(b)(1)(B).

TRICARE. Pub. L. No. 114–328 (2016). After the 2017 NDAA, the Department of Defense recognized three TRICARE plans: Prime, Select, and TFL. 32 C.F.R. § 199.17(a)(6)(ii)(A)–(C).

The Secretary has discretion as to what benefits are available to beneficiaries within each class. The statute permits the Secretary to contract with healthcare providers "for medical care for [beneficiaries] under such insurance, medical service, or health plans as he considers appropriate." 10 U.S.C. § 1079(a). And the Secretary can choose what level of benefits each healthcare plan receives. *Id.* § 1097(b)(1)–(3). But the Secretary may not discriminate between individuals on the same plan because they are a retiree. *See id.* § 1086(a),(d) (requiring the same "health benefits for those persons under the same insurance, medical service or health plans" as specified in § 1079(a)).

Prior to the 2017 NDAA, federal law prohibited TRICARE from covering any medication for obesity if obesity was "the sole or major condition treated." *Id.* § 1079(a)(10). But the Department of Defense read § 706 and § 729 of the 2017 NDAA to permit TRICARE to cover glucagon-like peptide 1 (GLP-1) prescription drugs for the treatment of obesity. AR2675. That Act authorized a "medical intervention incentive program" which required the Department to create a program that encouraged "covered beneficiaries" to receive medical interventions for chronic diseases including obesity. § 729(a)(1)–(2). According to the Department, this language, combined with the Secretary's discretion to establish health plan offerings, permitted it to cover obesity medications for Prime and Select beneficiaries. Establishment of TRICARE Select and Other TRICARE Reforms, 82 Fed. Reg. 45441, 45442 (Sept. 29, 2017). The Department codified this distinction at § 199.17(f)(3).

The Department has issued numerous regulations implementing these statutes. These regulations delineate the differences between TRICARE Prime, Select, and For Life. 32 C.F.R. § 199.17(a)(6)(ii). Section 199.17 notes that the benefits for TFL beneficiaries are not affected by

3

the regulations promulgated after the 2017 NDAA. Instead, TFL benefits are found in § 199.4. *Id.* § 199.17(a)(6)(ii)(C). That section adopts the prohibition found in § 1079(a)(10), banning coverage of treatments aimed at obesity. *Id.* § 199.4(g)(28).[4] So while Prime and Select beneficiaries have been exempted from the obesity-treatment ban, TFL beneficiaries have not. *See id.* § 199.17(f)(3).

Taken together, these statutes and regulations establish the following framework. Section 1079(a)(10) generally bars coverage for medications when obesity is the sole or major condition treated. The 2017 NDAA and the implementing regulations created a limited exception to that general bar for Prime and Select beneficiaries. Those regulations did not, however, create an exception for TFL beneficiaries, who remain subject to the obesity-treatment exclusion in 32 C.F.R. § 199.4.

Yet despite regulations limiting the obesity-treatment exception to Prime and Select beneficiaries, some network pharmacies dispensed GLP-1s to TFL beneficiaries for several years. AR2675. So in July 2025, the Department of Defense, through the Defense Health Agency, announced a modification to its prior authorization criteria for weight loss drugs that limited TFL beneficiaries' access to these medications. AR2675–AR2679. And the DHA sent notification letters to beneficiaries on or before July 31, 2025, notifying them of the change and its effective date on August 31, 2025. AR2684–AR2692.

Fivehouse, a TFL beneficiary, received one of these letters. Notice from Express Scripts, D.E. 15–4. His physician had previously determined that he needed a GLP-1 medication to support his weight loss efforts. Bunn Decl. ¶¶ 1, 4, D.E. 15–3. Fivehouse lost approximately three pounds of body weight between May and September 2025, something he had struggled to do through diet

---

[4] This regulation notes one narrow exception for bariatric surgeries as codified in 32 C.F.R. § 199.4(e)(15).

4

and exercise alone. *Id.* ¶¶ 3–4.

Fivehouse contends that the Department lacked the authority implement the August 2025 policy change that effectively excluded TFL beneficiaries from coverage for GLP-1 medications to treat obesity. Compl. ¶ 15. And he says that even if it did, it acted arbitrarily and capriciously implementing the change without "amending [32 C.F.R.] § 199.21 and without a reasoned explanation" to support its decision. *Id.* ¶ 16. Thus he brings claims under the Administrative Procedure Act, and asks the court to "declare unlawful and set aside" the Department's August 2025 policy. *Id.* at 4. Further, he seeks injunctive relief that restores GLP-1 coverage for TFL beneficiaries. *Id.* at 5.

