No. 2:25-CV-00041-M-RN



DERENCE V. FIVEHOUSE,
     Plaintiff,

v.

U.S. DEPARTMENT OF DEFENSE, et al.,
     Defendants.

**PLAINTIFF'S OBJECTIONS TO THE MEMORANDUM AND RECOMMENDATION (DE 134)**

Pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1), Plaintiff objects to

the Memorandum and Recommendation entered June 17, 2026 (DE 134) (the "M&R"). These objections

address the M&R's statutory-authority ruling, remedy/wrong-action ruling, unnecessary declaration

regarding prior coverage, arbitrary-and-capricious ruling, waiver ruling, and recommendation granting

Defendants' cross-motion. To be clear, Plaintiff objects to all adverse rulings and recommendations in the

M&R.

**I. STANDARD OF REVIEW**

The District Court reviews de novo those portions of the M&R to which a party objects, and "may

accept, reject, or modify, in whole or in part, the findings or recommendations." 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72(b)(3).

The dispositive question here is one of statutory interpretation. On such questions the court must

"exercise [its] independent judgment" and owes no deference to the agency's reading. Loper Bright

Enters. v. Raimondo, 603 U.S. 369, 412 (2024); S. Airways Express, LLC v. U.S. Dep't of Transp., 159

F.4th 50, 58 (D.C. Cir. 2025). The M&R recites this standard. M&R 7. As Objection 1 shows, it did not

apply it to the dispositive question.

The Government's request for deference to DHA's reading of its own regulations does not alter that

standard. The Government argued below that, even after Loper Bright, an agency's interpretation of its

own regulations remains entitled to deference under Auer v. Robbins, 519 U.S. 452 (1997), and to

Skidmore weight. Resp. in Opp'n 14, DE 90; Defs.' Mem. 19, DE 93. Auer has no application here. The

1

dispositive question is the scope of DHA's statutory authority--whether sections 706 and 729, § 1074g, § 1086, and § 1079(a)(10) permit DHA to confine the obesity-treatment authority and the uniform-formulary benefit to two of the three classes of TRICARE beneficiaries Congress defined--that question is for the court's judgment. An agency may not use the interpretation of its own regulation to enlarge the statutory authority Congress conferred. Even as to the regulations, Auer and Kisor v. Wilkie, 588 U.S. 558 (2019), supply no deference: the regulations are not ambiguous. DHA's argument is a litigating position that appears nowhere in the July 3, 2025 Decision Paper or the administrative record; it is inconsistent with eight years of contrary practice; and it works unfair surprise on those who relied on that practice. The Fourth Circuit applies that limit directly: Auer deference is unavailable where an agency announces an interpretation contrary to an established practice to which it never objected, Romero v. Barr, 937 F.3d 282, 291-94, 297-99 (4th Cir. 2019), and where the agency's new position would work unfair surprise on parties who relied on its settled course, Christopher v. SmithKline Beecham Corp., 567 U.S. 142, 155-56 (2012). That the 2025 Policy is best understood as a legislative rule--it changed the operative law governing who may obtain the formulary benefit and reversed years of consistent practice--only reinforces the conclusion: a newfound, unreasoned reading that effects substantive change is the paradigm case in which Auer, Kisor, and Skidmore deference is unavailable. Skidmore persuasiveness fails for the same reasons.

## II. THE STATUTORY FRAMEWORK: THE BENEFITS AND THE STATUTES THAT DEFINE THEM

This case concerns two distinct statutory benefits, each defined once by Congress and provided uniformly to all covered beneficiaries, including TRICARE for Life (TFL). The first is the medical benefit--the Basic Program of medical care. The second is the pharmacy benefit--the uniform formulary of pharmaceutical agents. They rest on different statutes and the prescription at issue belongs to the second. What each benefit is, and how the statutes define it, resolves this case, because the M&R's rulings depart from those definitions.

2

Case 2:25-cv-00041-M-RN     Document 136-2     Filed 07/01/26     Page 2 of 42

The Medical Benefit. Section 1076 is the base entitlement--the general rule for dependents' medical care. Section 1079(a) defines the contracted benefit by reference to that base: "The types of health care authorized under this section shall be the same as those provided under section 1076 of this title, except as follows", followed by a closed list of exceptions, including the obesity limitation in § 1079(a)(10). That package--§ 1076 care as modified by the § 1079(a) list--is the Basic Program, codified at 32 C.F.R. § 199.4, and it is the single medical benefit every TRICARE beneficiary receives. Section 1086 then does two things for the retiree and TFL population. It establishes eligibility: § 1086(c) identifies the covered persons, and § 1086(d) brings in the Medicare-eligible retiree, which is why § 1072(13) defines TFL as the wraparound option "made available to the beneficiary by reason of section 1086(d)". And it assigns the medical benefit by incorporation: § 1086(a) directs the Secretary to contract for these persons "under the same insurance, medical service, or health plans he contracts for under section 1079(a)". Section 1086 does not redefine the benefit; it points back to the § 1079(a) and § 1076 package of medical benefits and commands "the same." The only respects in which Congress varied that package for the § 1086 population are the ones it stated expressly: two excluded services under § 1086(a) (eye examinations and eating-disorder treatments), cost-sharing under § 1086(b), and Medicare-secondary payment under § 1086(d). TFL's medical benefit is therefore the § 1076 Basic Program, defined by § 1079(a) and assigned to TFL by § 1086(a)--identical to every other beneficiary's except for three named variances. And because TFL is the Medicare wraparound rather than a § 1097 "managed-care" plan, its rules are administered through the basic-program regulations--§§ 199.3, 199.4, and 199.8--not through § 199.17, the "managed-care" regulation that governs the Prime and Select plans which TRICARE actively manages. 32 C.F.R. § 199.17(a)(6)(ii)(C).

The Pharmacy Benefit. The prescription at issue is not a medical benefit; it is a pharmacy benefit, governed by a separate statute. Section 1074g, added by the National Defense Authorization Act for Fiscal Year 2000, Pub. L. 106-65, § 711 (1999), directs the Secretary to "establish an effective, efficient, integrated pharmacy benefits program", § 1074g(a)(1), which "shall include a uniform formulary of pharmaceutical agents ... in the complete range of therapeutic classes", with inclusion "based on the

3

relative clinical and cost effectiveness of the agents", § 1074g(a)(2)(A). Agents on that uniform formulary "shall be available to eligible covered beneficiaries through military pharmacies, retail network pharmacies, and the mail-order program". § 1074g(a)(2)(E). The formulary is uniform--one formulary for all covered beneficiaries, Prime, Select, and TFL alike. A drug may not be removed from it except by a defined process: "no pharmaceutical agent may be excluded from the uniform formulary except upon the recommendation of the Pharmacy and Therapeutics Committee". § 1074g(a)(2)(D). The medical benefit limitation in § 1079(a)(10) reaches this uniform formulary, if at all, only through the single regulatory conduit § 199.21(a)(3)(iii) identifies. NDAA 2017 § 729 removed that conduit's predicate when, as interpreted by DHA, it authorized the treatment of obesity. The pharmacy benefit runs on its own track--§ 1074g and § 199.21--not on the § 1086, § 1079, and § 1076 medical benefit chain.

These two definitions support the objections that follow. TFL receives the same § 1076 Basic Program medical benefit, assigned by § 1086(a), and the § 1074g uniform-formulary pharmacy benefit-- each defined once and provided to all covered beneficiaries. The M&R's statutory-authority reading departs from both. As to the medical benefit (Objection 2), it reads § 1086(a)'s command to provide "the same ... plans" as permitting different benefit content by plan, severing the provision incorporating TFL from § 1079(a) and § 1076. As to the pharmacy benefit (Objection 3), it routes the prescription issue through the medical benefit exclusion in § 1079(a)(10) rather than the uniform formulary § 1074g requires, treating a pharmacy benefit as though it were governed solely by medical benefit authority. Each ruling fails because it departs from a benefit the statutes established.

### III. OBJECTION 1: The M&R Recommends Judgment as a Matter of Law on the Dispositive Statutory Question It Expressly Declined To Decide, on the Incorrect Premise That Plaintiff Did Not Challenge the Government's Interpretation.

(a) Portion objected to. Footnote 5, at M&R 7: "Fivehouse does not challenge the Defendants' interpretation of this language, so the court assumes, without deciding, that it is a permissible interpretation of the 2017 NDAA."

(b) What the M&R held. The M&R's entire statutory-authority recommendation depends on this footnote. The M&R holds that the August 2025 action "aligned" agency practice with the governing law

4

Case 2:25-cv-00041-M-RN    Document 136-2    Filed 07/01/26    Page 4 of 42

(M&R 2,5,7-8), that "it was providing coverage for TFL beneficiaries, not removing it, that exceeded the Department's authority" (M&R 8), and that no remedy short of a judicial rewrite is available (M&R 9). Each of those conclusions presupposes that DHA's reading of sections 706 and 729 of the 2017 NDAA is correct. The M&R did not decide that the reading is correct. It assumed it, and it justified the assumption on the sole ground that Plaintiff "does not challenge" the interpretation.

(c) Why it is error. The footnote is wrong on the record and wrong on the law. DHA had no authority to enact its 2025 Policy excluding TFL beneficiaries. And the M&R conclusion--that § 199.17 already confined the sections 706 and 729 obesity authority to two of the three plans--is unsupported and contrary to the statutory text.

First, the premise is contradicted by Plaintiff's filings. The scope of sections 706 and 729 was the core of Plaintiff's case, not an unchallenged point. Plaintiff argued:

> DHA's choice to use 32 C.F.R. § 199.17(f)(3) to implement § 729 for Prime/Select was one of administrative convenience, not statutory compulsion. . . . Nowhere in § 729 does Congress say 'Prime/Select' only.
> Mem. in Supp. of Pl.'s Mot. for Summ. J. 13, DE 64.

And on reply:

> DHA's decision to limit § 199.17(f)(3) to Prime/Select was an implementation choice--not a Congressional command.
> Pl.'s Consolidated Reply 20, DE 108.

> [B]oth statutes the Government invokes as authority in 32 C.F.R. § 199.17(f)(3)--explicitly define 'covered beneficiary' to include TFL via the § 1072 definition. The Government's 53 pages of briefing never acknowledge this.
> Pl.'s Consolidated Reply 21, DE 108.

That is a direct challenge to the interpretation footnote 5 says was unchallenged. The contested issue was squarely presented in both Plaintiff's motion (DE 64 §§ I-II) and reply (DE 108 § V), and it is therefore preserved for de novo review. Footnote 5's "does not challenge" finding cannot stand against the record it purports to describe. To be clear, Plaintiff challenges the government's 2025 Policy--the first time, after eight years of contrary implementation, DHA determined that the 2017 NDAA and § 199.17 permit (or require) excluding TFL from the obesity-intervention authority.

5

Second, a recommendation of judgment as a matter of law cannot rest on an assumed answer to the outcome-determinative question. The M&R itself holds that the court must "exercise [its] independent judgment" on the meaning of the statute. M&R 7 (quoting Loper Bright). Assuming the answer, as the M&R did, is the opposite of exercising independent judgment. Once Plaintiff squarely contests the interpretation, the court must decide it; not recommend judgment on a premise it expressly left undecided. The proper course is to reject footnote 5 and resolve the question de novo.

(d) Relief. Decline to adopt footnote 5 and the conclusions that depend on it (M&R 7-9), and decide the statutory-authority question de novo as set out in Objection 2.