## II. Discussion

This opinion first discusses Fivehouse's claim that the policy change exceeded the Department's statutory authority. It concludes that the change aligned Department practice with the governing law. For this reason, the District Court should grant Defendants' motion on that claim. The opinion then turns to Fivehouse's claim that the policy change was arbitrary and capricious. The Defendants are also entitled to judgment in their favor on that claim because the law required the Department to make it.

### A. Standard for Cross-Motions for Summary Judgment

Summary judgment is appropriate when the pleadings, affidavits, and other discovery materials before the court show that "there is no genuine dispute as to any material fact," thus entitling the moving party to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Tolan* v. *Cotton*, 572 U.S. 650, 656–57 (2014). In making this determination, "the nonmoving party's

5

evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *News & Observer Publ'g Co.* v. *Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (quoting *Hunt* v. *Cromartie*, 526 U.S. 541, 552 (1999)).

When, as here, the court is confronted with cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Rossignol* v. *Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quotation omitted). In conducting this analysis, "the court must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion." *Id.* (quotation omitted).

But in an APA claim, this standard is modified. *Nieves* v. *McHugh*, 111 F. Supp. 3d 667, 679 (E.D.N.C. 2015); *Bailey* v. *Wolf*, No. 5:20-cv-00253-M, 2021 WL 258559, at *5 (E.D.N.C. June 23, 2021). When reviewing an APA claim, the court "'does not resolve factual questions but instead determines whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" *Nieves*, 111 F. Supp. 3d at 679 (quoting *Ohio Valley Envtl. Coal.* v. *Hurst*, 604 F. Supp. 2d 860, 879 (S.D.W. Va. 2009)). So in an APA claim, "summary judgment serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Red Wolf Coal.* v. *U.S. Fish & Wildlife Serv.*, 346 F. Supp. 3d 802, 809 (E.D.N.C. 2018) (citation modified).

With this standard in mind, the court turns to the parties' summary judgment motions.

**B.** **Whether the Department Lacked Statutory Authority to Implement the Challenged Policy Change**

Fivehouse's first claim contends that the Department lacked statutory authority to exclude TFL beneficiaries from GLP-1 medication coverage. Compl. at 4. He argues that § 1086(a)'s requirement that retirees have access to the same health plans as other beneficiaries means that all TRICARE beneficiaries must receive the same prescription drug benefits. Mem. in Supp. of M.S.J. at 25–26, D.E. 64. Defendants argue that Fivehouse misreads the underlying law. Resp. in Opp'n to M.S.J. at 18–23.

The Administrative Procedure Act empowers courts to "hold unlawful and set aside agency action" that it finds to be "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right[.]" 5 U.S.C. § 706(2)(C). In determining whether the agency exceeded its grant of authority, the "court 'must exercise [its] independent judgment[.]'" *S. Airways Express, LLC* v. *U.S. Dep't of Trans.*, 159 F.4th 50, 58 (D.C. Cir. 2025) (quoting *Loper Bright Enters.* v. *Raimondo*, 603 U.S. 369 (2024)) (alteration in original).

Here, the TRICARE statutes prohibit coverage of drugs for obesity if that is "the sole or major condition treated." 10 U.S.C. § 1079(a)(10). Notwithstanding that language, Defendants read the 2017 NDAA to permit obesity medications in certain circumstances.[5] Pub. L. No. 114–328 (2016). Under this authority, the Department issued § 199.17(f)(3), which exempts TRICARE Prime and Select beneficiaries from this ban while not modifying any benefit for those on the TFL plan. 32 C.F.R. § 199.17(a)(6)(ii)(C).

But the Department had failed to align its practices with the governing statutes and regulations. AR2675. Thus, the policy change brought the Department's actions into line with the

---

[5] Fivehouse does not challenge the Defendants' interpretation of this language, so the court assumes, without deciding, that it is a permissible interpretation of the 2017 NDAA.

relevant statutes and regulations. This change did not exceed its statutory authority. To the contrary, it was providing coverage for TFL beneficiaries, not removing it, that exceeded the Department's authority under law. Thus the District Court should grant Defendants' motion on this claim and deny Fivehouse's motion.

### 1. Fivehouse Challenges the Wrong Agency Action

Fivehouse resists this conclusion by arguing that the underlying statutes require TFL beneficiaries to receive the same treatment options as any other TRICARE beneficiary. 10 U.S.C. § 1086. But this argument founders for more than one reason.