## IV. OBJECTION 2: Decided De Novo, Sections 706 and 729 Reach TFL Beneficiaries, and the Department Had No Authority To Remove TFL From the Beneficiary Class Congress Defined.

(a) Portions objected to. M&R 8 ("[I]t was providing coverage for TFL beneficiaries, not removing it, that exceeded the Department's authority under law."); M&R 9 (concluding that the Secretary's discretion under 10 U.S.C. § 1097(b)(1)-(3) and § 1079(a) permits the difference in coverage).

(b) What the M&R held. The M&R reasons that 10 U.S.C. § 1079(a)(10) bars obesity-treatment coverage for all beneficiaries; that Sections 706 and 729 permitted an exception; that DHA granted that exception to Prime and Select only; and that, as a result, § 1079(a)(10) "remains" binding on TFL. M&R 7-10. It treats the confinement to Prime and Select as an exercise of the Secretary's discretion. M&R 9.

(c) Why it is error.

The conclusion does not follow from its premises because it rests on a structural assumption the M&R never justifies: that the Department could apply the §§ 706 and 729 obesity-treatment authority differently across plan categories within a beneficiary class Congress defined by reference to 10 U.S.C. § 1072.

Sections 706 and 729 do not create a plan-by-plan benefit; they incorporate a defined beneficiary class (covered beneficiaries) into a new medical benefit. Sections 729(f) and § 706(d) defines the terms "covered beneficiary" and "TRICARE program" by cross-reference to § 1072. Section 1072(5) defines "covered beneficiary"; § 1072(7) defines the "TRICARE program" to include TRICARE Prime,

6

TRICARE Select, and TRICARE for Life; and § 1072(13) separately defines TRICARE for Life. DHA invoked §§ 706 and 729 as authority to cover obesity treatment "notwithstanding 10 U.S.C. § 1079(a)(10)." 32 C.F.R. § 199.17(f)(3). The beneficiary class in the authority DHA invoked includes TFL. The relevant question is not whether the TRICARE plans differ in administration, but whether the authority DHA invoked permits the Department to remove that medical benefit from one of the covered beneficiaries that authority includes. Nothing in §§ 706 or 729 authorizes that removal. Nor does anything in those sections authorize DHA to override the parity in medical benefits that § 1086(a) commands.

The Government's contention below that § 729 is merely permissive does not change the analysis. DHA did not leave the authority unexercised; it invoked §§ 706 and 729 as the source of authority to cover obesity treatment notwithstanding § 1079(a)(10). 82 Fed. Reg. 45,438, 45,442 (Sept. 29, 2017). Once DHA did so, the beneficiary classes incorporated into that authority included TFL through § 1072. That DHA exercised that authority selectively--covering Prime and Select but excluding the other category Congress placed in the same "covered beneficiary" class, TFL--is precisely what § 1086(a)'s command of parity in medical benefits forbids.

The M&R reaches the contrary result only by writing the parity command out of the statute--even as it quotes it. The M&R quotes § 1086(a)'s text--directing the Secretary to "contract under the authority of this section for health benefits for those persons under the same insurance, medical service, or health plans he contracts for under section 1079(a)" (M&R 9)--and then, in the same passage, restates it as a requirement "that all beneficiaries *on the same plan* receive the same coverage"(Italics in original.) (M&R 9). The statute says the same "plans;" the paraphrase says the same "plan." That singular-for-plural substitution is the mistake. Section 1086(a) commands that the Secretary contract for TFL under the same plans he contracts for under § 1079(a)--a cross-plan parity command – for the same medical benefits set out under 1076. The M&R's "same plan[(s)]" gloss silently converts that parity command into an intra-plan rule--one that bars only discrimination "between individuals on the same plan" (M&R 3). This grants the Secretary discretion Congress never conferred. The statute's command verb, "shall" forecloses the M&R reading: § 1086(a) provides that the Secretary "shall" contract under the same plans, not that he

7

may differentiate among them "as he considers appropriate." The M&R does not quote that "shall" nor does it appear in its analysis. As with the M&R's insertion of "for a particular medication" into § 1074g(i)(1) (see Objection 3), the M&R reaches its result by supplying statutory language Congress did not write and omitting language Congress did--here, by reading the mandatory "same . . . plans" as a permissive "same plan."

The statute's structure confirms that "the same . . . plans means the same medical benefits. Section 1079(a) defines the benefit's content by reference to § 1076, "except as follows," with § 1079(a)(10) among the enumerated exceptions. Section 1086(a) incorporates that medical benefit package wholesale for TFL--"the same . . . plans he contracts for under section 1079(a)--with only two differences.

The plan-design provisions the M&R relies on confer no authority to exclude an entitled covered beneficiary; they govern how care is delivered and what it costs, not who benefits. Section 1079(a)'s direction that the Secretary contract under the plans he "considers appropriate" modifies the choice of insurance vehicle, not the content of the medical benefit that it--§ 1076 care--and neither it nor § 1076 authorizes removing a class of beneficiaries from that benefit. Section 1097 is the alternative-delivery authority: it empowers the Secretary to contract with health maintenance organizations, preferred provider organizations, and like entities, § 1097(a), to deliver care "to which covered beneficiaries are entitled under this chapter. It is the "managed-care" authority--the power to write the contracts through which DHA actively delivers and manages care--and § 199.17 is the regulation that implements it for the "managed-care" plans, TRICARE Prime and TRICARE Select. That is why the obesity exception DHA invokes lives in § 199.17 and recites that it operates "[u]nder the authority of 10 U.S.C. § 1097 and that "[s]uch services must be provided by a TRICARE network provider. 32 C.F.R. § 199.17(f)(3). The exception reaches Prime and Select because those are the only plans § 1097 "managed-care" authority governs--not because of any determination that TFL should receive a lesser benefit. TFL is not a § 1097 "managed-care"contract; it is the Medicare wraparound under § 1086(d), in which Medicare is the primary payer and active manager and TRICARE pays second. The regulation says exactly that, routing TFL's rules out of § 199.17 and back to the basic-program regulations: TFL's "rules ... are generally set

8

forth in §§ 199.3 (Eligibility), 199.4 (Basic Program Benefits), and 199.8 (Double Coverage). 32 C.F.R. § 199.17(a)(6)(ii)(C). TFL beneficiaries are expressly excepted from the enrollment that Prime and Select require. Id. § 199.17(a)(6)(iii). Section 199.17(f)(3)'s silence as to TFL is thus the silence of a "managed-care" delivery rule with no authority to address medical benefits delivered through Medicare--not a decision to withhold a benefit.

The M&R nonetheless reads the three delivery alternatives of § 1097(b)(1)-(3) as authority for the Secretary to "choose what level of benefits each healthcare plan receives", M&R 3, and to provide "differing levels of care", M&R 9. Those delivery alternatives authorize differing contract scope, not differing entitlement—even within Prime and Select. A contract "may provide for the delivery of" "selected health care services," § 1097(b)(1); "total health care services for selected covered beneficiaries," § 1097(b)(2); or "total health care services for all covered beneficiaries who reside in a geographical area designated by the Secretary," § 1097(b)(3). The first differentiates by service and the third by geography--neither parcels a benefit among classes of beneficiaries--and the middle option takes its meaning from its neighbors: "selected covered beneficiaries" identifies whom a particular managed-care contract enrolls. And, as noted above, TFL members, are not enrollees of any § 1097 contract. Context forecloses reading that one item as power to strip medical benefits from one category of covered beneficiary - the items flanking it are ordinary contract-scope choices. Authority to override the § 1086 parity command would not be enumerated, unannounced, as the second of three contract-design options. One more feature precludes that interpretation. The beneficiaries § 1097(b)(2) reaches are "covered" before any contract selects them, so the provision presupposes the very entitlement the M&R reads it to let the Secretary remove--a contract delivery clause cannot repeal the entitlement statutes that define beneficiaries it names. Designing how to deliver the obesity benefit--through "managed care" network providers, prior-authorization controls, and cost-sharing--falls within the Secretary's discretion; excluding one of the statutorily defined covered beneficiaries from medical benefits altogether does not. That alters the reach of the statutory beneficiary class itself, which is Congress's domain and not the Secretary's.

9

The Chenery doctrine independently bars sustaining the exclusion on that ground, because the discretion the M&R invokes is not the discretion DHA claimed. A reviewing court may uphold agency action only on the basis the agency itself relied upon. SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). The Department did not rest the exclusion of TFL on the Secretary's discretion as described in the M&R; it rested on statutory compulsion, arguing that § 1079(a)(10), § 199.4(g)(28), §§ 1086(a) and (d), and § 1097(a) "control the exclusion" and that DHA's action was "not an act of discretion but a ministerial duty". DE 90 at 17-18; accord DE 93 at 23. The provision the Department cited was § 1097(a)--the contracting-authority subsection--offered as a source of the mandate, not § 1097(b). The Department never cited § 1097(b), and never characterized the exclusion as a discretionary choice among plans. The M&R's contrary rationale--that the Secretary's discretion "under 10 U.S.C. § 1097(b)(1)-(3) and § 1079(a)" permits the difference (M&R 9)--is therefore a basis for upholding the action that the agency not only declined to invoke but affirmatively disavowed. That the Court reviews the statute de novo does not save it: de novo review governs what the statute means, while Chenery governs the ground on which agency action may be sustained, and a discretionary justification the agency rejected is not such a ground. An agency action cannot simultaneously be compelled by statute and upheld as an exercise of discretionary plan design.

The M&R's discretion theory also lacks any example that survives the regulations. To illustrate that the TRICARE plans lawfully carry different benefit content, DHA offered a single concrete instance: that federal law "allow[s] for additional preventive care services and health benefits ... not covered under TFL, citing 32 C.F.R. § 199.17(f). DE 90 at 4; DE 93 at 4. That instance is incorrect on the regulation's own text. Section 199.4(e)(28)(iv) provides that TFL's Basic Program Health Promotion and Disease Prevention benefit "may include all of the services provided pursuant to § 199.17(f)(2)", so the preventive services DHA says are unavailable to TFL are in fact covered for TFL through § 199.4. The Department's own citation exposes the conflation at the center of its theory: the sentence describes the § 199.17(f)(2) preventive-services menu but pincites § 199.17(f)(3), the obesity exception, treating the entire § 199.17(f) package--preventive care and obesity together--as a single Prime and Select managed-care arrangement.

10

Because § 199.4(e)(28)(iv) shows that package reaches TFL through the Basic Program, the same answer disposes of the obesity exception: § 199.17(f)(3) is a "managed-care" delivery provision, not a constraint on TFL's underlying entitlement to a uniform-formulary pharmaceutical under § 1074g and § 199.21. The M&R's theory lacks a single regulatory example of the plan-based medical benefit discretion it says the Secretary possesses.

The M&R's reliance on § 1086 fails for the same structural reason. Section 1086(a) requires the Secretary to contract for "health benefits for those persons under the same insurance, medical service, or health plans" he contracts for under § 1079(a), and § 1086(d) extends the TRICARE for Life structure to Medicare-eligible beneficiaries. That "same . . . plans" command is mandatory, not permissive: § 1086(a) affirmatively commands parity between TFL and the § 1079(a) plans, leaving the Department no discretion to extend the § 729 obesity benefit to Prime and Select while withholding it from TFL. The limitation the M&R reads into § 1086--that it bars only discrimination between individuals on the same plan--appears nowhere in the statute and inverts a parity command into a license for plan-based disparity. DHA's reading--that § 1086 ties TFL to § 1079(a) rather than to the § 729 obesity benefit--fails on a plain reading of the text: § 1086(a) fixes parity to the plans the Secretary contracts for under § 1079(a), and DHA implemented the § 729 obesity benefit within those very plans, so § 1086 measures TFL's entitlement against the benefit as actually provided by DHA, not against § 1079(a)(10) read in isolation.