The most prominent flaw in Fivehouse's argument is that he does not challenge the agency action that created the plan-based distinction in coverage. Section 199.17(f)(3) established that distinction, and Fivehouse has not asked the court to set that regulation aside. Instead, Fivehouse challenges the August 2025 policy that ensured compliance with it. Compl. at 2 ("This case challenges the . . . August 2025 policy change[.]"), 4 (asking the court to "[d]eclare unlawful and set aside" the policy memo). If the court were to set aside that policy, the governing statutes and regulations would still prohibit coverage for obesity-treatment-only medications for TFL beneficiaries.

But even if Fivehouse successfully challenged that regulation, he would still be no better off. If the court were to set aside § 199.17(f)(3), the TRICARE program would return to its status before enactment of the regulations implementing the 2017 NDAA. That change would eliminate the exception for Prime and Select beneficiaries from the general prohibition on coverage for obesity-treatment medications. It would not entitle TFL beneficiaries to the coverage Fivehouse seeks.

8

The only way Fivehouse could secure his desired relief would be if the court rewrote the underlying statutes and regulations to say that the Department must provide obesity-treatment medications to TFL beneficiaries. Courts declare statutes and regulations unlawful; they cannot revise them. *United States* v. *Simms*, 914 F.3d 229, 251 (4th Cir. 2019) ("[J]udges cannot revise invalid statutes. To the contrary, while the grave remedy of striking down a statute . . . lies within the judicial province, rewriting it is a task solely for the elected legislature."). Thus even if Fivehouse challenged the correct agency action, the court would not take a red pen to the TRICARE regulations to include TFL beneficiaries in § 199.17(f)(3)'s exemption. This means that even if Fivehouse were successful, he would not obtain access to these medications.

### 2. The Law Does Not Require Uniform Benefits Among TRICARE Plans

Moreover, Fivehouse's principal assumption is wrong. The law does not require uniformity in coverage across plans. To start, the TRICARE statutes vest the Secretary with significant latitude in administering the program. He is empowered to contract with healthcare providers for differing levels of care. 10 U.S.C. § 1097(b)(1)–(3). The statutes permit the Secretary to contract for medical care "as he considers appropriate." *Id.* § 1079(a).

So contrary to Fivehouse's conclusion, § 1086(d) does not entitle all beneficiaries to the same level of coverage. Instead, it requires that all beneficiaries *on the same plan* receive the same coverage and that retirees be eligible for the same plans as dependents. *Id.* § 1086(d) (requiring the Secretary to "contract under the authority of this section for health benefits for those persons under the same insurance, medical service, or health plans he contracts for under section 1079(a) of this title."). While § 1086 requires that all TRICARE beneficiaries under the same plan receive the same coverage, it does not entitle TFL beneficiaries to the same benefits as Prime or Select beneficiaries.

9

### 3. The Law Does Not Require Uniform Pharmacy Benefits Across TRICARE Plans.

Fivehouse's argument that § 1074g's uniform formulary requirement independently mandates the same pharmacy benefits also fails. The law requires that the Secretary establish a pharmacy benefits program that includes "a uniform formulary of pharmaceutical agents[.]" *Id.* § 1074g(a)(1) & (a)(2)(A). Medications on the uniform formulary are "available to eligible covered beneficiaries." *Id.* § 1074g(a)(2)(E). An "eligible covered beneficiary" is "a covered beneficiary for whom eligibility to receive pharmacy benefits through the means described in subsection (a)(2)(E) is established under this chapter or another provision of law." *Id.* § 1074g(i)(1).

In other words, to be eligible for coverage for a particular medication, a beneficiary must be able to point to a legal entitlement to coverage. So just because a medication is listed on the unform formulary does not mean that every TRICARE beneficiary is entitled to coverage for it. A beneficiary is only entitled to coverage for a particular medication if they can show that their TRICARE plan covers that medication for the relevant use.

Section 1079(a)(10) prohibits treatments primarily aimed at treating obesity. Department regulations create eligibility for Prime and Select beneficiaries to obtain those treatments under the authority of the 2017 NDAA and the Secretary's ability to contract for healthcare. 32 C.F.R. § 199.17(f)(3). No similar entitlement exists for TLF beneficiaries. So TFL beneficiaries do not qualify as eligible covered beneficiaries for GLP-1 medications solely or primarily intended to treat obesity.

The record does not establish that the August 2025 policy change exceeded the Defendants' statutory authority. Thus the District Court should deny Fivehouse's motion and grant Defendants'

motion.[6]

### C.   Whether the Department's Actions Were Arbitrary and Capricious

Fivehouse also argues that the August 2025 policy change was arbitrary and capricious. Mem. in Supp. of Mot. for Summ. J. at 26–28.[7] He says that the Department failed to consider the effects of the change and should have engaged in more measured decision making. *Id.* at 27. Defendants reject this conclusion and say that no additional procedures were required because they were simply following the law. Resp. in Opp'n at 13–16.