These general plan-structure provisions also cannot override Congress's specific command governing the pharmacy benefit at issue. Section 1074g establishes a uniform formulary and provides that pharmaceutical agents placed on that formulary "shall be available to eligible covered beneficiaries." 10 U.S.C. § 1074g(a)(2)(E). GLP-1 agents were on the uniform formulary; § 1072(5), (7), and (13) place TFL within the covered-beneficiary/TRICARE-program structure; and DHA now denies TFL beneficiaries access to a drug the statute requires to be available to eligible covered beneficiaries. A general grant of plan-administration discretion under §§ 1079 and 1097 cannot be used to negate the more specific pharmacy benefit statute once eligibility is established through § 1072 and § 1074g(i)(1). See RadLAX Gateway Hotel, LLC v. Amalgamated Bank, 566 U.S. 639, 645 (2012). That § 1074g command

11

is the mandatory requirement the discretion rationale cannot ignore, and it does not depend on reading §§ 706 and 729 as themselves compelling coverage: even if § 729 is permissive, once GLP-1 agents are placed on the uniform formulary § 1074g(a)(2)(E) requires that they be available to eligible covered beneficiaries--a class that, for the reasons in Objection 3, includes TFL notwithstanding the M&R's contrary reading of § 1074g(i)(1) at M&R 10.

The regulation confirms this structure rather than supplying support for the M&R. Section 199.17(f)(3) implements the obesity-treatment authority "notwithstanding 10 U.S.C. § 1079(a)(10)" and "[u]nder the authority of" §§ 706 and 729. 32 C.F.R. § 199.17(f)(3); AR2675. It therefore presupposes that §§ 706 and 729 define the operative beneficiary class; it does not expand or contract that class. The M&R's reasoning only works if § 1079(a)(10) is treated as overridden for Prime and Select but categorically controlling for TFL, despite all three being within the same statutory definition incorporated into the authorizing provisions, and despite the parity § 1086(a) commands.

The regulation's silence as to TFL cannot supply that authority either. The 2019 Final Rule authorizes obesity-treatment coverage "under TRICARE Prime and TRICARE Select" and contains no language excluding TFL, either explicitly by its text or in force and effect. It notes elsewhere only that TRICARE for Life beneficiaries fall outside the Prime/Select enrollment structure. 84 Fed. Reg. 4,326, 4,330 (Feb. 15, 2019). An agency does not acquire authority to remove a statutory beneficiary category by declining to name it in a Prime/Select unique rule--the authority must come from the statute, and the statute incorporates a class that includes TFL. Section 729 may not be a self-executing entitlement to GLP-1 coverage, but DHA interpreted and invoked § 729 as statutory authority to cover obesity treatment notwithstanding § 1079(a)(10). Once DHA did so, the beneficiary class incorporated into that authority included TFL through § 1072. DHA therefore had authority to provide the same treatment benefit to Prime, Select, and TFL; what it lacked was statutory authority to confine that § 729-based authority to only two of the three TRICARE categories Congress included.

The administrative record confirms that the plan distinction was driven by implementation convenience, no statutory authority. The Decision Paper explains that limiting implementation to Prime

12

and Select "should be relatively simple (despite likely negative reception from TRICARE for Life beneficiaries) . . . because beneficiaries' enrollment information is readily available in the Defense Enrollment Eligibility Reporting System." AR2675. Administrative ease does not provide authority to narrow a statutory beneficiary class nor transform a definition in § 1072 into a exclusion.

Plaintiff expressly objects to the M&R's holdings in Part B.2 ("The Law Does Not Require Uniform Benefits Among TRICARE Plans") and Part B.3 ("The Law Does Not Require Uniform Pharmacy Benefits Across TRICARE Plans"), M&R 9-11, including its construction of the § 1074g uniform-formulary command and its reading of 10 U.S.C. § 1086(a) and § 1086(d). For the reasons stated above, § 1086(a) affirmatively commands parity between TFL and the § 1079(a) plans; and for the reasons in Objection 3, § 1086(d) measures the TFL wraparound against the benefit the plan itself provides and supplies no authority for the plan-based exclusion the M&R upheld.

(d) Relief. Decide the statutory-authority question de novo; hold that the sections 706 and 729 authority DHA invoked reaches TFL beneficiaries and that DHA's exclusion of TFL beneficiaries in its 2025 policy exceeded its statutory authority under 5 U.S.C. § 706(2)(C); deny the Government's cross-motion; and grant Plaintiff's motion on this ground.

## V. OBJECTION 3: The M&R Resolved the Pharmacy benefit Question on the Medical benefit Track--Misreading 10 U.S.C. § 1074g(i)(1) and Disregarding 32 C.F.R. § 199.21, the Independent Pharmacy Regulation That Governs the Pharmacy Benefit at Issue.

This objection addresses Part B of the M&R (M&R 7-10), including the eligibility ruling at M&R 10. The standard of review (de novo; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)) stated in Objections 1 and 2 is incorporated. This objection is connected to Objection 2: it completes the § 1074g analysis Objection 2 begins, addressing the pharmacy benefit's independent structure and the eligibility definition on which the M&R relied.

(a) Portions objected to. M&R 4 (characterizing 32 C.F.R. § 199.4(g)(28) as adopting the prohibition in 10 U.S.C. § 1079(a)(10) and applying it to TFL); M&R 10 (holding that TFL beneficiaries "do not qualify as eligible covered beneficiaries" for GLP-1 medications under 10 U.S.C. § 1074g(i)(1), and that a beneficiary must "point to a legal entitlement to coverage" for the particular drug); and M&R 7-10

13

(resolving the statutory-authority question through § 1079(a)(10), § 199.4(g)(28), and § 1074g(i)(1) without addressing 32 C.F.R. § 199.21).

(b) What the M&R held. The M&R treats § 199.4(g)(28) as carrying § 1079(a)(10)'s obesity exclusion into TFL coverage (M&R 4), reads § 1074g(i)(1) to require a drug-specific "legal entitlement" such that TFL beneficiaries are not "eligible covered beneficiaries" for the GLP-1 agents at issue (M&R 10), and resolves the question of statutory authority entirely through the medical benefit provisions. It does not address 32 C.F.R. § 199.21, the regulation implementing the pharmacy program under 10 U.S.C. § 1074g, although that regulation was the subject of Sections I, III, IV, and V of Plaintiff's Memorandum and Sections II.C, III, IV, and VI of Plaintiff's Reply.

(c) Why it is error.

1. Section 1079(a)(10) is a medical benefit limitation whose only path to the uniform formulary is § 199.21(a)(3)(iii), and, as interpreted by DHA, § 729 closed that path for the weight-loss class. Section 1079(a)(10) limits the medical benefit; it does not by its terms govern the § 1074g pharmacy benefit. The single regulatory means by which a medical benefit exclusion reaches the uniform formulary is § 199.21(a)(3)(iii), which keeps off the formulary agents "used exclusively in medical treatments or procedures that are expressly excluded from the TRICARE benefit by statute or regulation". That conduit turns on a predicate--the treatment must be "expressly excluded"--and the record shows the predicate operating and then ceasing to operate. Before the 2017 NDAA, treatment of obesity was expressly excluded by § 1079(a)(10) and § 199.4(g)(28), the anti-obesity agents were used exclusively for that excluded purpose, and § 199.21(a)(3)(iii) therefore kept them off the formulary; as DHA states, "[p]rio' to NDAA 2017, weight loss agents were excluded from the pharmacy benefit". AR0177.

Section 729 of the 2017 NDAA, implemented by the Interim Final Rule of September 29, 2017, then authorized coverage for the treatment of obesity "even if it is the sole or major condition treated". AR2824. Once obesity treatment was authorized, § 199.21(a)(3)(iii)'s predicate failed, and the pharmacy program's own process placed that drug class on the formulary: the Pharmacy and Therapeutics Committee reviewed the weight-loss class on November 15-16, 2017 and recommended formulary

14

placement with uniform clinical prior-authorization criteria (AR25-29); the Director approved on January 31, 2018; implementation followed on May 2, 2018; and later agents were added as they received FDA approval, under § 199.21(g)(5). The regulation codifying the Prime and Select medical exception, § 199.17(f)(3), did not issue until the February 2019 Final Rule--after the class was already on the uniform formulary.

That placement was plan-neutral and in fact reached TFL. The class entered the pharmacy benefit through that process--the generic anti-obesity agents placed on the uniform formulary and the branded agents, including Saxenda, available as non-formulary agents through prior authorization (AR0177). All were available across Prime, Select, and TFL alike by § 1074g under clinical criteria that applied to all covered beneficiaries, and the record discloses no Pharmacy and Therapeutics Committee or UF-BAP recommendation confining these drugs from TFL beneficiaries on any clinical basis. And the placement reached TFL in practice: TFL beneficiaries received these drugs under the uniform clinical criteria for years, until August 3 1, 2025. These agents are therefore on the uniform formulary and, under § 1074g(a)(2)(E), "shall be available to eligible covered beneficiaries, a class that includes TFL (see infra Point 4); individual access is governed by clinical criteria under § 199.21; and neither the regulation nor any P&T or UF-BAP' action authorizes a plan-based exclusion of a beneficiary category from a formulary drug.

2. The drug at issue is a pharmacy benefit, not a medical service or supply. Section 199.4(g)(28) excludes "[s]ervice and supplies related 'solely' to obesity or weight reduction or weight control whether surgical or nonsurgical, its sole enumerated example being "wiring of the jaw or any procedure of similar purpose. By its terms it reaches medical services and surgical or nonsurgical procedures. It does not directly adjudicate access to a pharmaceutical agent placed on the uniform formulary, which is governed by § 1074g and 32 C.F.R. § 199.21. The M&R's use of § 199.4(g)(28) (M&R 4) to bar a formulary drug applies a Basic Program medical benefit exclusion to a pharmacy benefit the Basic Program does not govern. Section 199.21 supplies the only pharmacy-specific rule for how a medical exclusion affects formulary access.