Under the Administrative Procedure Act, a court should set aside agency action if it is "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). An agency action is arbitrary and capricious when the agency "failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise" or considered factors prohibited by law. *Sierra Club* v. *U.S. Dep't of the Interior*, 899 F.3d 260, 293 (4th Cir. 2018) (quotation omitted).

So even if the court finds the agency to have had the power claimed, the arbitrary and capricious standard applies, but it provides the court a "narrow" scope of review. *Roe* v. *Dep't of Def.*, 947 F.3d 207, 220 (4th Cir. 2020) (quotation omitted). The court must not "substitute its

---

[6] In his motion for summary judgment, Fivehouse raises two additional arguments to support his § 706(a)(2)(C) claim. First, he says that even if Defendants had the authority to exclude TFL beneficiaries from GLP-1 coverage, they may only do so when obesity "is the sole or major condition treated," which is not true in his case. Pl.'s Mot. Summ. J. at 17 (quoting 10 U.S.C. § 1079(a)(10)) (internal quotation marks omitted). Second, he contends that the Department improperly implemented the policy without the approval of the Uniform Formulary Beneficiary Advisory Panel. Mem. in Supp. of Mot. Summ. J. at 22–24. But neither argument is in his Complaint. Raising new arguments in a responsive pleading is improper. *Cape Hatteras Access Pres. Alliance* v. *Jewell*, 28 F. Supp. 3d 537, 552 (E.D.N.C. 2014). So Fivehouse has waived those arguments and this opinion does not address them.

[7] This claim is found in Fivehouse's complaint and argued in his motion for summary judgment. But in responding to Defendants' motion, he states that "this case turns on statutory authority, not arbitrary-and-capricious review." Response in Opp'n at 7, D.E. 108. So it is unclear whether Fivehouse abandoned this argument. Because he discusses it in his complaint and motion for summary judgment, this opinion will analyze this claim.

11

judgment for that of an agency." *Motor Vehicles Mfrs. Ass'n* v. *State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). But the court has an obligation to ensure that "the agency action was reasonable and reasonably explained." *S. Airways Express, LLC*, 159 F.4th at 59 (quotation omitted).

In this case, Fivehouse's arguments fail. It cannot be arbitrary or capricious for the Department to align its policy with the law. "[G]overnment agencies and departments must abide by their own regulations and existing statutes." *Guillot* v. *Garrett*, 970 F.2d 1320, 1327 (4th Cir. 1992). This conclusion is not only a "deeply rooted principle[] of administrative law," but also "common sense[.]" *Fed. Defs. of N.Y.* v. *Fed. Bur. of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020).

This basic requirement means that Defendants did not need to undertake an extended analysis of the burdens on TFL beneficiaries. But the Department still did consider them in its analysis. The Decision Paper noted that this change would impact TFL beneficiaries who would likely be opposed to it, and the Department prepared an analysis of the policy change's impacts to be sent to Congress. AR2703–AR2705, AR2675.

So Fivehouse's argument that the government did not consider the problem deeply enough fails. Defendants did what the law required, something that is neither arbitrary nor capricious. And they did consider the impact on TFL beneficiaries before making the change. So the District Court should grant Defendants' summary judgment motion on Fivehouse's arbitrary-and-capricious claim and deny Fivehouse's motion.

## III.    Conclusion

As a TRICARE For Life beneficiary, Fivehouse is categorically excluded from receiving GLP-1 medications prescribed solely or primarily to treat obesity under his Department-operated

healthcare plan. The policy change Fivehouse challenged was necessary to ensure that the pharmacy benefit program was administered in accordance with the governing statutes and regulations. He has not shown that the APA requires Defendants to continue a dispensing practice inconsistent with those statutes and regulations. For these reasons, Defendants are entitled to a judgment as a matter of law. Thus the District Court should deny Fivehouse's motion for summary judgment (D.E. 63) and grant Defendants' summary judgment motion (D.E. 92).

The Clerk of Court must serve a copy of this Memorandum and Recommendation ("M&R") on each party who has appeared in this action. Any party may file a written objection to the M&R within 14 days from the date the Clerk serves it on them. The objection must specifically note the portion of the M&R that the party objects to and the reasons for their objection. Any other party may respond to the objection within 14 days from the date the objecting party serves it on them. The district judge will review the objection and make his or her own determination about the matter that is the subject of the objection. If a party does not file a timely written objection, the party will have forfeited their ability to have the M&R (or a later decision based on the M&R) reviewed by the Court of Appeals.

Dated: June 17, 2026

_____
Robert T. Numbers, II
United States Magistrate Judge

13