15

3. For TFL the TRICARE medical benefit provisions the M&R applied do not govern pharmacy benefits. TFL's TRICARE medical benefit is a Medicare-secondary wraparound. The drug is dispensed under the pharmacy benefit program, where Medicare plays no role and TRICARE must abide by § 1074g. Section 1079(a)(10) and its regulatory counterpart, § 199.4(g)(28), are limitations within the medical benefit Congress established under §§ 1079(a) and 1086(a). Section 1086(a) directs the Secretary to contract for the care of persons covered by that section "under the same insurance, medical service, or health plans he contracts for under section 1079(a)", and § 1079(a)(10) is a limitation inside that benefit. That § 1086(a) parity command operates within the medical benefit; it does not fold the separate § 1074g pharmacy program into the "same . . . plans" it identifies, which § 199.21(a)(1) makes independent of the Title 10 medical benefit provisions (see infra Point 5). For TFL beneficiaries, however, § 1086(d) makes that medical benefit one provided primarily by Medicare with TRICARE playing a secondary role. Where a TFL beneficiary "receives medical or dental care for which payment may be made under medicare and a plan contracted for under subsection (a)". TRICARE pays only the beneficiary's actual out-of-pocket costs remaining after Medicare and other payers. 10 U.S.C. § 1086(d)(3)(A). By its terms that secondary-payer formula limits TRICARE's role to determining whether it has any responsibility for paying a part of the medical benefit covered by Medicare -- or all of it if TRICARE covers it and Medicare does not. In making that determination TRICARE considers its own benefit rules, including § 199.4, to decide whether the medical benefit is TRICARE-covered. That is a payment-coordination rule for medical benefit claims. It is not a rule for adjudicating access to a prescription drug under the separate TRICARE Pharmacy Program. Stated as two steps, the medical benefit works thus: for a covered medical service Medicare is the initial source of coverage, and TRICARE acts only at a second step, paying a residual share after confirming the service is covered under its own rules, including § 1079(a)(10) and § 199.4. 10 U.S.C. § 1086(d)(3). A prescription dispensed under the § 1074g pharmacy program has no such first step--Medicare covers no weight-loss drug, a premise the Government itself presses, so there is nothing for TRICARE to coordinate and TRICARE is the sole payer under the uniform formulary. The

16

Case 2:25-cv-00041-M-RN    Document 136-2    Filed 07/01/26    Page 16 of 42

two-step structure that lets the medical benefit exclusions operate on a TFL medical claim therefore has no operation on the pharmacy benefit; this preserves, rather than defeats, TFL access to a formulary drug.

The Government's own pleadings draw exactly this line, and points to the structural feature that distinguishes TFL from Prime and Select. The Government describes TFL as "the Medicare wraparound coverage option of the TRICARE program made available to the beneficiary by reason of 10 U.S.C. § 1086(d)," DE 93 at 2; DE 90 at 2; states that "a retiree must purchase Medicare Part B to be eligible for the TFL medical benefit," DE 93 at 2; DE 90 at 3; locates the coverage regulations applicable to TFL in "§§ 199.3 (eligibility), 199.4 (basic program benefits), and 199.8 (double coverage)"-- notably not § 199.21--DE 93 at 4; DE 90 at 4; and concedes that "Medicare typically serves as the primary payer and Tricare as secondary payer, reimbursing only those portions of a claim that are not covered by Medicare," DE 93 at 4; DE 90 at 4. Prime and Select beneficiaries, by contrast, include the remaining § 1086(c) population not entitled to Medicare Part A, for whom TRICARE is the primary medical benefit payer and for whom § 1079(a)( 10) and § 199.4 do their full gatekeeping. The medical benefit exclusions the M&R invoked thus operate, in this case, on a track where, for TFL, Medicare is the primary determinant of whether and how the medical benefit applies. TRICARE's role is to pay a coordinated residual for medical benefits f covered under its rules.

The wraparound caps what TRICARE pays for the plan's own coverage; it does not import Medicare's exclusions. The Government's contrary inference--that "as a wraparound secondary payor for Medicare benefits, TFL cannot be used to authorize or pay for" the GLP-1 agents because it "cannot cover weight-loss drug when Medicare does not," DE 93 at 8--mistakes the secondary-payer formula for a coverage limitation. Section 1086(d)(3) caps the wraparound payment at "the total amount that would be paid under the plan i f payment for that care were made solely under the plan," § 1086(d)(3)(B): the plan's own coverage define s what it pays, not Medicare's exclusions. Secondary-payer status requires coordination of payments on covered medical benefits; it does not conform the TRICARE medical benefit to the contours of M edicare's. And in all events the formula governs only care "for which payment may be made under medi care and a plan contracted for under subsection (a)." § 1086(d)(3)(A). GLP-1s are not

17

dispensed under that medical benefit. They are dispensed under the § 1074g pharmacy program and § 199.21, which § 199.21(a)(1) makes independent of the Title 10 medical benefit provisions, and for which Medicare supplies no payment to coordinate--Medicare excludes weight-loss drugs so TRICARE is the sole payer and the pharmacy benefit runs under the uniform-formulary rules, not Medicare/TFL medical-payment coordination. The wraparound the Government invokes to single out TFL is a feature of the medical benefit; it has no application to the pharmacy benefit this case concerns. Sections 1079(a)(10) and 199.4 may govern adjudication of a TFL medical claim; they do not govern this pharmacy benefit dispute.

The disputed denial did not arise from TRICARE's residual adjudication of a Medicare medical claim. It arose from a prescription-drug prior-authorization exclusion administered by Express Scripts under the TRICARE Pharmacy Program. The notice sent to Plaintiff--titled "A Change to Your Prescription Drug Coverage"-- says exactly that: Express Scripts administers the TRICARE pharmacy benefit, the existing Wegovy prior authorization would become invalid, and continued fills would require Plaintiff to pay 100% of the drug cost at retail. D.E. 15-4 at 1. The coverage denial itself was not a TFL medical-payment decision under § 199.4. It was a pharmacy benefit denial.

4. Section 1074g(i)(1) defines program-eligibility status, not drug-specific entitlement. The M&R reads "eligible covered beneficiary" to require a "legal entitlement to coverage" for the particular medication, and concludes that TFL beneficiaries are not "eligible covered beneficiaries" for GLP-1 agents. M&R 10. The text says otherwise:

> The term "eligible covered beneficiary" means a covered beneficiary for whom eligibility to receive pharmacy benefits through the means described in subsection (a)(2)(E) is established under this chapter or another provision of law.
> 10 U.S.C. § 1074g(i)(1).

The "means described in subsection (a)(2)(E)" are the pharmacy benefit's drug delivery channels--military treatment facilities, retail network pharmacies, and the mail-order program. The statute names those channels: formulary agents "shall be available to eligible covered beneficiaries through--(i) facilities of the uniformed services . . . ; (ii) retail pharmacies . . . ; or (iii) the national mail-order pharmacy

18

program." § 1074g(a)(2)(E). Subsection (i)(1) thus asks only whether a beneficiary's eligibility to obtain pharmacy benefits through those channels is established by law; for TFL beneficiaries it is, under §§ 1086(d), 1072(5), 1072(7), 1072(13), and 1074g itself. That provision speaks to who participates in the pharmacy program, not to which drugs are covered for whom. Reading "eligible covered beneficiary" to mean a beneficiary already entitled to the specific drug renders § 1074g(a)(2)(E) circular--the command that formulary agents "shall be available to eligible covered beneficiaries" would then guarantee drugs only to those already entitled to them. This is the § 1074g point raised in Objection 2: TFL beneficiaries are "eligible covered beneficiaries," and § 1074g(a)(2)(E)'s availability command runs to them. At most, § 1079(a)(10) is the medical treatment limitation the Government invokes, and even then it requires a patient-specific inquiry into whether obesity is the "sole or major condition treated"; it does not authorize a categorical denial based on TFL status. It may limit the medical benefit TRICARE will cover on a medical benefit claim where Medicare is primary, but it does not address pharmacy benefits under § 1074g.

5. The pharmacy program is independent by the regulation's own terms, and the only way for a medical exclusion to reach the formulary is not satisfied. Section 199.21(a)(1) provides that the § 1074g pharmacy program "is independent of a number of sections of Title 10 and other laws that affect the benefits, rules, and procedures of TRICARE." The medical benefit exclusions collected in § 199.4 do not control uniform-formulary access except through the single way the pharmacy regulation itself supplies:

> Pharmaceutical agents which are used exclusively in medical treatments or procedures that are expressly excluded from the TRICARE benefit by statute or regulation will not be considered for inclusion on the uniform formulary.
> 32 C.F.R. § 199.21(a)(3)(iii).

As Point 1 explains, § 729 removed the predicate this rule requires: once treatment of obesity was authorized rather than "expressly excluded", the weight-loss agents could no longer be kept off the uniform formulary, and they are not "used exclusively" for an excluded treatment in any event. The M&R's reading bypasses this one reconciliation rule. And that rule governs formulary inclusion--a drug-class question--not the individual prescription adjudication § 1079(a)(10) addresses: any indication-level

19

limit must be applied through lawful, clinical, patient-specific PA criteria under § 199.21, not through a categorical exclusion of TFL beneficiaries.

6. The pharmacy regulation draws only one Medicare-eligible line, and it is express. Section 199.21(a)(2)(ii) excludes Medicare-entitled beneficiaries from the smoking-cessation pharmaceutical benefit--the single instance in which the pharmacy program distinguishes Medicare-eligible beneficiaries, and one that exists only because Congress—not the Secretary--specifically directed it. The presence of that express exclusion, and the absence of any comparable exclusion for GLP-1 agents, confirms that none was intended. See Russello v. United States, 464 U.S. 16, 23 (1983).

7. This ground was pleaded and preserved. The medical/pharmacy distinction was alleged in the Complaint--that § 199.17(f)(3) "is on the medical side and does not amend or authorize plan-based outcomes in the pharmacy rule (§ 199.21)," Compl. ¶ 12; see Compl. ¶¶ 8-14--and argued at length in Plaintiff's Memorandum (§§ I, III, IV, V; e.g., Mem. 14-19, DE 64) and Reply (§§ II.C, III, IV, VI, X, DE 108). This argument is in the Complaint; the fair-notice concern underlying Cape Hatteras Access Pres. Alliance v. Jewell, 28 F. Supp. 3d 537, 552 (E.D.N.C. 2014), is absent. A M&R that resolves the authority question without addressing the regulation that governs the benefit--and that the parties briefed extensively--rests on an incomplete view of the controlling law.

(d) Relief. Decide the statutory-authority question with reference to § 1074g and 32 C.F.R. § 199.21; hold that TFL beneficiaries are "eligible covered beneficiaries" under § 1074g(i)(1), that § 1079(a)(10) and § 199.4(g)(28) do not directly adjudicate this pharmacy benefit denial, and that any medical benefit exclusion reaches the TRICARE Pharmacy Program only through § 199.21(a)(3)(iii), whose "expressly excluded" predicate § 729, as interpreted by DHA, removed when it authorized the treatment of obesity, so the weight-loss agents remain on the uniform formulary; deny the Government's cross-motion; and grant Plaintiff's motion on this ground.

**VI. OBJECTION 4 : The M&R Errs in Recommending Denial of Relief. It Misidentifies the Agency Action Under Review and Treats the APA's Set-Aside Remedy as a Forbidden Judicial Rewrite.**

20

This objection addresses Part B.1 of the M&R (M&R 8-9). The standard of review (de novo; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)) stated in Objections 1 and 2 is incorporated. This objection is connected to Objection 2: the M&R's remedy reasoning depends on the same assumed premise that Objection 2 refutes.

(a) Portions objected to. M&R 8 ("[H]e does not challenge the agency action that created the plan-based distinction. . . . Section 199.17(f)(3) established that distinction, and Fivehouse has not asked the court to set that regulation aside."; and that even setting aside § 199.17(f)(3) "would not entitle TFL beneficiaries to the coverage Fivehouse seeks."); M&R 9 ("The only way Fivehouse could secure his desired relief would be if the court rewrote the underlying statutes and regulations . . . . Courts declare statutes and regulations unlawful; they cannot revise them. United States v. Simms . . . .").

(b) What the M&R held. Part B.1 rests on three steps: (i) Plaintiff challenged the wrong agency action--the August 2025 policy rather than 32 C.F.R. § 199.17(f)(3); (ii) even setting aside § 199.17(f)(3) would leave Plaintiff "no better off," because it would only remove the Prime/Select exception and return the program to its pre-2017 status; and (iii) the only path to Plaintiff's relief is a judicial rewrite of the statutes and regulations, which Simms forbids. Each step is mistaken, and the third misstates the relief Plaintiff actually sought.

(c) Why it is error.

1. The wrong-action premise is contradicted by the M&R's own description of the action and by the operative agency action. Begin with the M&R's own description of the action. The opinion repeatedly characterizes what DHA did as a change--a "policy change" or "modification"--including at M&R 2, 4, 5, 7, 8, 10, 11, 12, and 13. The agency's own contemporaneous materials use the same characterization: DHA's communications plan is captioned "GLP-1 Weight Loss Medication Coverage Changes" and tells beneficiaries that "[t]he change takes effect August 31, 2025." DHA Communications Plan, AR2680; AR2690 (FAQ). t states that DHA "announced a modification to its prior authorization criteria for weight loss drugs that limite d TFL beneficiaries' access to these medications" (M&R 4); that the "August 2025 policy change . . effectively excluded TFL beneficiaries from coverage" (M&R 5); and, in its

21

Conclusion, that "[t]he policy change Fivehouse challenged was necessary" (M&R 13). The opinion's statutory-authority section is itself captioned "Whether the Department Lacked Statutory Authority to Implement the Challenged Policy Change." M&R 7. An agency policy change that terminates a beneficiary class's access to covered drugs is a discrete final agency action reviewable under 5 U.S.C. § 706(2). It is final under Bennett v. Spear, 520 U.S. 154, 177-78 (1997): it consummated DHA's decision-making and determined an entire beneficiary class's access to formulary GLP-1 agents, with legal consequences flowing from it. It is the action Plaintiff challenged. The single instance in which the M&R frames the action as a clarification--the policy "revised prior authorization criteria to clarify that TFL beneficiaries were ineligible" (M&R 1)--cannot convert a class-wide removal of access into something other than the change the opinion otherwise describes.

The premise that § 199.17(f)(3) is the action that "created the plan-based distinction in coverage" (M&R 8) is contradicted by the M&R's own description of that regulation. The opinion states that "[s]ection 199.17 notes that the benefits for TFL beneficiaries are not affected by the regulations promulgated after the 2017 NDAA," and that "TFL benefits are found in § 199.4." M&R 3. A regulation that does not affect TFL benefits did not create the TFL exclusion. Section 199.17(f)(3) is a Prime/Select enabling provision, not the source of any TFL exclusion - which its TFL "savings" clause (32 C.F.R. § 199.17(a)(6)(ii)(C)) clearly establishes. The standing obesity "ban" the M&R relies on (32 C.F.R. § 199.4(g)(28))--not a "'ban," but a conditional restriction--coexisted with TFL coverage of these drugs for years (M&R 4). It was the August 2025 policy change, not § 199.4(g)(28) and not § 199.17(f)(3), that ended that coverage. The M&R cannot hold both that § 199.17(f)(3) "established" the distinction excluding TFL (M&R 8) and that § 199.17 does "not affect" TFL benefits (M&R 3). On the opinion's own description, the only action that excluded TFL is the policy change Plaintiff challenged.

The operative agency action confirms the point. The notice that denied Plaintiff coverage rests expressly on § 199.17(f)(3): "Under the authority of Section 199.17(f)(3) of Title 32, Code of Federal Regulations." DE 15-4 at 1. And the Complaint pleads the ultra vires claim broadly, not as an attack on a single memo: Count I challenges "Defendants' policy excluding TFL beneficiaries from GLP-1 coverage .

22

. . while allowing coverage for Prime/Select under the same PA criteria" as "not in accordance with law and exceed[ing] statutory and regulatory authority." Compl. ¶ 15 (Count I, 5 U.S.C. § 706(2)(A), (C)). The Complaint further pleads that § 199.17(f)(3) "is on the medical side and does not amend or authorize plan-based outcomes in the pharmacy rule (§ 199.21)," and that "TFL rules are unaffected by § 199.17." Compl. ¶ 12. The action Plaintiff challenged--the categorical exclusion of TFL effected by the August 2025 policy and applied through the § 199.17(f)(3)-based notice--is the operative final agency action.

For the avoidance of doubt, the final agency action under review is the August 31, 2025 exclusion. The March 18 and April 23, 2025 implementation directives are not themselves the challenged final action; Plaintiff cites them only as evidence that the exclusion was predetermined before the Department's stated July 3, 2025 deliberative process, see Objection 6(c)(4), and the August 2025 exclusion is the agency action that carried that predetermined decision into effect.

2. The M&R "no better off" holding attacks a remedy Plaintiff expressly disclaimed and depends on the premise Objections 2 and 3 refute. The M&R reasons that setting aside § 199.17(f)(3) would only strip the Prime/Select exception and would not entitle TFL to coverage. M&R 8. But Plaintiff does not seek to set aside § 199.17(f)(3):

> Plaintiff does not ask the Court to invalidate Prime/Select coverage or rewrite § 199.17(f)(3). Plaintiff seeks only a standard APA remedy: vacatur of the August 31, 2025 plan-based PA exclusion and restoration of the status quo ante.
> Pl.'s Consolidated Reply 6, DE 108; accord id. at 33 ("Plaintiff does not seek to strike § 199.17(f)(3).").

The M&R thus knocks down a remedy Plaintiff disclaimed while failing to address the remedy Plaintiff requested. The "return to the pre-2017 status" (§ 1079(a)(10) still fully operative) reasoning addresses a hypothetical no one advanced. The holding also rests on the assumption that, absent the exception, § 1079(a)(10) still bars TFL--the same premise the M&R assumed without deciding at footnote 5. For the reasons in Objections 2 and 3, the sections 706 and 729 authority DHA invoked reaches TFL and § 199.4(g)(28) does not independently bar this formulary drug, so there is no lawful "bar" for the program to "return" to as applied to TFL. Vacating the unlawful exclusion does not leave Plaintiff "no better off"; it restores the pre-August 31 prior-authorization regime unless and until DHA lawfully adopts

23

a new policy that does not rest on the assumed categorical exclusion of TFL beneficiaries. The M&R adopted, nearly verbatim, the Government's affirmative-defense framing that "even if Plaintiff succeeds in destroying the statutory and regulatory scheme authorizing coverage for such treatment for others, the statute would bar coverage for such treatment for himself" (Answer 7, DE 44)--a framing that is sound only if the § 729 scope question is resolved against Plaintiff, which it should not be (Objection 2).

3. The "no relief without a rewrite" holding misstates the relief sought, and Simms does not govern the APA's set-aside remedy. Simms was a constitutional-vagueness case involving § 924(c)(3)(B), in which the Fourth Circuit refused to adopt a saving construction that would rewrite the statute. United States v. Simms, 914 F.3d 229, 251 (4th Cir. 2019) (en banc). That no-rewrite principle is not disputed. Simms does not control the APA remedy question here. Plaintiff does not ask the Court to revise § 199.17(f)(3), add TFL to that regulation, or rewrite § 1079(a)(10). Plaintiff seeks the APA remedy Congress provided: setting aside the August 31, 2025 agency action that excluded TFL beneficiaries. Vacatur under § 706(2) removes unlawful agency action; it does not revise statutory or regulatory text. The M&R therefore misapplies Simms.

Plaintiff asked the court to set aside an unlawful agency action and restore the agency's own prior practice:

> 1. Vacating and setting aside the August 31, 2025 TFL Exclusion under 5 U.S.C. § 706(2). 2. Enjoining Defendants to restore the status quo ante and administer GLP-1 coverage under the uniform formulary and pre-August 31, 2025 prior-authorization criteria uniformly across plans pending lawful reconsideration (APA § 705 and the Court's equitable powers)."
> Pl.'s Mot. for Summ. J. 2, DE 63; see id. at 3 ("In the alternative, vacatur alone will fully redress the injury.").

Restoring an agency's own prior administrative practice is an ordinary APA remedy, not a judicial rewrite. The M&R itself acknowledges that the prior practice existed: "some network pharmacies dispensed GLP-1s to TFL beneficiaries for several years." Setting aside an ultra vires restriction enforces the statute as written; it is the opposite of rewriting it. The M&R's "rewrite" label is, at bottom, a redressability holding: it assumes vacating the policy leaves an independent bar intact. That assumption fails for the reasons in Objections 2 and 3--no independent provision bars this formulary drug--and, as to

24

Plaintiff specifically, for the reasons in Objection 7, where the § 1079(a)(10) predicate is not met on this record. The requested remedy adds no word to any statute or regulation; it enforces 5 U.S.C. § 706(2)(C), which directs courts to "hold unlawful and set aside" agency action that exceeds statutory authority. "Vacatur is the ordinary remedy when an agency acts without statutory authority." Pl.'s Consolidated Reply 33, DE 108. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14 (1971), FCC v. NextWave Pers. Commc'ns Inc., 537 U.S. 293, 300, 302-04 (2003), Sierra Club v. U.S. Dep't of the Interior, 899 F.3d 260, 295 (4th Cir. 2018), and Sierra Club v. U.S. Army Corps of Eng'rs, 909 F.3d 635, 655-56 (4th Cir. 2018).

The ordinary character of the remedy requested is reinforced by the nature of the action. The exclusion reversed a multi-year practice on which TFL beneficiaries had relied--coverage the M&R concedes continued "for several years" (M&R 4)--without the reasoned explanation a change of position requires (Objection 6). When an agency changes position without giving the required explanation, the ordinary APA remedy is to set aside the change and restore the prior state of affairs while the agency makes any new decision--without treating TFL status alone as a categorical basis for denial and after considering reliance interests. See Dep't of Homeland Sec. v. Regents of Univ. of Cal., 591 U.S. 1, 30 (2020) (failure to consider reliance renders a policy change arbitrary). That is precisely the relief Plaintiff seeks, and it is the textbook cure for an unreasoned change of position--not the judicial rewrite the M&R suggests.

The "rewrite" framing is, in any event, the Government's own, and it conflates the remedy Plaintiff disclaimed with the remedy Plaintiff sought. The Government argued: "The Court's role is to ensure agencies act within the bounds of the law, not to rewrite the law or applicable regulations." Defs.' Mem. 23, DE 93. That is correct and beside the point: Plaintiff asks the court to hold the agency to the bounds of the law by setting aside action that exceeded them, not to rewrite anything.

Finally, the action must be reviewed on the ground the agency actually invoked. SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). As Objection 2 notes, the Government disclaimed discretion, casting its enforcement as a "ministerial duty." The question is whether that enforcement action was authorized. The

25

remedy for action that exceeds statutory authority is vacatur and restoration of the status quo ante--not denial of relief on the supposition that the agency might reach the same outcome again. If, after vacatur, DHA takes action, it must do so without treating TFL status alone as a categorical basis for denial unless Congress authorized that plan-based exclusion.

(d) Relief. Decline to adopt the Part B.1 holdings (M&R 8-9). Recognize that the relief Plaintiff seeks--vacatur of the August 31, 2025 exclusion under 5 U.S.C. § 706(2) and restoration of the status quo ante unless and until DHA lawfully adopts a new policy that does not rest on the assumed categorical exclusion of TFL beneficiaries--is the ordinary APA remedy, not a judicial rewrite; and, for the reasons in Objection 2, that vacatur redresses Plaintiff's injury because the § 729 authority DHA invoked requires that TFL be included in any benefit established under its authority, and the § 199.17 authority does not exclude TFL.

## VII. OBJECTION 5: The M&R's Affirmative Declaration That Providing Coverage to TFL Beneficiaries "Exceeded the Department's Authority" Is Unnecessary to the Disposition, Unsupported, and Rests on the Premise the M&R Declined To Decide.

This objection addresses the declaration at M&R 8. The standard of review (de novo; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)) stated in Objections 1 and 2 is incorporated. This objection is connected to Objections 1 and 2: the declaration rests on the same premise the M&R assumed without deciding.

(a) Portion objected to. M&R 8: "This change did not exceed its statutory authority. To the contrary, it was providing coverage for TFL beneficiaries, not removing it, that exceeded the Department's authority under law." The parallel statement in the Conclusion is objected to for the same reasons: "The policy change Fivehouse challenged was necessary to ensure that the pharmacy benefit program was administered in accordance with the governing statutes and regulations." M&R 13.

(b) What the M&R held. Beyond recommending that the August 2025 exclusion did not exceed DHA's authority, the M&R affirmatively declares the opposite conduct unlawful: that DHA's prior provision of GLP-1 coverage to TFL beneficiaries--a practice the M&R elsewhere records continued "for several years" (M&R 4; AR2675)--itself "exceeded the Department's authority under law." M&R 8.

26

Case 2:25-cv-00041-M-RN    Document 136-2    Filed 07/01/26    Page 26 of 42

(c) Why it is error.

1. The declaration is unnecessary to the disposition and beyond the question presented. The question presented under 5 U.S.C. § 706(2)(C) is whether the challenged agency action--the August 2025 exclusion--exceeded DHA's statutory authority. To recommend granting the Government's cross-motion, the M&R needed only to conclude that the exclusion did not exceed that authority. The further declaration that DHA's prior coverage of TFL was itself ultra vires resolves a different question about different conduct that no party asked the court to resolve and that is not the agency action under review. That unnecessary declaration should not be adopted because it is not required to resolve either summary-judgment motion and rests on the same statutory premise the M&R expressly declined to decide.

2. The declaration is unsupported. The M&R offers no analysis and no record citation for the proposition that years of TFL coverage were unauthorized. It records that the coverage occurred (M&R 4) but identifies no statutory provision the prior coverage violated and conducts no analysis of the authority for it. The conclusion is asserted, not reasoned, and cannot support an affirmative determination that the Department acted unlawfully for years.

3. The declaration rests entirely on the premise the M&R assumed without deciding. The statement that providing coverage "exceeded the Department's authority" is correct only if sections 706 and 729 do not reach TFL (and the statutory parity command does not apply)--the dispositive premise the M&R expressly assumed "without deciding" (M&R 7 n.5) and that Objections 1 and 2 show is wrong. At a minimum, the premise is undecided, and an undecided premise cannot support an affirmative declaration that the Department exceeded its authority.

(d) Relief. Decline to adopt the declaration at M&R 8 and the parallel statement at M&R 13. If the District Court adopts any portion of the recommendation, it should expressly decline to adopt this declaration so that it carries no preclusive or persuasive effect, in this or any other proceeding, as a determination that the DHA's coverage of TFL beneficiaries was unlawful.

**VIII. OBJECTION 6: The Arbitrary-and-Capricious Holding Is Circular, Disregards the Department's Duty To Explain a Change of Position, and Misreads the Record as Reasoned Consideration of the Exclusion.**

This objection addresses Part C of the M&R (M&R 11-12) and footnote 7 (M&R 11). The standard of review (de novo as to objected-to portions; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)) stated in Objections 1 and 2 is incorporated. As to the merits of the agency action, the arbitrary-and-capricious standard the M&R recites applies. Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983); M&R 11. The Fourth Circuit applies that standard by asking whether the agency examined the relevant data and articulated a rational connection between the facts found and the choice made, on the administrative record. Ohio Valley Envtl. Coal. v. Aracoma Coal Co., 556 F.3d 177, 192-93 (4th Cir. 2009); Fort Sumter Tours, Inc. v. Babbitt, 66 F.3d 1324, 1335-36 (4th Cir. 1995).

(a) Portions objected to. M&R 12 ("It cannot be arbitrary or capricious for the Department to align its policy with the law," citing Guillot v. Garrett, 970 F.2d 1320, 1327 (4th Cir. 1992)); M&R 12 ("[T]he Department still did consider [the impacts] in its analysis," citing AR2703-AR2705, AR2675). Footnote 7 (M&R 11) is addressed in subpart (c)(5).

(b) What the M&R held. The M&R holds that the exclusion cannot be arbitrary or capricious because the Department was "align[ing] its policy with the law," and that the Department in any event "did consider" the impacts on TFL beneficiaries, citing the Decision Paper and an impacts analysis prepared for Congress. M&R 11-12.

(c) Why it is error.

Three of the grounds below are independent of the statutory-authority question and require setting the exclusion aside even if §§ 706 and 729 were read to permit it: the unexplained change of position (subpart 2), the absence of reasoned consideration in the cited record (subpart 3), and the post-hoc timing of the proffered rationale (subpart 4). These arbitrary-and-capricious grounds are pleaded in the alternative to Objections 2 and 3: even if the exclusion is treated as a discretionary policy choice rather than the ultra vires act those objections establish, it cannot survive arbitrary-and-capricious review.

1. The "alignment" rationale is circular. That "it cannot be arbitrary or capricious for the Department to align its policy with the law" assumes the law compelled the exclusion. That is the very premise the

28

M&R assumed without deciding (M&R 7 n.5) and that Objections 1 and 2 refute. Guillot's principle that agencies "must abide by their own regulations and existing statutes" (M&R 11) operates only if the statutes and regulations required the exclusion. For the reasons in Objection 2, sections 706 and 729 explicitly reach TFL, so the law did not require the exclusion; Guillot is not applicable, and the arbitrary-and-capricious inquiry proceeds on the merits. The M&R's reasoning collapses the authority question into the arbitrariness question and resolves both on the same unproven assumption.

2. DHA was required to explain a change of position and did not. Because that reversal reflects a newfound interpretation of DHA's own regulation--and a novel reading of the statute--it warrants no judicial deference. The exclusion reversed a multi-year practice affecting 26,568 TFL beneficiaries. AR2704. DHA's own communications plan captioned the action "GLP-1 Weight Loss Medication Coverage Changes," AR2680—an acknowledgment that the Department was changing course, which only sharpens the absence of any reasoned explanation for the reversal. The M&R itself records that "some network pharmacies dispensed GLP-1s to TFL beneficiaries for several years." M&R 4. The record contains no analysis of that reliance interest--not in the congressional info paper and not in the Decision Paper. An agency that reverses a prior position must display awareness that it is changing course and supply a reasoned explanation, including for discounting the reliance interests the prior practice generated. FCC v. Fox Television Stations, Inc., 556 U.S. 502, 515 (2009); Encino Motorcars, LLC v. Navarro, 579 U.S. 211, 221-22 (2016); Dep't of Homeland Sec. v. Regents of Univ. of Cal., 591 U.S. 1, 30 (2020). That the prior coverage was longstanding, program-wide agency practice--not, as the M&R intimates, mere happenstance--is what triggers the duty; and the contestable legitimacy of the reliance (by 26,568 individuals) does not excuse the Department from acknowledging and weighing it, which it did not do at all. Plaintiff pleaded this theory: the reversal occurred "without a reasoned explanation reconciling the change with the pharmacy rule's clinical-only tools . . . or beneficiaries' reliance interests." Compl. ¶ 16 (citing Fox Television, Encino Motorcars, and State Farm). The M&R did not engage this duty; it treated the reversal as mere "alignment." Characterizing a change of position as "alignment with law" is not a substitute for the reasoned explanation a change of position requires--particularly where, as

29

Objection 2 establishes, the prior practice was lawful, so there was a policy change to justify. That the action "revised prior authorization criteria to clarify" the exclusion (M&R 1) does not avoid the duty. The opinion otherwise describes the action as a change throughout (see Objection 4(c)(1)), and the "clarifying revision" label (addressed in Objection 7) fares no better: a measure that strips an entire beneficiary class of access it received for years is a substantive change of position whatever the label, and the reasoned-explanation and reliance duties turn on what the action did, not on what it is called.

3. The record the M&R cites does not show reasoned consideration of the exclusion. The M&R relies on the Decision Paper (AR2675-2679) and an impacts analysis (AR2703-AR2705) for the finding that the Department "did consider" the impacts. The Decision Paper does not do that job. Its stated issue is whether the phrase "such services must be provided by a network provider" in § 199.17(f)(3) means a network prescribing provider or a network retail pharmacy--a network-verification question directed at fraud, waste, and abuse, not the decision to exclude TFL. AR2675. Its sole reference to the TFL exclusion is a parenthetical prediction that limiting the benefit to Prime and Select would draw "likely negative reception from TRICARE for Life beneficiaries." AR2675. A prediction that beneficiaries will object is not a reasoned explanation for the decision to exclude them. As to AR2703-AR2705, that document is not a decisional analysis. AR2703 is an August 1, 2025 email from the Office of the Assistant Secretary of Defense for Legislative Affairs transmitting an "Info Paper for Congress" to congressional recipients; AR2704-AR2705 is that paper. Its only contribution is a headcount of affected beneficiaries--an estimated 26,568 TFL beneficiaries then using weight-loss medications, and 3,114 non-TFL beneficiaries--followed by implementation mechanics: adjudication logic, the prior-authorization form change, and pharmacy reject codes. It contains no analysis of reliance interests, medical consequences, alternatives, or any reasoned justification for excluding TFL. And it post-dates the Decision Paper (July 3, 2025), describing a change already scheduled to take effect August 31, 2025. A congressional advance-notice headcount, prepared after the decision, is not the contemporaneous reasoned explanation State Farm requires. It confirms that DHA counted the affected beneficiaries and notified Congress--not that it engaged in any reasoned analysis about whether to exclude them.

30

4. The decision to exclude TFL pre-dated the documents DHA offers as its reasoned basis. Agency action must be judged on the grounds the record discloses the agency actually relied on when it made the decision; a rationale assembled afterward cannot supply a reasoned basis the decision lacked. SEC v. Chenery Corp., 318 U.S. 80, 87 (1943). The record shows the Department announced the TFL exclusion to the contractor and directed implementation months before the July 3, 2025 Decision Paper it proffered as its proof of analysis. On March 18, 2025, DHA wrote the pharmacy contractor that "TRICARE for Life beneficiaries shall not be allowed access to TRICARE covered weight loss medications if it is the sole or major condition treated," directed it to "confirm that Express Scripts is currently applying this benefit design restriction,' and requested cost estimates to "implement a process to limit the coverage." AR2824. By April 23, 2025, the conclusion was settled according to DHA--TFL beneficiaries "were not excepted from the general exclusion, and thus are not entitled to coverage"--and directed the contractor to "begin coordination of an implementation and communication plan . . . with the objective to exclude TFL beneficiaries." AR2826. The Decision Paper the Government relies on is dated July 3, 2025--107 days after the March 18 directive--and, as shown in subpart (c)(3), addresses the network-provider-verification question rather than the decision to exclude TFL; the congressional info paper is later still (August 1, 2025; AR2703). A decision announced to the contractor and set in motion in March and April cannot be supplied a reasoned basis by a July paper that does not conduct any relevant analysis and an August notice to Congress. The contemporaneous grounds the record discloses--the bare legal conclusion that TFL "were not excepted"--contain no reasoned analysis of statutory authority, reliance interests, or alternatives.

The April 23 directive's statement that "no action beyond planning shall be taken on this subject until Pharmacy & Therapeutic (P&T) Committee recommendation(s) and DHA Director approval are provided" (AR2826) does not cure the defect; it deepens it. The precondition DHA announced was never satisfied. The advisory-committee process was paused and no P&T recommendation issued on the TFL exclusion (the facts are developed in Objection 7(c)(3)-(4)), yet DHA implemented the exclusion on August 31, 2025. An agency that conditions action on a committee recommendation and then acts without

31

it has not engaged in the reasoned decision-making the arbitrary-and-capricious standard requires; the July 3 Decision Paper was not the result of the process DHA itself said was required.

5. Plaintiff did not abandon the arbitrary-and-capricious claim (footnote 7). Footnote 7 notes Plaintiff's statement that "this case turns on statutory authority, not arbitrary-and-capricious review" (DE 108 at 7) and questions whether Plaintiff abandoned the claim. He did not. That statement appears under a heading addressing the standard of review and responds to the Government's attempt to recharacterize a statutory-authority challenge as a deferential arbitrary-and-capricious matter; it identifies which question is dispositive, not a withdrawal of Count II. The claim is pleaded (Compl. ¶ 16) and argued (Mem. in Supp. of Mot. for Summ. J. 26-28, DE 64), and the M&R reached and decided it (M&R 11-12). The claim is preserved for de novo review.

Finally, to the extent the exclusion is defended on the Government's remaining arbitrary-and-capricious rationales--that it serves fiscal stewardship of the TRICARE budget and that TFL's status as a Medicare-secondary payor justifies it--those rationales cannot sustain the M&R's holding. Neither appears in the contemporaneous decisional record as a stated basis for the exclusion, neither is supported by record evidence, and both are post-hoc litigation rationales the Department did not invoke when it acted. SEC v. Chenery Corp., 318 U.S. 80, 87 (1943); see subpart 4 above. The Medicare-secondary-payor rationale also fails on the merits for the reasons in Objection 3.

(d) Relief. Decline to adopt the Part C holding (M&R 11-12). Hold that the "alignment" rationale cannot insulate the exclusion from arbitrary-and-capricious review where, for the reasons in Objection 2, the law did not compel it; that DHA was required to, and did not, explain its reversal of a multi-year practice and account for reliance interests; that the documents DHA offers as its reasoned basis post-date the March and April directives that already set the exclusion in motion and cannot supply that basis after the fact; and that the cited record does not establish reasoned consideration of the decision to exclude TFL. The remedy for that arbitrary-and-capricious defect is to set aside the exclusion under 5 U.S.C. § 706(2) and restore the pre-August 31 prior-authorization regime unless and until DHA lawfully adopts a

32

new policy after addressing the change of position and the reliance interests the Department has not weighed.

**IX. OBJECTION 7: The M&R Erred in Deeming Plaintiff's Procedural Arguments Waived; Those Arguments Support Pleaded Claims and Establish That the Exclusion Was Implemented Without the P&T Recommendation and UF-BAP Consideration the Law Requires; and the Government's Cross-Motion Fails on the Undisputed Record.**

This objection addresses footnote 6 (M&R 11 n.6) and the recommendation to grant the Government's cross-motion (M&R 12-13). The standard of review (de novo as to objected-to portions; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3)) stated in Objections 1 and 2 is incorporated. This objection is connected to Objection 2: the procedural grounds reach the same exclusion, and the cross-motion floor is independent of the waiver ruling. The arbitrary-and-capricious and post-hoc consequences of proceeding without P&T and UF-BAP engagement are addressed in Objection 6, subpart (c)(4); this objection states the independent statutory and regulatory grounds.

(a) Portions objected to. Footnote 6, at M&R 11 n.6:

But neither argument is in his Complaint. Raising new arguments in a responsive pleading is improper. Cape Hatteras Access Pres. Alliance v. Jewell, 28 F. Supp. 3d 537, 552 (E.D.N.C. 2014). So Fivehouse has waived those arguments and this opinion does not address them.

And the recommendation to grant the Government's cross-motion (M&R 12-13), insofar as it treats Plaintiff as "categorically excluded from receiving GLP-1 medications prescribed solely or primarily to treat obesity." M&R 12.

(b) What the M&R held. Footnote 6 declines to reach two points it expressly describes as "two additional arguments to support [Plaintiff's] § 706(a)(2)(C) claim"--that 10 U.S.C. § 1079(a)(10) excludes treatment only "if obesity is the sole or major condition treated" (which the footnote locates at Pl.'s Mot. Summ. J. 17), and that the Department "improperly implemented the policy without the approval of the Uniform Formulary Beneficiary Advisory Panel" (which the footnote locates at Mem. in Supp. of Mot. Summ. J. 22--24)--on the ground that neither is in the Complaint. The M&R then grants the Government's cross-motion, treating Plaintiff as categorically excluded. M&R 12-13.

(c) Why it is error.

33

1. The waiver ruling is legal error; these are arguments supporting a pleaded claim, not new claims, and footnote 6 says as much. The footnote introduces both points as "two additional arguments to support [Plaintiff's] § 706(a)(2)(C) claim," then waives them as unpleaded "new arguments." Those characterizations are incompatible. An argument supporting a pleaded claim is not a new claim, and a plaintiff need not plead the legal theories that support its claims. Johnson v. City of Shelby, 574 U.S. 10, 11-12 (2014) (per curiam). The footnote's only authority does not hold otherwise. In Cape Hatteras the court waived a wholly new and unpleaded theory--that the agency failed to consider "cultural impacts"-- raised for the first time at summary judgment, because "neither defendants nor intervenors had notice of this argument until [the plaintiff] filed its motion for summary judgment." 28 F. Supp. 3d at 552. The waiver turned on fair notice and on the assertion of a new claim, not on any rule that a plaintiff must plead its legal theories; and the plaintiff there did not even contest the waiver in its reply. The same court that decided Cape Hatteras would not treat as waived an argument that supports a claim already pleaded and of which the opposing party had notice.

The same is true of the "sole or major condition treated" argument. Plaintiff does not contend that the Complaint pleaded those exact words as a separate count; it did not need to. The Complaint pleaded the APA claim and the clinical-versus-plan-status theory. It alleged that DHA excluded TFL beneficiaries while leaving Prime/Select beneficiaries subject to the same uniform PA criteria, Compl. ¶ 8; that the pre-August 31 PA criteria were clinical criteria, including BMI thresholds, comorbidities, lifestyle-program requirements, step therapy, and safety screens, Compl. ¶ 11; that DHA replaced that clinical gate with a plan-based cutoff, Compl. ¶¶ 13-14; and that the reversal failed to reconcile the change with the pharmacy rule's clinical-only tools, Compl. ¶ 16. The "sole or major condition treated" point is a statutory argument explaining why § 1079(a)(10) could not be applied categorically by plan status in place of the pleaded clinical PA inquiry. It supports Count I's claim that the exclusion exceeded statutory authority and Count II's claim that DHA arbitrarily replaced clinical criteria with a plan-based exclusion. It is not a new claim.

The same is true of Plaintiff's procedural arguments. They are not a new factual theory sprung at summary judgment; they support Count II as pleaded--that the Department acted "without amending §

34

199.21 and without a reasoned explanation," Compl. ¶ 16, which names 32 C.F.R. § 199.21 (the regulation containing the P&T-recommendation predicate at § 199.21(g)(3) and carrying the UF-BAP-consideration requirement at § 199.21(d)) and cites United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260 (1954). The Complaint also pleads the § 1074g uniform-formulary structure. Compl. ¶ 9. The Government had notice in fact: it briefed the procedural argument on the merits, acknowledging that "Plaintiff argues that notice and comment periods were not followed in this case . . . . [DE 64, pp. 23-25]" and devoting three pages to rebutting it. DE 90 at 11-13. And the arguments appear in Plaintiff's own opening summary-judgment memorandum--the pages footnote 6 itself cites (Pl.'s Mot. Summ. J. 17; Mem. 22-24)--not in a reply. An argument that supports a pleaded claim, that the opposing party briefed on the merits, and that was before the Magistrate Judge is preserved for de novo review.

2. The TFL exclusion is a change to the operation of the uniform formulary, not a "clarifying revision." Plaintiff's procedural argument is that DHA made a substantive change to the operation of the uniform formulary by changing who may obtain a formulary benefit (and who may not). The Government's defense--adopted by the M&R, which describes the action as having "revised prior authorization criteria to clarify" TFL ineligibility (M&R 1) and as "a modification to its prior authorization criteria" (M&R 4)--is that there was no change to the formulary, only a "clarifying revision" to a prior-authorization form (DE 90 at 7, 8, 12). That characterization cannot survive scrutiny, and it governs both procedural grounds, so it is addressed first.

Substance controls over label. Categorically removing roughly 2.5 million TFL beneficiaries from coverage of GLP-1 weight-management drugs they had received program-wide since 2018 "made a substantive change to the uniform formulary's operation" that "fall[s] squarely within the statutory mandate requiring UF-BAP review under 10 USC 1074g, regardless of DHA's attempt to characterize [it] as mere 'clarifying revisions.'" DE 64 at 24. A substantive change in who may obtain a formulary benefit requires the attendant process whatever the agency calls it. See Azar v. Allina Health Servs., 587 U.S. 566, 573-74 (2019) (under the Medicare Act, a statement establishing or changing a substantive legal standard required the statutory notice-and-comment process). Allina is persuasive by analogy rather than

35

controlling here, but the principle it applies--that an agency cannot escape a required process by labeling a substantive change a mere clarification--governs the UF-BAP and P&T issues alike. The agency's own directives confirm the point: the April 23, 2025 letter directs the contractor to "correct the benefit design with the objective to exclude TFL beneficiaries from access to obesity medications under the TRICARE pharmacy benefit" and conditions action on the formulary modification process the Government now says was unnecessary (AR2826); the March 18, 2025 letter calls it a "benefit design restriction" (AR2824). So does the agency's own communications plan, captioned "GLP-1 Weight Loss Medication Coverage Changes" and informing beneficiaries that "[t]he change takes effect August 31, 2025." DHA Communications Plan, AR2680; AR2690. An agency that describes its action as changing the benefit design of the pharmacy benefit, and conditions it on a P&T recommendation and Director approval, cannot recharacterize it in litigation as a no-process clarification.

The same principle defeats the Government's notice-and-comment defense. The Government argued below that the 2025 Policy required no APA § 553 rulemaking because it merely "clarified" or "enforced" existing law, and alternatively that it was an "interpretative rule or rule to govern the practice of TRICARE" exempt under § 553(b)(A). DE 90 at 11-12; DE 93 at 20-21. Both labels fail for the reason just given. A measure that removes an entire beneficiary class from coverage it had received program-wide for years is a substantive change carrying the "force and effect of law"--the Government's own test for a legislative rule, Chrysler Corp. v. Brown, 441 U.S. 281, 302-03 (1979)--not a rule that merely "advise[s] the public of the agency's construction" of a statute, Shalala v. Guernsey Mem'l Hosp., 514 U.S. 87, 99 (1995). The Fourth Circuit draws the same line: a rule is legislative where it "effects a substantive change in existing law or policy" rather than merely stating what the agency thinks a statute means, and on that test it held a CMS guidance document legislative rather than interpretive. Children's Hosp. of the King's Daughters, Inc. v. Azar, 896 F.3d 615, 619-23 (4th Cir. 2018). Removing a defined beneficiary class from a formulary benefit it received program-wide for years is a substantive change of that kind. The 2019 Final Rule that authorized this coverage was itself promulgated through notice-and-comment, 84 Fed. Reg. 4,326 (Feb. 15, 2019); an agency may not undo the settled effect of a legislative

36

rule for an entire class by re-labeling the change an enforcement clarification. Azar v. Allina Health Servs., 587 U.S. 566, 573-74 (2019). What DHA actually did confirms the defect: rather than propose a rule and invite comment, it sent beneficiaries unilateral notice, on or before July 31, 2025, that their coverage would terminate on August 31, 2025--thirty days' notice of a decision already made, with no opportunity to comment. M&R 4; AR2684-2692; see Notice from Express Scripts, DE 15-4. Section 553 commands the opposite sequence: notice of a proposed rule, an opportunity to comment, and a reasoned final rule. Like the sole-or-major-condition and UF-BAP points, this is an argument supporting the APA claim already pleaded in Count II, not a new claim, Johnson v. City of Shelby, 574 U.S. 10, 11-12 (2014) (per curiam); Plaintiff raised it below (Mem. 23-25, DE 64) and the Government briefed it on the merits (DE 90 at 11-12), so it is preserved for de novo review.

3. DHA implemented a class-wide formulary-access exclusion without the P&T recommendation its own process required.

No pharmaceutical agent may be designated as non-formulary on the uniform formulary unless it is preceded by such recommendation by the Pharmacy and Therapeutics Committee. 32 C.F.R. § 199.21(g)(3).

DHA's action made GLP-1 weight-management drugs unavailable to TFL beneficiaries under the TRICARE pharmacy benefit--functionally the same as a class-wide non-formulary outcome for that beneficiary class--with no P&T recommendation supporting it. "No P&T Committee or UF-BAP input informed DHA's decision to end coverage." DE 64 at 23; see id. at 23 n.16 (P&T minutes available only through November 7, 2024); id. at 6 (¶ 9). DHA's public notice states: "Until the UF BAP is re-established, the DOD P&T Committee meeting minutes are not available." DOD Pharmacy & Therapeutics Committee, health.mil (last visited June 24, 2026; page last updated June 10, 2026). To the extent DHA treated those agents as unavailable or non-formulary for TFL beneficiaries, § 199.21(g)(3) required a P&T recommendation. In any event, DHA itself treated P&T recommendation(s) and DHA Director approval as a precondition: its April 23, 2025 directive barred action "until [P&T] Committee recommendation(s) and DHA Director approval are provided" (AR2826), then implemented the exclusion on August 31, 2025 with no such recommendation. DHA thus acted without the predicate its own process

37

required. That is an Accardi violation: an agency must comply with its own binding regulations. See United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 267-68 (1954). The point is pleaded (Compl. ¶ 16, naming § 199.21 and citing Accardi) and is independent of the §§ 706/729 authority question in Objections 1 and 2. The UF-BAP requirement addressed next is the primary and more direct ground; this P&T predicate is an independent, secondary ground that applies to the extent DHA's action is treated as a non-formulary designation.

4. The exclusion was implemented without the UF-BAP consideration 10 U.S.C. § 1074g(c)(1) requires. Section 1074g(c)(1) establishes the UF-BAP to "review and comment on the development of the uniform formulary" and imposes a pre-implementation command:

> The Secretary shall consider the comments of the panel before implementing the uniform formulary or implementing changes to the uniform formulary.
> 10 U.S.C. § 1074g(c)(1)

This pre-implementation "shall" command runs to the UF-BAP; the regulation carries the same command at 32 C.F.R. § 199.21(d). DHA has published that the mandated step was unavailable across the decision window and that it is a congressional requirement: "On March 10, 2025, the Secretary of Defense directed a pause of all DOD Advisory Committees, including the Uniform Formulary Beneficiary Advisory Panel," and "Congressional mandate requires that the UF BAP comment publicly on the DOD P&T Committee recommendations, prior to signing by the Director, DHA." health.mil (last visited June 24, 2026; page last updated June 10, 2026). DHA thus concedes the comment-before-signature sequence and that the body charged with it was paused, yet DHA implemented the exclusion on August 31, 2025 without UF-BAP consideration. An agency that publishes that a mandated pre-implementation step is unavailable, and implements anyway, has not satisfied § 1074g(c)(1).

5. Independent of the waiver ruling, the Government's cross-motion fails on the undisputed record. Even if the procedural arguments were disregarded, the Government cannot obtain summary judgment. The statutory predicate it invokes to exclude Plaintiff--10 U.S.C. § 1079(a)(10)--bars treatment of obesity only "if obesity is the sole or major condition treated." That predicate fails on the undisputed record. The unrebutted declaration of Plaintiff's treating physician establishes that Plaintiff is "overweight (BMI 27.8

38

as of June 2025) and [has] multiple weight-related comorbidities, including: (a) moderate obstructive sleep apnea . . . ; (b) hypertension . . . ; (c) dyslipidemia . . . ; and (d) non-alcoholic fatty liver disease," and that the medication "remains medically necessary to treat his overweight with comorbidities." DE 15-3 ¶¶ 3-4; see id. ¶ 5. On that record, Plaintiff is not obese, and obesity is not Plaintiff's sole or major condition. Section 1079(a)(10) does not reach him on its own terms.

The Government conceded the point: "obesity (i.e. weight loss) is the sole or major condition being treated by the GLP-1 weight loss drugs - and Plaintiff is not even obese." DE 90 at 20 (citing DE 15-3 at 2). A party that concedes the factual predicate of its own exclusion has not shown the absence of a genuine dispute; it has shown the opposite. The agency's own directives confirm the exclusion is conditional, not categorical by plan: the March 18, 2025 directive to ESI bars TFL access "if it is the sole or major condition treated, unless further exception is allowed through medical necessity" (AR2824), and the April 23, 2025 directive bars coverage only "when prescribed to treat obesity as the sole or major condition" (AR2826). Even the M&R's "categorically excluded" statement is qualified by "prescribed solely or primarily to treat obesity" (M&R 12), which is that same conditional inquiry. The predicate the Government must establish to prevail is therefore the sole-or-major-condition determination, not TFL membership.

Plaintiff's standing is independently secure on this record. The notice that terminated his coverage applied the exclusion to him because he is not enrolled in TRICARE Prime or TRICARE Select--that is, because of his TRICARE for Life status--and not because of any individualized determination that obesity is his sole or major condition. DE 15-4 at 1. DHA thus deemed Plaintiff ineligible for GLP-1 coverage by reason of his TFL status. That categorical exclusion, applied to Plaintiff himself, is a concrete, particularized, and redressable injury that establishes his standing to bring this challenge.

The M&R's contrary path runs through its own stated standard. It recited that on cross-motions the court "must take care to resolve all factual disputes and any competing, rational inferences in the light most favorable to the party opposing that motion" (M&R 6), then drew the inference against the Plaintiff on the Government's motion--characterizing Plaintiff's use as "to support his weight loss efforts" and

39

noting he "lost approximately three pounds" (M&R 4, citing Bunn ¶¶ 1, 3-4)--while the same declaration's ¶¶ 3 and 5 identify the comorbidities that defeat "sole or major condition." Having relied on the Bunn declaration to argue Plaintiff is "not even obese" (DE 90 at 20), the Government cannot treat that declaration as absent; the competing inference it raises must, on the Government's own motion, be resolved for Plaintiff. That independently requires denial of the Government's cross-motion, regardless of how the Court resolves the broader sections 706/729 scope issue.

(d) Relief. Decline to adopt footnote 6 and the waiver ruling; reach the procedural grounds de novo and hold that the TFL exclusion is a change to the operation of the uniform formulary that required, at minimum, the UF-BAP consideration mandated by 10 U.S.C. § 1074g(c)(1), and that, to the extent DHA treated the drugs as effectively unavailable or non-formulary for TFL beneficiaries, it also failed to obtain the P&T recommendation required by its own process and 32 C.F.R. § 199.21(g)(3); that, having effected a substantive change in the operation of the uniform formulary, the 2025 Policy also required the notice-and-comment process 5 U.S.C. § 553 prescribes for a legislative rule, which DHA did not provide; and, in all events, deny the Government's cross-motion because the undisputed record--including the Government's own concession that Plaintiff is "not even obese"--defeats the § 1079(a)(10) predicate on which the exclusion depends.

## X. RELIEF REQUESTED

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Decline to adopt the portions of the Memorandum and Recommendation addressed in Objections 1 through 7, and any other portions or rulings adverse to Plaintiff;

2. Decide the statutory-authority question de novo and hold that the sections 706 and 729 authority DHA invoked does not permit it to exclude TRICARE for Life beneficiaries, and that DHA's confinement of that authority to TRICARE Prime and TRICARE Select exceeded its statutory authority under 5 U.S.C. § 706(2)(C);

3. Deny the Government's cross-motion for summary judgment;

4. Grant Plaintiff's motion for summary judgment on the statutory-authority ground;

40

5. Vacate and set aside the August 31, 2025 exclusion under 5 U.S.C. § 706(2) and order Defendants to restore the status quo ante by administering GLP-1 coverage under the uniform formulary and the pre-August 31, 2025 prior-authorization criteria unless and until DHA lawfully adopts a new policy that does not treat TFL status alone as a categorical basis for denial; and

6. In the alternative, deny the Government's cross-motion and require DHA to reconsider the exclusion without treating TFL status as a categorical bar unless the Court first determines that Congress authorized that plan-based exclusion.

7. In the alternative, hold that 32 C.F.R. § 199.21 governs the pharmacy benefit independently of the § 199.4 medical benefit exclusions, that GLP-1 agents are not "used exclusively" within § 199.21(a)(3)(iii), and that the exclusion is therefore contrary to law under 5 U.S.C. § 706(2)(C); and

8. In all events, deny the Government's cross-motion on the independent ground that the § 1079(a)(10) predicate--obesity as the "sole or major condition treated"--is unmet on the undisputed record, including the Government's concession that Plaintiff is "not even obese."

Respectfully submitted, this 1st day of July, 2026.

Derence V. Fivehouse
Plaintiff, appearing pro se
316 Seaview Drive
Edenton, NC 27932
Telephone: (703) 220-3227
Email: derencefivehouse@gmail.com

41

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st day of July, 2026, I filed the foregoing with the Clerk of Court who will file this pleading using the CM/ECF system, which will send notification of such filing to all counsel of record, including:

Neal I. Fowler
Assistant United States Attorney
Civil Division
United States Attorney's Office
Eastern District of North Carolina
150 Fayetteville Street, Suite 2100
Raleigh, NC 27601
Telephone: (919) 856-4870
Email: neal.fowler@usdoj.gov
Attorney for Defendants

I further certify that I emailed a copy of the filed pleading to Mr. Fowler.

Derence V. Fivehouse

42